physicians, including surgeons and anesthesiologists, under a co-promotion agreement with Purdue Pharma. Most of the lawsuits allege generally that plaintiffs suffered personal injuries as a result of taking OxyContin. A few lawsuits allege consumer protection violations and unfair trade practices. One suit by a third party payor alleges antitrust pricing violations and overpricing of the drug. As of June 30, 2005, a total of 191 lawsuits are pending in which Abbott is a party. 27 cases are pending in federal court. 164 cases are pending in state court. 180 cases are brought by individual plaintiffs, and 11 cases are brought as purported class action lawsuits. Purdue Pharma is a defendant in each lawsuit and, pursuant to the co-promotion agreement, Purdue is required to indemnify Abbott in each lawsuit.

In its Form 10-Q for the first quarter of 2005, Abbott reported that it is a defendant in a number of lawsuits involving the drug sibutramine (sold under the trademarks Meridia®, Reductil®, Reductyl™, and Reductal™) that have been brought either as purported class actions or on behalf of individual plaintiffs. The lawsuits generally allege design defects and failure to warn. Certain lawsuits also allege consumer protection violations and/or unfair trade practices. During the second quarter, Abbott resolved pending state and twelve federal lawsuits for $14.75 million. In the second quarter, Abbott was notified that an additional case, *Leathers*, was filed in the United States District Court for the District of Massachusetts.

In its Form 10-Q for the first quarter of 2005, Abbott reported that it is involved in five cases pending in the United States District Court for the Northern District of Illinois related to Abbott's patents for clarithromycin (a drug Abbott sells under the trademarks Biaxin®, Biaxin®XL, Klacid®, and Klaricid®). In one of those cases, Abbott obtained a preliminary injunction against Teva in June 2005 preventing Teva's launch of its extended release clarithromycin product. Teva has appealed that decision. Two other parties, Andrx and Ranbaxy, have agreed not to launch their extended release clarithromycin products before the court issues a decision on Abbott's requests for preliminary injunctions, which are expected in September 2005. During the second quarter, Abbott and Ranbaxy settled their litigation relating to Ranbaxy's immediate release formulation. Ranbaxy will license certain patents in exchange for royalty payments. Litigation related to Abbott's clarithromycin patents is also pending in the Netherlands, Belgium, Ireland, Turkey and Canada. Abbott has resolved the previously reported litigation in the United Kingdom and Spain.

In June 2005, Abbott filed a lawsuit against Takeda Pharmaceutical Company Limited and Takeda America Holdings, Inc. ("Takeda") in the United States District Court for the Northern District of Illinois alleging Takeda breached its fiduciary duty to Abbott in that Takeda is diverting to itself profits that rightly belong jointly to Abbott and Takeda as equal joint venture partners in TAP Pharmaceutical Products Inc. (owned 50 percent by Abbott and 50 percent by Takeda). Abbott seeks injunctive relief, and compensatory and punitive damages.

On April 27, 2005, the United States District Court for the Northern District of

20

Illinois denied Abbott's motion to dismiss the plaintiffs' complaint in *Myla Nauman, Jane Roller and Michael Loughery v. Abbott Laboratories and Hospira, Inc.*, a purported class action lawsuit filed on November 8, 2004. The plaintiffs are former Abbott employees who allege their transfer to Hospira, Inc., as part of the spin-off of Hospira, adversely affected their employee benefits in violation of the Employee Retirement Income Security Act. Plaintiffs generally seek reinstatement as Abbott employees, or reinstatement as participants in Abbott's employee benefit plans, or an award for the employee benefits they have allegedly lost. Abbott has filed a response denying all substantive allegations.

Five cases are pending related to Abbott's patents for sevoflurane (an anesthesia product Abbott sells under the trademarks Ultane® and Sevorane®). In June 2005, Baxter Healthcare Corporation and Baxter Healthcare Ltd. sued Abbott and Central Glass Company, Ltd. in the United Kingdom, High Court of Justice, seeking a declaration that Baxter's proposed generic sevoflurane product does not infringe Abbott's patents. In May 2005, Abbott and Central Glass sued Baxter Company, Ltd. in the Tokyo District Court in Japan, alleging Baxter's proposed generic sevoflurane product infringes their formulation patent. Two cases brought by Abbott and Central Glass against Baxter Healthcare Corporation are pending in the United States District Court for the Northern District of Illinois alleging Baxter's proposed generic sevoflurane product infringes their formulation patents. One additional case is pending in the Sao Paulo State Court in Brazil, where Abbott and Central Glass allege a generic sevoflurane product sold by Cristalia Productos Quimicos Farmaceuticos, Ltda. infringes their formulation patent.

While it is not feasible to predict the outcome of such pending claims, proceedings and investigations with certainty, management is of the opinion that their ultimate dispositions should not have a material adverse effect on Abbott's financial position, cash flows, or results of operations.

21

Item 2.  Unregistered Sales of Equity Securities and Use of Proceeds

(c) Issuer Purchases of Equity Securities

| Period | (a) Total Number of Shares (or Units) Purchased | (b) Average Price Paid per Share (or Unit) | (c) Total Number of Shares (or Units) Purchased as Part of Publicly Announced Plans or Programs | (d) Maximum Number (or Approximate Dollar Value) of Shares (or Units) that May Yet Be Purchased Under the Plans or Programs |
|---|---|---|---|---|
| April 1, 2005 – April 30, 2005 | 437,096(1) | $ 50.269 | 0 | 36,848,000(2) |
| May 1, 2005 – May 31, 2005 | 341,844(1) | $ 49.059 | 0 | 36,848,000(2) |
| June 1, 2005 – June 30, 2005 | 403,421(1) | $ 49.002 | 0 | 36,848,000(2) |
| Total | 1,182,361 | $ 49.4869 | 0 | 36,848,000(2) |

1. These shares represent:

(i) the shares surrendered to Abbott to satisfy tax withholding obligations in connection with the vesting of restricted stock – 10,363 in April, 0 in May, and 11,787 in June;

(ii) the shares deemed surrendered to Abbott to pay the exercise price and to satisfy tax withholding obligations in connection with the exercise of employee stock options – 416,733 in April, 331,844 in May, and 381,634 in June; and

(iii) the shares purchased on the open market for the benefit of participants in the Abbott Canada Stock Retirement Plan – 10,000 in April, 10,000 in May, and 10,000 in June.

2. On October 14, 2004, Abbott announced that Abbott's board of directors approved the purchase of up to 50 million of its common shares.

22

Item 6.   Exhibits

Incorporated by reference to the Exhibit Index included herewith.

SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

ABBOTT LABORATORIES

By:   /s/ Thomas C. Freyman
Thomas C. Freyman,
Executive Vice President, Finance
and Chief Financial Officer

Date: August 3, 2005

23

## EXHIBIT INDEX

| Exhibit No. | Exhibit |
|---|---|
| 12 | Statement re: computation of ratio of earnings to fixed charges. |
| 31.1 | Certification of Chief Executive Officer Required by Rule 13a–14(a) (17 CFR 240.13a–14(a)). |
| 31.2 | Certification of Chief Financial Officer Required by Rule 13a–14(a) (17 CFR 240.13a–14(a)). |

Exhibits 32.1 and 32.2 are furnished herewith and should not be deemed to be "filed" under the Securities Exchange Act of 1934.

| | |
|---|---|
| 32.1 | Certification of Chief Executive Officer Pursuant to 18 U.S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes–Oxley Act of 2002. |
| 32.2 | Certification of Chief Financial Officer Pursuant to 18 U.S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes–Oxley Act of 2002. |

## Abbott Laboratories

### Computation of Ratio of Earnings to Fixed Charges

(Unaudited)

*(dollars in millions except ratio)*

|  | Six Months Ended June 30, 2005 |
|---|---:|
| Earnings from Continuing Operations | $ 1,715 |
| Add (deduct): |  |
| Taxes on earnings from continuing operations | 609 |
| Capitalized interest cost, net of amortization | (5) |
| Minority interest | 4 |
| Earnings from Continuing Operations as adjusted | $ 2,323 |
| Fixed Charges: |  |
| Interest on long-term and short-term debt | 117 |
| Capitalized interest cost | 12 |
| Rental expense representative of an interest factor | 31 |
| Total Fixed Charges | 160 |
| Total adjusted earnings from continuing operations available for payment of fixed charges | $ 2,483 |
| Ratio of earnings to fixed charges | 15.5 |

NOTE: For the purpose of calculating this ratio, (i) earnings from continuing operations have been calculated by adjusting earnings from continuing operations for taxes on earnings from continuing operations; interest expense; capitalized interest cost, net of amortization; minority interest; and the portion of rentals representative of the interest factor, (ii) Abbott considers one-third of rental expense to be the amount representing return on capital, and (iii) fixed charges comprise total interest expense, including capitalized interest and such portion of rentals.

Exhibit 31.1

**Certification of Chief Executive Officer**
**Required by Rule 13a–14(a) (17 CFR 240.13a–14(a))**

I, Miles D. White, certify that:

1. I have reviewed this quarterly report on Form 10–Q of Abbott Laboratories;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of Abbott as of, and for, the periods presented in this report;

4. Abbott's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a–15(e) and 15d–15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a–15(f) and 15d–15(f)) for Abbott and have:

a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to Abbott, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) Evaluated the effectiveness of Abbott's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) Disclosed in this report any change in Abbott's internal control over financial reporting that occurred during Abbott's most recent fiscal quarter that has

---

materially affected, or is reasonably likely to materially affect, Abbott's internal control over financial reporting; and

5. Abbott's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to Abbott's auditors and the audit committee of Abbott's board of directors:

a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect Abbott's ability to record, process, summarize and report financial information; and

b) Any fraud, whether or not material, that involves management or other employees who have a significant role in Abbott's internal control over financial reporting.

Date: August 3, 2005                                           /s/ Miles D. White
                                                               Miles D. White, Chairman of the Board
                                                               and Chief Executive Officer

Exhibit 31.2

**Certification of Chief Financial Officer**
**Required by Rule 13a–14(a) (17 CFR 240.13a–14(a))**

I, Thomas C. Freyman, certify that:

1. I have reviewed this quarterly report on Form 10–Q of Abbott Laboratories;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of Abbott as of, and for, the periods presented in this report;

4. Abbott's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a–15(e) and 15d–15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a–15(f) and 15d–15(f)) for Abbott and have:

a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to Abbott, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) Evaluated the effectiveness of Abbott's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) Disclosed in this report any change in Abbott's internal control over financial reporting that occurred during Abbott's most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, Abbott's internal control over financial reporting; and

5. Abbott's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to Abbott's auditors and the audit committee of Abbott's board of directors:

a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect Abbott's ability to record, process, summarize and report financial information; and

b) Any fraud, whether or not material, that involves management or other employees who have a significant role in Abbott's internal control over financial reporting.

Date: August 3, 2005

/s/ Thomas C. Freyman
Thomas C. Freyman, Executive Vice
President, Finance and Chief Financial
Officer

Exhibit 32.1

**Certification Pursuant To
18 U.S.C. Section 1350
As Adopted Pursuant To
Section 906 of the Sarbanes–Oxley Act of 2002**

In connection with the Quarterly Report of Abbott Laboratories (the "Company") on Form 10–Q for the period ended June 30, 2005 as filed with the Securities and Exchange Commission (the "Report"), I, Miles D. White, Chairman of the Board and Chief Executive Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes–Oxley Act of 2002, that:

(1)  The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)  The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

/s/ Miles D. White
Miles D. White
Chairman of the Board and
Chief Executive Officer
August 3, 2005

A signed original of this written statement required by Section 906 has been provided to Abbott Laboratories and will be retained by Abbott Laboratories and furnished to the Securities and Exchange Commission or its staff upon request.

Exhibit 32.2

**Certification Pursuant To**
18 U.S.C. Section 1350
**As Adopted Pursuant To**
**Section 906 of the Sarbanes–Oxley Act of 2002**

In connection with the Quarterly Report of Abbott Laboratories (the "Company") on Form 10–Q for the period ended June 30, 2005 as filed with the Securities and Exchange Commission (the "Report"), I, Thomas C. Freyman, Executive Vice President, Finance and Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes–Oxley Act of 2002, that:

(1)  The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)  The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

/s/ Thomas C. Freyman
Thomas C. Freyman
Executive Vice President, Finance
and Chief Financial Officer
August 3, 2005

A signed original of this written statement required by Section 906 has been provided to Abbott Laboratories and will be retained by Abbott Laboratories and furnished to the Securities and Exchange Commission or its staff upon request.