# EXHIBIT G

LEXSEE

**ALLOC, INC., a Delaware corporation, et al., Plaintiffs, v. UNILIN DECOR N.V., a Belgian company, et al., Defendants.**

Civil Action No. 03-253-GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 11917

July 11, 2003, Decided

**DISPOSITION:** [*1] Defendants' motion to stay litigation granted. Plaintiffs' motion to strike portions of answer and complaint dismissed, without prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, patent holders, brought a complaint alleging patent infringement against defendants, floor companies. Before the court was the companies' motion to stay litigation of the '579 patent pending the completion of both the '621 reexamination proceedings and the United States Federal Circuit's decision on the '267, '907, and '410 patents.

**OVERVIEW:** In the present case, the '579 patent was the only patent in dispute. However it was the latest of the continuation patents that stemmed from the original '621 patent. The '579 patent had never been reviewed by the United States Patent and Trademark Office, the International Trade Commission, or any other court. Even though the '579 patent did not contain precisely the same claims of the other patents that were under review or reexamination, there was a sufficient correlation among all of the patents for the court to conclude that a stay was appropriate. With regard to the issue of efficiency, it was beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation. To this end, the reexamination of the '621 patent would greatly serve the purpose of defining the issues in this case. The court found that a stay would not unduly burden the patent holders' case as the stay would then be of short duration. The court noted that discovery had not yet begun, nor had a discovery schedule been entered at this time. Likewise, the court had not yet set a trial date.

**OUTCOME:** The floor companies' motion to stay pending the reexamination was granted. The floor companies'

motion to strike portions of the answer and complaint was without prejudice.

**CORE TERMS:** patent, reexamination, discovery, infringement, unduly, motion to stay, additionally, continuation, issues relating, subject matter, trial date, disadvantage, tactical, collectively, infringed, asserting, infringe, latest

**LexisNexis(R) Headnotes**

*Patent Law > Remedies > Collateral Assessments > Costs*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN1] The decision to stay a case is firmly within the discretion of the court. This authority applies equally to patent cases in which a reexamination by the United States Patent and Trademark Office (PTO) has been requested. Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination. In passing legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion. In determining whether a stay is appropriate, courts are directed to consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Continuation Applications > Priority*
*Patent Law > Date of Invention & Priority > General Overview*

*Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction > Appeals*

[HN2] A continuing application is one filed during the pendency of another application which contains at least part of the disclosure of the other application and names at least one inventor in common with that application. Thus, a continuation application claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed.

**COUNSEL:** For Alloc Inc, Berry Finance NV, Valinge Aluminium AB, PLAINTIFFS: Francis Digiovanni, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Unilin Decor NV, Quick-Step Flooring Inc, DEFENDANTS: Richard L Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Unilin Decor NV, COUNTER-CLAIMANT: Richard L Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Unilin Decor NV, Quick-Step Flooring Inc, COUNTER-CLAIMANTS: David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Alloc Inc, Berry Finance NV, Valinge Aluminium AB, COUNTER-DEFENDANTS: Francis Digiovanni, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

### I. INTRODUCTION

On March 5, 2003, Alloc, Inc. ("Alloc"), Berry Finance N.V. ("Berry"), and Valinge [*2] Aluminum AB, ("Valinge") (collectively "the plaintiffs") filed a complaint against Unilin Decor, N.V. ("Unilin") and Quick-Step Flooring, Inc. ("Quick-Step") (collectively "the defendants") alleging infringement of U.S. Patent No. 6,516,579 ("the '579 patent"). The '579 patent is the latest in a series of continuation patents that include U.S. Patent Nos. 5,706,621 ("the '621 patent"), 5,860,267 ("the '267 patent"), 6,023,907 ("the '907 patent"), and 6,182,410 ("the '410 patent").

The '621 patent is currently undergoing reexamination in the United States Patent and Trademark Office

("PTO"). Additionally, the Federal Circuit is considering infringement issues with regard to the '267, '907, and '410 patents after the International Trade Commission ("ITC") rendered a non-infringement decision in favor of Unilin and against the plaintiffs.

Presently before the court is the defendant's motion to stay litigation of the '579 patent pending the completion of both the '621 reexamination proceedings and the Federal Circuit's decision on the '267, '907, and '410 patents. After consideration of each of the factors involved, and for the reasons detailed below, the court will grant the motion [*3] to stay.

### II. BACKGROUND

The parties involved in the present action have attempted to resolve their patent infringement issues in many different forums, both in the United States and in Europe. Specifically, in July 2000, Pergo Inc. ("Pergo"), Unilin's licensee, brought a declaratory action in the District of Columbia with regard to the '267, '907, and '621 patents in response to the plaintiffs' threats of infringement litigation. Pergo additionally filed a request for reexamination of the '621 patent in the PTO. This reexamination is currently ongoing. The plaintiffs subsequently filed a complaint in the Eastern District of Wisconsin asserting that Pergo and Unilin infringed the '267 and '907 patents. In response, Unilin filed its own declaratory judgment action in the District of Columbia, alleging that its product did not infringe the '267, '907, and '621 patents.

In December 2000, the plaintiffs initiated a proceeding in the ITC asserting that Unilin infringed the '267, '907, and '410 patents. Upon the filing of the ITC action, all of the district court actions between the two parties concerning the alleged infringement of the '267, '907, and '410 patents were stayed [*4] pursuant to 28 U.S.C. § 1659. In November 2001, an ITC Administrative Law Judge ("ALJ") issued a decision finding that Unilin did not infringe the '267, '907, or '410 patents. The ITC affirmed the ALJ's decision in April 2002. The plaintiffs then appealed to the Federal Circuit, which heard oral argument on that case in March 2003. No decision has yet issued.

In the present case, the '579 patent is the only patent in dispute. However, as the court noted above, it is the latest of the continuation patents that stem from the original '621 patent. The '579 patent has never been reviewed by the PTO, the ITC, or any other court.

### III. DISCUSSION

[HN1] The decision to stay a case is firmly within the discretion of the court. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). This au-

thority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (noting that "courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination. [*5] ") (internal citations omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg.,* 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987) (recognizing that, "in passing legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983) (citing legislative history of reexamination statute).

In determining whether a stay is appropriate, courts are directed to consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Comm Corp.,* 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999) (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co.,* 766 F. Supp. 212, 217 (D. Del. 1991) (stating a similar test).

In opposition to the defendants' motion to stay, the plaintiffs first argue that, since the '579 patent itself is not at issue [*6] in the reexamination proceedings, or in the Federal Circuit appeal, there is no need to stay the case before this court. *See* D.I. 21 at 7. The court must disagree because the plaintiffs cannot credibly argue that the patents are not alike in subject matter, as well as in many of their claims. This is so because, in general, [HN2] "a continuing application is one filed during the pendency of another application which contains at least part of the disclosure of the other application and names at least one inventor in common with that application." *Transco Products, Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 555 (Fed. Cir. 1994). Thus, a continuation application "claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed." *Id.* Indeed, the plaintiffs themselves admit that the patents in question do have some terms in common. *See* D.I. 21 at 10. Therefore, even though the '579 patent does not contain precisely the same claims of the other patents that are under review or reexamination, there is a sufficient correlation among all of the patents for the court to conclude that a [*7] stay is appropriate.

Additionally, with regard to the issue of efficiency, it is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation. To this end, the reexamination of the '621 patent will greatly serve the purpose of defining the issues in this case. For example, the court will gain the benefit of the PTO's particular expertise in evaluating the prior art. *See Pegasus Development Corp. v. DirecTV, Inc.,* 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, *2 (D. Del. May 14, 2003) (citations omitted). Likewise, the court will also benefit from the reexamination process in that (1) many discovery issues relating to prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; and (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court. *Id.* (citations omitted). Such a refinement of the issues will benefit both parties by reducing litigation costs. [*8] *See id.* This approach will also best conserve the court's scarce resources. *See id.* Similar benefits will likewise flow from the Federal Circuit's analysis of the '267, '907, and '410 patents.

The plaintiffs alternatively contend that the motion is premature because the two proceedings that have a potential impact on this case may be decided well before this case reaches the claim interpretation stage. *See* D.I. 21 at 5. However, if the decisions of the PTO and Federal Circuit are imminent, as the plaintiffs suggest, a stay at this time would not unduly burden their case as the stay would then be of short duration.

Finally, the court notes that discovery in this case has not yet begun, nor has a discovery schedule been entered at this time. Likewise, the court has not yet set a trial date. Therefore, the stay will be entered before any party incurs substantial litigation-related expenses.

## IV. CONCLUSION

In light of the above considerations, the court concludes that a stay at this point in the case would not unduly prejudice the plaintiffs or create for them a clear tactical disadvantage. Indeed, a stay will allow the issues before the court to be further simplified [*9] and defined to the benefit of the parties, as well as the court.

For the foregoing reasons, IT IS HEREBY ORDERED that:

> 1. The Defendants' Motion to Stay Pending the Reexamination by the U.S. Patent and Trademark Office and Ruling by the United States Court of Appeals for the Federal Circuit (D.I. 15) is GRANTED.

2. The parties shall advise the court of any decision that results from the PTO's reexamination of the '621 patent and any decision that results from the Federal Circuit's consideration of the '267, '907, and '410 patents within thirty (30) days of the date of each decision.

3. The Plaintiffs' Motion to Strike Portions of the Answer and Complaint (D.I.

11) is DISMISSED, without prejudice, and with leave to re-file should it become necessary following the stay.

Dated: July 11, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT H

LEXSEE

**EMHART INDUSTRIES, INC., Plaintiff, v. SANKYO SEIKI MFG. CO., LTD., Defendant**

No. 85 C 7565

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**1987 U.S. Dist. LEXIS 15033; 3 U.S.P.Q.2D (BNA) 1889**

**January 30, 1987, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In action for patent infringement, defendant moved to stay the proceedings pending a final determination regarding reexamination of the patent in suit by the United States Patent and Trademark Office.

**OVERVIEW:** Plaintiff brought a patent infringement suit for alleged infringement of a cam operated program timer. The parties had been engaged in discovery for about a year and no pretrial order was in place. Defendant moved the court to stay the proceedings until after a reexamination of the patent in suit was had by the Patent and Trademark Office (PTO). During discovery, defendants discovered that two patents owned by plaintiff predated the patent in suit and constituted prior art; these patents had not been cited to the PTO during the original prosecution of the patent in suit. The court granted the motion, citing benefits that all prior art would have been first considered by the patent examiner, many discovery problems relating to prior would be alleviated, if the reexamination resulted in the effective invalidity of the patent the suit would likely be dismissed, and the outcome of the reexamination might encourage settlement.

**OUTCOME:** The court granted the motion, holding that granting a stay 18 months into litigation, after admittedly significant discovery, but virtually no trial preparation, would not unduly prejudice plaintiff, especially in light of plaintiff's own delay. The benefits of granting defendant's motion outweighed the burdens of delay caused by a reexamination.

**CORE TERMS:** patent, reexamination, depositions, discovery, motion to stay, timer, patentability, reissue,

defrost, trial preparation, progressed, finality, examiner, final determination, injunctive relief, shifting, commencement, antedated, pre-trial, pretrial, patentee, outweigh, in-house, inventors, delayed, costly, resides

**LexisNexis(R) Headnotes**

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN1] Reexamination is a relatively new procedure by which any person can request that the United States Patent and Trademark Office reexamine or reevaluate the patentability of an unexpired U.S. patent. 35 U.S.C.S. § 302. A request for such a reexamination must be based upon prior art patents or publications which raise a substantial new question of patentability. Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were not considered by the patent examiner during the processing of the patent application which resulted in the patent-in-suit. Once a reexamination request is granted, a patent examiner who is familiar with the technology involved with the patent conducts the reexamination and is obligated to do so with special dispatch. 37 C.F.R. § 1.550(a).

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN2] Determining the desirability of a staying district court proceedings pending the outcome of a reexamination proceeding before the United States Patent and Trademark Office resides in the discretion of the district court. Rather than terminating the action, a stay operates to shift to the patent examiner a significant issue, patent claim validity, involved in the dispute before the court.

Case 1:05-cv-00590-GMS    Document 26-3    Filed 02/22/2006    Page 8 of 34

1987 U.S. Dist. LEXIS 15033, *; 3 U.S.P.Q.2D (BNA) 1889

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN3] Shifting the validity issue to the patent examiner in a reexamination proceeding has many advantages, including: All prior art presented to the court will have been first considered by the patent examiner, with particular expertise; many discovery problems relating to prior art can be alleviated; in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed; the outcome of the reexamination many encourage a settlement; the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation; issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination; and the cost will likely be reduced both for the parties and the court.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
*Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction > Appeals*
[HN4] A reexamination proceeding may result in the final cancellation of claims from the patent.

**OPINIONBY:** [*1]

KOCORAS

**OPINION:**

MEMORANDUM OPINION

CHARLES P. KOCORAS, UNITED STATES DISTRICT JUDGE

This matter comes before the Court on defendant, Sankyo Seiki's motion to stay the proceedings in this litigation pending a final determination regarding reexamination by the Patent and Trademark Office of the patent in suit. For the reasons stated herein, defendant's motion is granted.

FACTS

This is an action for patent infringement. Plaintiff, Emhart Industries, Inc. ("Emhart"), filed the complaint on August 28, 1985, alleging that defendant, Sankyo Seiki Mfg. Co., Ltd. ("Sankyo Seiki"), has infringed its patent (the "Voland" patent) for a "cam operated program timer" (U.S. Patent No. 3,727,015). No preliminary injunctive relief was sought. The parties have been engaged in discovery for almost one year, including depositions and document production in Japan. The dis-

covery cut-off date of November 30, 1986, has passed, however, no pretrial order is in place and the Court has not considered any trial schedule for this case.

Defendant contends that during recent (September 1986) depositions of plaintiff's in-house patent counsel (Robert F. Meyer) and one of the alleged inventors of the Voland patent [*2] (Kurt Pauker) it discovered that two patents (the "Brown patents") owned by plaintiff, antedated the Voland patent and constituted prior art. The Brown patents were not cited to the Patent and Trademark Office ("PTO") during the prosecution of the Voland patent application. On September 29, 1986, defendant filed a request for reexamination of the Voland patent based, in part, upon the Brown patents. On December 5, 1986, the PTO granted the request on the grounds that it raised "substantial new questions of patentability." Presently pending before the Court is defendant's motion to stay the proceedings in this litigation, filed on December 11, 1986.

DISCUSSION

[HN1] Reexamination is a relatively new procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U.S. patent. 35 U.S.C. § 302. A request for such a reexamination must be based upon prior art patents or publications which raise "a substantial new question of patentability. Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were not considered by the patent examiner during the processing of the patent application [*3] which resulted in the patent-in-suit. Once a reexamination request is granted, a Patent Examiner who is familiar with the technology involved with the patent conducts the reexamination and is obligated to do so "with special dispatch." 37 C.F.R. § 1.550(a).

[HN2] Determining the desirability of a staying district court proceedings pending the outcome of a reexamination proceeding before the PTO resides in the discretion of the district court. Rather than terminating the action, a stay operates to shift to the PTO a significant issue, patent claim validity, involved in the dispute before the Court. [HN3] Shifting the validity issue to the PTO has many advantages, including:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

Case 1:05-cv-00590-GMS    Document 26-3    Filed 02/22/2006    Page 9 of 34

1987 U.S. Dist. LEXIS 15033, *; 3 U.S.P.Q.2D (BNA) 1889

4. The outcome of the reexamination many encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of [*4] the litigation.

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

 Fisher Controls Co. Inc. v. Control Components Inc., 443 F. Supp. 581, 582, 196 U.S.P.Q. 817, 818-19 (S.D. Iowa 1977). n1

>       n1 This oft-quoted case was decided under the PTO's reissue proceeding then in effect, which was quite similar to the present reexamination proceeding except that institution of the proceeding could only be requested by the patentee. The advantages of shifting the validity issue to the PTO are the same though in both.

Moreover, in passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion: n2

The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pre-trial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative [*5] for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

H. R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, reprinted in [1980] U.S. Code Cong. & Ad. News 6460, 6463. (Emphasis added). See also Ingro v. Tyco Industries, Inc., 227 U.S.P.Q. 69 (N.D. Ill. 1985) (this Court granted a request for a stay of patent litigation pending the outcome of reexamination based, in part, on the above-quoted legislative history); P. Rosenberg, Patent Law Fundamentals § 15.09[3] at 15-167 (2d ed 1986) ("In cases which have not progressed beyond . . . initial litigation stages, the reexamination procedure should be utilized") (Emphasis added).

>       n2 Early versions of what became the reexamination statute expressly provided for a stay of court proceedings. S. 1679, 96th Cong., 1st Sess.

§ 310 (1979); H. R. 5075, 96th Cong., 1st Sess. § 310 (1979); S. 2446, 96th Cong., 2d Sess. § 310 (1980).

Plaintiff objects to a stay of the proceedings on four grounds. The Court is not persuaded by any of the plaintiff's arguments. First, plaintiff contends that there exists no adequate legal remedy for the loss of jobs [*6] and the possible destruction of its defrost timer business, which losses will allegedly follow from the delay caused by a reexamination proceeding in this case. The Court notes that, notwithstanding plaintiff's argument that monetary damages will not compensate for its losses, this is a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court. Moreover, it is not altogether clear that an injunction would, in fact, save plaintiff's defrost timer business. Defendant has submitted evidence suggesting that General Electric, defendant's largest customer, terminated Emhart as a supplier of defrost timers for reasons completely unrelated to the present suit.

Plaintiff's second argument is that defendant has delayed unnecessarily in filing its request for reexamination, and thus, its motion for stay should be denied. Plaintiff claims that the facts necessary to establish the defenses set forth in defendant's request for reexamination were known to defendant since November of 1985. In support of this assertion, plaintiff points out that on November 1, 1985, in response to plaintiff's Interrogatory 3(d), defendant indicated that:

All of the claims [*7] in the patent in suit are unenforceable because the patentees failed to draw to the attention of the Examiner of the application from which the subject issued the closest prior art known to the applicants, including the United States Patents Nos. 3,350,606, 3,500,005 [Brown] and 3,553,720 [Brown]. The question of the unenforceability of the patent in suit is under a continuing investigation, and hence this response will be supplemented as necessary. (Emphasis added).

Defendant does not deny that it knew of the Brown patents in November of 1985, nor that it suspected that the patents constituted prior art. However, defendant contends that it did not at that time know, nor could it have known, whether the Brown patents antedated the Voland patent and thus were legally available as prior art. Defendant argues that it was only during the depositions of one of the alleged inventors of the Voland patent and of plaintiff's in-house patent counsel that it was established that the Brown patents actually constituted prior art. The record reflects that defendant promptly filed its request for reexamination after the conclusion of these depositions.

Case 1:05-cv-00590-GMS    Document 26-3    Filed 02/22/2006    Page 10 of 34

1987 U.S. Dist. LEXIS 15033, *; 3 U.S.P.Q.2D (BNA) 1889

As the Court finds that the [*8] benefits of granting a stay in the present proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date. The Court notes that the plaintiff has not alleged, nor is there any evidence to support a finding, that the defendant's request was made solely for the purpose of delaying the litigation. Rather, if defendant is "guilty" of any "crime," it is of dragging its feet in filing its otherwise valid request for reexamination.

Third, plaintiff contends that defendant's motion for stay should not be granted because this case has "substantially progressed." Plaintiff cites to Digital Magnetic Systems Inc. v. Ansley, where the court, while granting the requested stay, cautioned that the reexamination process should not be abused "by applying for reexamination after protracted, expensive discovery or trial preparation." 213 U.S.P.Q. 200, 290 (W.D. Okla. 1982). The Court recognizes that significant, costly discovery has already taken place. However, substantially no trial preparations have been carried out -- there is no pretrial order in place and no trial schedule has been set.

Moreover, it is significant [*9] here that defendant contends that it could not have filed its request for reexamination before it took the depositions of Robert Meyer and Kurt Pauker, whereupon it discovered that the Brown patents actually constituted prior art. The depositions of Pauker and Meyer were originally set for January 28, 1986, and May 19, 1986, respectively, but were postponed, at plaintiff's request, until September 1986. Defendant claims that plaintiff purposely delayed to prohibit defendant from establishing whether or not the Brown patents were legally available as prior art references. Clearly, based on defendant's response to plaintiff's Interrogatory 3(d), plaintiff knew that defendant was investigating the existence of prior art. Whatever plaintiff's reasons were for postponing these depositions, plaintiff will not now be heard to object to defendant's motion for stay on the grounds that too much time has passed since the commencement of this litigation.

Lastly, it should be noted that the same court that decided Digital, has subsequently granted a stay pending reexamination in a case that was much further advanced than the instant case. See Loffland Brothers Co. v. Mid-Western Energy Corp., [*10] 225 U.S.P.Q. 886 (W.D. Okla. 1985) (stay granted after significant discovery, pretrial conference and trial date set). See also Gould v. Control Laser Corp., 705 F.2d 1340, 217 U.S.P.Q. 985 (Fed. Cir. 1983), cert. denied, 104 S.Ct. 343 (1983) (stay granted five years after commencement of litigation and only 20 days before scheduled start of trial). In sum, the Court finds that granting a stay 18 months into this litigation, after admittedly significant discovery, but virtually no trial preparation, will not unduly prejudice the plaintiff, especially in light of the plaintiff's own delay. n3

n3 Plaintiff's reliance on the decision in Antonious Kamata-Ri & Co., Ltd., 205 U.S.P.Q. 294 (D. Md. 1979), for the assertion that this Court should not stay the proceedings in this case because it has been pending for over a year, is misplaced. Antonious may be distinguished from the instant case in that the court in Antonious had access to records of two other forums that had previously examined the validity of the patent in suit, making it less likely that the court would need the PTO's expert opinion. 205 U.S.P.Q. at 295. Moreover, the litigation in Antonious did not involve the issue of prior art. In fact, the court noted that where the issue of prior art was involved, the PTO's opinion could be "invaluable." Id. at 296. Lastly, the court in Antonious was primarily concerned with whether or not it should order the owner to file for reissue, rather than whether a stay should be granted pending reissue examination.

[*11]

Fourth, and finally, plaintiff claims that reexamination proceedings will not "solve anything with finality" because the PTO's decision on the patent's validity is not binding. Mem. Opp. at 5-6. This is simply not so. [HN4] "A reexamination proceeding may result in the final cancellation of claims from the patent." Manual of Patent Examining Procedure § 2271 (1985). Of course, the patent owner may appeal the PTO's decision to the Board of Appeals and then to the Court of Appeals for the Federal Circuit. 35 U.S.C. § 145. Clearly, however, the end result of the reexamination proceedings will be to simplify the issues and reduce the complexity of trial.

Moreover, if the patent does survive the reexamination proceedings, the defendant has assured the Court that it will not contest the issues decided by the PTO, assuming that the plaintiff has been forthcoming and has cooperated fully during the proceedings. Reply at 13. Thus, a reexamination proceeding in this case may very well resolve significant issues of this litigation with finality. Based on the foregoing, the Court finds that the benefits of granting defendant's motion to stay outweigh the burdens of delay caused by a reexamination [*12] proceeding in this case. n4 Accordingly, defendant's motion to stay all further activities in connection with this action, pending a final determination in the reexamination proceeding, is granted.

1987 U.S. Dist. LEXIS 15033, *; 3 U.S.P.Q.2D (BNA) 1889

n4 The Court notes in addition that where litigation has been stayed pending reexamination proceedings, the PTO will attempt to expedite those proceedings. Manual of Patent Examining Procedures § 2286 (1985).

Dated: January 30, 1987

# EXHIBIT I

LEXSEE

**ESSEX GROUP, INC. VERSUS SOUTHWIRE COMPANY**

**CIVIL NO. C-85-1923-A**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION**

**1986 U.S. Dist. LEXIS 29761**

**January 31, 1986**

**CORE TERMS:** reexamination, patent, motion to stay, counterclaims, infringement, motion to compel discovery, expedited, learning, notify

**OPINIONBY:** [*1]

O'KELLEY

**OPINION:**

ORDER

Presently before the court is a motion by the plaintiff to compel discovery. Also before the court is the defendant's motion to stay these proceedings pending reexamination by the United States Patent and Trademark Office (PTO) of U.S. Letters Patent No. 3,682,234 (234 patent). This action results from a complaint filed by the plaintiff on March 11, 1985, alleging infringement of the 234 patent by the defendant. The defendant answered, denying infringement of the 234 patent and challenging, inter alia, the validity and enforceability of the 234 patent. The defendant has also asserted several counterclaims against the plaintiff, including two counterclaims for infringement of U.S. Letter Patent Nos. 4,154,571 and 4,156,590 by the plaintiff.

The defendant bases its motion to stay these proceedings upon its recent request to the PTO to reexamine the 234 patent in light of several references which had not been placed before the PTO examiner at the time of the original application for the patent. 35 U.S.C. § § 301-307. In determining whether a stay is appropriate, the court "must evaluate the possible damage, hardship and inequities to the parties [*2] to the lawsuit and the relationship of the stay to fulfillment of judicial objectives of simplification of the issues in question and trial of the case." United Merchants & Mfrs. Inc. v. Henderson, 495 F.Supp. 444, 447, 210 U.S.P.Q. 274 (N.D. Ga. 1980) (citations omitted).

While the defendant has requested a reexamination of the 234 patent by the PTO, it is not incumbent on the PTO to grant defendant's request. Under the procedures established by the PTO for reviewing requests for reexamination, a decision as to whether to grant defendant's request should have been made on or before January 3, 1986. Defendant's Memorandum in Support of Motion to Stay, pages 8-9, 14 n.17. The court has not been informed by either party whether the PTO has as yet decided on defendant's request and, if so, whether the PTO has granted or denied that request.

The court is aware of the potential benefit of an expedited conclusion of this case which might flow from staying this case pending resolution of a PTO reexamination. The court also takes note that this case is in its earliest stages and that the PTO has developed expedited procedures for handling reexamination such as the one requested. [*3] While several counterclaims are present in this case that will remain unaffected by the reexamination, after balancing the likely benefits of a temporary stay against any potential harms, a stay of these proceedings would work to the advantage of both parties and the court. The court, however, is also somewhat concerned with the delay in hearing about the PTO's decision of whether or not to grant the defendant's requested reexamination of the 234 patent.

Therefore, the court will issue a stay of these proceedings as to all pending claims and counterclaims either until such time as the PTO denies defendant's request for reexamination of the 234 patent or, should the PTO grant defendant's request, until such time as the court has a hearing on this matter. The parties are directed to notify the court immediately upon learning of the PTO's decision whether or not to grant defendant's requested reexamination. Further, the parties should arrange for a conference with the court as soon as is feasi-

ble after the PTO's decision in order to discuss the further course of this case.

The court having granted defendant's motion to stay this case in its entirety, the plaintiff's motion [*4] to compel discovery pursuant to Fed.R.Civ.P. 37 is moot. Therefore, the court at this time denies plaintiff's motion.

Accordingly, the court grants defendant's motion to stay these proceedings until such time as the PTO either denies defendant's request for reexamination of the 234 patent or, should the PTO grant defendant's request, until the court hears this matter. The parties are directed to notify the court immediately upon learning of the PTO's decision concerning defendant's request for reexamination. Additionally, the court at this time denies plaintiff's motion to compel discovery.

IT IS SO ORDERED.

# EXHIBIT J

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**C**

Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
GIOELLO ENTERPRISES LTD., Plaintiff,
v.
MATTEL, INC., Defendant.
**No. C.A. 99-375 GMS.**

Jan. 29, 2001.

Philip A. Royner, Potter, Anderson & Corroon LLP,
Wilmington, DE, James G. Goggin, Verrill & Dana
LLP, Portland, Maine, for Plaintiff, of counsel.
Robert W. Whetzel, Chad M. Shandler, Richards,
Layton & Finger, Wilmington, DE, Peter E. Heuser,
David A. Fanning, Charles H. DeVoe, Kolisch,
Hartwell, Dickinson, McCormick, & Heuser,
Portland, Oregon, for Defendants, of counsel.

*ORDER*

SLEET, J.
*1 On June 11, 1999, the plaintiff, Gioello
Enterprises Ltd. ("Gioello"), filed a complaint against
Mattel, Inc. ("Mattel") claiming infringement of U.S.
Patent 4,546,434 (the " '434 patent"). Mattel
answered and filed a counterclaim which Gioello, in
turn, answered. Both parties filed motions which are
currently pending. Mattel filed a request with the
U.S. Patent and Trademark Office (the "PTO") on
November 9, 2000 for an reexamination of claims 1-3
of the '434 patent. The PTO granted Mattel's request
on December 21, 2000, and issued a schedule for
statements from the parties (D.I.104). Currently
before the court is Mattel's motion to stay
proceedings pending reexamination (D.I.84). [FN1]
Upon consideration of the parties' submissions, the
court will grant Mattel's motion and stay the
proceedings until further notice.

> FN1. Although Mattel filed its motion
> before the PTO granted its request, the court
> will consider the PTO's actions.

In deciding whether to stay the proceedings, the
court's discretion is guided by the following factors:
(1) whether a stay would unduly prejudice Gioello or
present a clear tactical advantage for Mattel, (2)
whether a stay will simplify the issues, and (3)
whether discovery is complete and whether a trial
date has been set. See Xerox Corp v. 3Comm Corp.,
69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citing
cases); cf. United Sweetner USA, Inc. v. Nutrasweet
Co., 766 F.Supp. 212, 217 (D.Del.1991) (stating a
similar test).

The PTO's recent decision to reexamine the '434
patent will simplify the issues in this case and focus
the litigation. Numerous courts have cited a number
of advantages of granting a stay pending PTO
reexamination: (1) all prior art presented to the court
at trial will have been first considered by the PTO
with its particular expertise, (2) many discovery
problems relating to the prior art can be alleviated,
(3) if patent is declared invalid, the suit will likely be
dismissed, (4) the outcome of the reexamination may
encourage a settlement without further involvement
of the court, (5) the record of the reexamination
would probably be entered at trial, reducing the
complexity and the length of the litigation, (6) issues,
defenses, and evidence will be more easily limited in
pre-trial conferences and (7) the cost will likely be
reduced both for the parties and the court. See, e.g.,
Braintree Laboratories, Inc., Civ. A. No. 96-2459-
JWL, 1997 WL 94237, at *9 (D.Kan. Feb. 26, 1997);
Hamilton Indus. v. Midwest Folding Products Mfg.,
Civ. A. No. 89-C-8689, 1990 WL 37642, at *1- *2
(N.D.Ill. March 20, 1990) (citing cases). All of these
potential advantages are present, to some degree, if
the court imposes a stay of the proceedings pending
the outcome of the PTO's reexamination.

Not staying the proceedings runs the risk of
inconsistent adjudications or issuance of advisory
opinions. Presently, this case is scheduled for trial on
April 13, 2001. According to the PTO's order
granting the request for reexamination, it is possible
that submission of statements will not be complete
until April 12, 2001. [FN2] Additionally, the outstanding
motions for summary judgment by Mattel claim
invalidity and non-infringement-two issues the PTO's
decision could render moot. Since the court must
decide the summary judgment motions well in
advance of trial, it would have to address the
arguments raised before the PTO. Such a situation
raises resource questions. As one court noted:

> FN2. The PTO's order of December 21,
> 2000 states that Gioello has up to two

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                 Page 2
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

months to submit an optional response. If Gioello submits a response, Mattel has up to two months to submit a reply. Since no extensions will be granted, the court believes April 12, 2001-16 weeks from the date of the order is the maximum time allowable for written submissions to the PTO.

*2 ... if the parties continue to litigate the validity of the claims in this Court [sic], and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court [sic] will have wasted time and the parties will have spend additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court [sic] nor the parties expend their assets addressing invalid claims.
_Softview Computer Products Corp. and Ergo View Technologies Corp. v. Haworth, Inc.,_ No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000). Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict. _See Hamilton,_ 1990 WL 37642, at *2 (citing _Ethicon, Inc. v. Quigg,_ 849 F.2d 1422 (Fed.Cir.1988).

The court finds the prejudice to Gioello is slight, if any. Gioello claims it is prejudiced both by Mattel's dilatory tactics in not requesting an examination earlier and by it spending money on discovery that is nearly complete. Leaving aside timing arguments, the court finds no merit in this position. First, Gioello is not selling or actively licensing goods or services related to the '434 patent; money damages is an adequate remedy for any delay in redress. Second, both Mattel and Gioello have spent money on discovery. Third, Mattel is entitled by law to request a reexamination. _See_ 35 U.S.C. § § 302-307; 37 C.F.R. § 1.525. The fact that the request was granted means the PTO deems the '434 patent worthy of reexamination. It is not for the court to second guess the PTO's decision to reassess the prior art.

Given the possibility that the PTO's reexamination could materially affect the issues in this case, the court will deny Mattel's motions for summary judgment and Gioello's motion to strike without prejudice. [FN3] Although the could will hold a status conference in late April or early May, 2001, the parties should advise the court of any earlier developments in the PTO's reexamination.

FN3. Upon the entry of a new scheduling order, the parties are free to re-file their motions.

Therefore, IT IS HEREBY ORDERED that:
1. Mattel's motion to stay the proceeding pending reexamination (D.I.84) is GRANTED. The proceedings are stayed from the date of this order until further notice.
2. Mattel's motion for summary judgment on invalidity (D.I.87) is DENIED without prejudice.
3. Mattel's motion for summary judgement on noninfringement (D.I.89) is DENIED without prejudice.
4. Gioello's motion to strike (D.I.91) is DENIED without prejudice.
5. The parties shall advise the court of any decision that results from the PTO's reexamination of the '434 patent.

D.Del.,2001.
Gioello Enterprises Ltd. v. Mattel, Inc.
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)

END OF DOCUMENT

# EXHIBIT K

LEXSEE

**RALPH GONNOCCI REVOCABLE LIVING TRUST, Plaintiff, v. THREE M
TOOL & MACHINE, INC., ULTRA GRIP INT'L, INC., THREE M HOLDING
CO., ULTRA GRIP NORTH, and MICHAEL A. MEDWID, Defendants.**

**Case No. 02-74796**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
MICHIGAN, SOUTHERN DIVISION**

**2003 U.S. Dist. LEXIS 24423; 68 U.S.P.Q.2D (BNA) 1755**

**October 7, 2003, Decided
October 7, 2003, Filed**

**SUBSEQUENT HISTORY:** Motions ruled upon by
Gonnocci Trust v. Three M Tool & Mach., Inc., 2006
U.S. Dist. LEXIS 4394 ( E.D. Mich., Jan. 30, 2006)

**PRIOR HISTORY:** Gonnocci Trust v. Three M Tool &
Mach., 2003 U.S. Dist. LEXIS 24425 ( E.D. Mich., June
23, 2003)

**DISPOSITION:** [*1] Defendants' Motion to Stay Dis-
trict Court Proceedings Pending Outcome of Request for
Reexamination of U.S. Patent No. 5,184,833
GRANTED; Matter STAYED and removed from trailing
trial docket.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff living trust al-
leged that defendants, three corporations and an individ-
ual, were infringing the '833 patent. Defendants filed a
counterclaim seeking a declaratory judgment that the
'833 patent was invalid. Defendants filed a motion to stay
these proceedings pending the outcome of defendant
individual's application to the United States Patent and
Trademark Office (PTO) for a reexamination of the '833
patent.

**OVERVIEW:** This patent infringement action was
pending for less than a year. Substantial discovery had
been conducted and the parties submitted witness lists
and three lengthy summary judgment motions. Yet far
more time and resources remained to be spent before the
matter could be concluded. The district court held that
the interests of the parties weighed in favor of a stay
pending reexamination of the '833 patent by the PTO.
The PTO's determination of the validity of the '833 pat-
ent would be beneficial to the efficient resolution of this

action. The PTO could resolve any remaining disputes,
simplify the issues with respect to that patent, or encour-
age the parties to settle the remaining claims. Although
not binding on the court, the PTO's decision would be
admissible and carry a presumption of validity. Princi-
ples of equity did not prevent defendants from seeking a
reexamination under 35 U.S.C.S. § 302.

**OUTCOME:** Defendant's motion to stay district court
proceedings pending the outcome of a request for reex-
amination of the '883 patent was granted. The case was
stayed.

**CORE TERMS:** reexamination, patent, discovery, es-
toppel, assignor, summary judgment, pretrial, invalid,
expertise, primary jurisdiction, trial date, patentability,
preparation, equitable, assigned, staying, mo-
tion to stay, declaratory judgment, local rules, reply, reg-
istration, consistency, challenging, regulation, request-
ing, uniformity, invalidate, scheduled, entrusted

**LexisNexis(R) Headnotes**

*Patent Law > U.S. Patent & Trademark Office Pro-
ceedings > Reexaminations*
*Trademark Law > Protection of Rights > Registration >
Federal Registration*
[HN1] Once a request for reexamination has been filed,
the United States Patent and Trademark Office (PTO)
must determine within three months whether a substan-
tial new question of patentability affecting any claim of
the patent concerned is raised by the request, with or
without consideration of other patents or printed publica-
tions. 35 U.S.C.S. § 303(a). If a substantial new question
of patentability exists, the PTO must issue an order for

Case 1:05-cv-00590-GMS    Document 26-3    Filed 02/22/2006    Page 20 of 34

2003 U.S. Dist. LEXIS 24423, *; 68 U.S.P.Q.2D (BNA) 1755

reexamination. Ultimately, the reexamination procedure will result in an order either cancelling the patent, confirming the patent, or amending the patent.

*Civil Procedure > Trials > Judicial Discretion*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN2] The decision whether to stay pending district court proceedings while the United States Patent and Trademark Office's reexamination takes place, while not vested expressly by statute, is within the court's inherent discretionary power.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN3] Issuing a stay while the United States Patent and Trademark Office's (PTO) reexamination takes place has many advantages, including: (1) All prior art presented to the court will have been first considered by the PTO, with its particular expertise. (2) Many discovery problems relating to prior art can be alleviated by the PTO examination. (3) In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed. (4) The outcome of the reexamination may encourage a settlement without the further use of the court. (5) The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation. (6) Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination. (7) The cost will likely be reduced both for the parties and the court.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN4] The reexamination procedure is intended to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts, especially where the infringement litigation is in the early stages. Parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN5] In determining whether to grant a stay, courts have considered the following factors: (1) whether a stay

would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. Despite the third consideration, courts have granted stays even where discovery has been completed and even when a trial date has been scheduled or is forthcoming.

*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Validity Presumption*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN6] The reexamination process only is an alternative method for challenging the validity of a patent. The United States Patent and Trademark Office's decision is presumptively valid, but not binding on the district court. Additional evidence may be submitted in the district court proceedings.

*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Fact & Law Issues*
*Trademark Law > Infringement Actions > General Overview*
[HN7] The determination as to whether a patent is valid is a question of law within the conventional experience of judges.

*Patent Law > Ownership > Conveyances > Assignor & Licensee Estoppel*
*Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview*
[HN8] The doctrine of assignor estoppel prevents a party who assigns a patent to another from later challenging the validity of the assigned patent.

*Civil Procedure > Jurisdiction > Equity Jurisdiction*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN9] 35 U.S.C.S. § 302, which permits any person to request a reexamination, supersedes contrary equitable principles.

*Civil Procedure > Jurisdiction > Equity Jurisdiction*
*Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview*
[HN10] Although assignor estoppel is designed to work equity in proper circumstances, courts may not ignore statutory law. Courts are bound to follow express statu-

Case 1:05-cv-00590-GMS    Document 26-3    Filed 02/22/2006    Page 21 of 34

2003 U.S. Dist. LEXIS 24423, *; 68 U.S.P.Q.2D (BNA) 1755

tory commands under the fundamental principal that equity follows the law.

***Civil Procedure > Jurisdiction > Equity Jurisdiction***
***Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations***
[HN11] 35 U.S.C.S. § 302 places no restrictions on who may seek reexamination and this legal mandate supersedes contrary equitable principles.

**COUNSEL:** For Ralph Gonnocci Revocable Living Trust, PLAINTIFF: Rodger D Young, Steven C Susser, Young & Susser, Southfield, MI USA.

For Three M Tool and Machine, DEFENDANT: Leonard K Berman, Hainer & Demorest, Troy, MI USA.

**JUDGES:** PRESENT: THE HONORABLE PATRICK J. DUGGAN, U.S. DISTRICT COURT JUDGE.

**OPINIONBY:** PATRICK J. DUGGAN

**OPINION:**

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING THE OUTCOME OF A REQUEST FOR REEXAMINATION OF U.S. PATENT NO. 5,184,833 BEFORE THE U.S. PATENT AND TRADEMARK OFFICE**

At a session of said Court, held in the U.S. District Courthouse, City of Detroit, County of Wayne, State of Michigan, on OCT 07 2003.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

In this action, Plaintiff alleges that Defendants are infringing U.S. Patent No. 5,184,833 (the '833 Patent). n1 Defendants have filed a counterclaim seeking a declaratory judgment that the '833 Patent is invalid [*2] and unenforceable. n2 This matter is now before the Court on a motion by Defendants, filed August 28, 2003, to stay these proceedings pending the outcome of Defendant Michael Medwid's application to the United States Patent and Trademark Office ("PTO") for a reexamination of the '833 Patent. n3 In the alternative, Defendants request an adjournment of the trial date until a date and time after November 29, 2003-- the date by which the PTO must provide an initial response to the Request for Reexamination. A hearing on Defendants' motion was held on October 2, 2003.

n1 In Count II of the Complaint, Plaintiff also claimed that Defendants infringed U.S. Patent No. 6,206,382 (the '382 Patent). The parties, however, have stipulated to the dismissal of Count II. A Stipulation and Order for Dismissal with Prejudice of Claim II was entered on September 3, 2003.

n2 In Count I of their Counter-Complaint, Defendants also seek a declaratory judgment that the '382 Patent is invalid.

n3 Plaintiff filed a Response to Defendants' motion to stay on September 22, 2003. On September 29, Defendants filed a Reply in which they ask the Court to strike Plaintiff's Response as it was filed late. Defendants note that while the Court "has admonished counsel for all parties to cooperate with one another in this litigation, it is submitted that even the civility rules do not excuse non-compliance with the local rules of the Court." *See* Reply at 1. Plaintiff's Response was due September 15. While the Court does not excuse Plaintiff's untimely filing, its Response only was seven days late. Furthermore, if the Court were to strictly enforce the local rules and thus strike Plaintiff's Response, it also would be inclined to strike Defendants' motion and reply for failing to comply with Local Rule 5.1 (requiring top and bottom margins to be at least 1 1/2" and type size of all test *and footnotes* to be no smaller than 10 characters per inch (non-proportional) or 12 point (proportional).

[*3]

**Procedural Background**

Plaintiff filed its Complaint for patent infringement on December 2, 2002. This Court entered a Pretrial Scheduling Order on February 3, 2003, setting deadlines for filing witness lists, discovery, and the filing of motions for May 31, June 30, and July 15, 2003, respectively. Pursuant to the February 3 Scheduling Order, the final pretrial conference was to be held on September 10, 2003. On June 30, Defendants filed a motion seeking an extension of the dates set forth in the Court's Scheduling Order. The Court granted Defendants' motion in part, extending the deadlines for discovery and the filing of witness lists and motions by sixty days. On August 4, 2003, the Court set this matter for trial on its October, 2003 trailing trial docket.

According to Plaintiff, as of September 22, 2003, both parties had conducted extensive discovery and only one deposition remained to be taken. Both parties have filed their witness lists. On July 15, 2003, Plaintiff filed a motion for summary judgment. Defendants filed a re-

Case 1:05-cv-00590-GMS    Document 26-3    Filed 02/22/2006    Page 22 of 34

2003 U.S. Dist. LEXIS 24423, *; 68 U.S.P.Q.2D (BNA) 1755

sponse on August 22, 2003. Defendants also filed motions for summary judgment on August 29, 2003. All three motions remain pending before the Court. [*4]

On August 29, 2003, the same date Defendants' filed their motion to stay, Defendant Michael Medwid ("Medwid") filed a Request for Reexamination with the PTO of Claims 1-20 of the '833 Patent. Medwid seeks to invalidate or amend the claims of the '833 Patent, pursuant to 35 U.S.C. Section 301, on the basis that its inventors, Ralph Gonnocci ("Gonnocci") and Kenneth Cross ("Cross"), failed to file certain prior art references with their patent application. n4

> n4 Gonnocci and Cross were the original holders of the '833 Patent. Cross subsequently died, but before his death he assigned his interest in the patent to Gonnocci. Gonnocci then assigned his ownership in the patent to Plaintiff.

**Applicable Law**

[HN1] Once a request for reexamination has been filed, the PTO must determine within three months "whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications. [*5] " 35 U.S.C. § 303(a). If a substantial new question of patentability exists, the PTO must issue an order for reexamination. Ultimately, the reexamination procedure will result in an order either cancelling the patent, confirming the patent, or amending the patent.

[HN2] The decision whether to stay pending district court proceedings while the PTO's reexamination takes place, while not vested expressly by statute, has been recognized to be within the court's inherent discretionary power. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). [HN3] Issuing a stay has many advantages, including:

> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation. [*6]
>
> 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

*Emhart Indus. v. Sankyo Seiki Mfg, Co.*, 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)(citing *Fisher Controls Co. v. Control Components, Inc.*, 443 F. Supp. 581, 582 (S.D. Iowa 1977)). [HN4] The reexamination procedure "was intended 'to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts,' especially where the infringement litigation is in the early stages." *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 U.S. Dist. LEXIS 11274, 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y. 2000)(quoting *Digital Magnetic Sys., Inc. v. Ansley*, 1982 U.S. Dist. LEXIS 12395, 213 U.S.P.Q.290 (W.D. Okla. 1982)). The court cautioned that "parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation." *Id.*

[HN5] In determining whether to grant a stay, courts have considered [*7] the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id.* at 1635-36(quoting *Xerox Corp. v. 3Com Corp.*, 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999)). Despite the third consideration, courts have granted stays even where discovery has been completed and even when a trial date has been scheduled or is forthcoming. *See, e.g., Emhart Indus.*, 3 U.S.P.Q.2d at 1891 (granting stay despite completion of costly discovery where there was no pretrial order in place, no trial schedule had been set, and virtually no trial preparations had been carried out); *Grayling Indus. v. GPAC, Inc.*, 1991 U.S. Dist. LEXIS 16750, 19 U.S.P.Q.2d 1872 (N.D. Ga. 1991)(granting stay two years after case filed and one month after pretrial order submitted, particularly as six depositions remained to be taken which would result in added expense); *Loffland*

Case 1:05-cv-00590-GMS     Document 26-3     Filed 02/22/2006     Page 23 of 34

2003 U.S. Dist. LEXIS 24423, *; 68 U.S.P.Q.2D (BNA) 1755

*Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886, (W.D. Okla. [*8] 1985)(granting stay one and a half years after complaint filed and after trial was scheduled to commence).

### Argument

Defendants raise several arguments in favor of their request for a stay. First, Defendants argue that the issues before the PTO in Medwid's Reexamination Request completely overlap the remaining claims before this Court. Thus awaiting the PTO's determination, Defendants argue, promotes judicial economy. Defendants contend that the PTO can more expeditiously and less expensively resolve the validity dispute involving the '833 Patent and the Court is better served by the expertise of the PTO on this issue. Defendants also claim that "investor confidence" will be promoted by PTO review of a "doubtful patent," as Plaintiff's stated goal is to license the '833 [Patent] to third parties. Defendants believe that all seven advantages identified above also will be achieved by a stay of the present action.

Turning to the three factors district courts consider in determining whether to grant a stay, Defendants argue that Plaintiff will not be prejudiced by a delay in this action. Most significantly, Defendants point out that the Court previously denied Plaintiff's earlier [*9] request for injunctive relief. Defendants also note that much remains to be done in this action before it is ready for trial. For example, no final pretrial conference has occurred, a joint final pretrial order has not been drafted, discussed, or entered by the Court, and extensive, additional pretrial preparations must be completed, such as motions in limine and trial briefs. Staying the proceedings while the PTO conducts its reexamination, Defendants therefore argue, will serve to protect the parties and the Court from additional undue expense and time spent preparing this matter for trial.

Defendants further contend that moving forward with these proceedings may prove wasteful if the PTO eventually determines that the '833 Patent is invalid in whole or in part. For that reason, Defendants also argue that staying this action could serve to simplify the issues and trial of the case. Defendants claim that if the PTO invalidates the '833 Patent upon reexamination, this Court will no longer have subject matter jurisdiction over Plaintiff's claim. In addition to the additional pretrial preparation that must be done, Defendants point out that three extensive summary judgment motions have [*10] been filed and remain pending in this proceeding. Finally, Defendants claim that the doctrine of primary jurisdiction supports a stay of the present proceedings pending the PTO's reexamination of the '833 Patent.

Plaintiff responds that it will be greatly prejudiced by a stay and that the proceedings will not aided by the PTO's decision. Plaintiff contends that Defendants' only reason for requesting a stay nearly ten months into litigation is to delay the case in the hopes that Gonnocci, who is in his seventies and has no income, will cause Plaintiff to drop its claims. Plaintiff doubts that Defendants honestly believe the '833 is invalid, pointing out that Defendants previously tried to obtain the '833 Patent in a state court action. Plaintiff also contends that Defendants' challenges to the validity of the '833 Patent ultimately will fail under the doctrine of assignor estoppel. Finally, Plaintiff believes that a stay is inappropriate where Defendants have intentionally waited until the eleventh hour to request a reexamination.

Staying the proceedings at this stage while the PTO conducts its reexamination, Plaintiff argues, will delay the resolution of the parties' dispute for [*11] close to twenty months (the amount of time Plaintiff claims statistics indicate reexamination proceedings last). Plaintiff points out that as time passes, memories fade, the availability of witnesses change, and the importance of the issues diminish as technology progresses. Furthermore, Plaintiff claims that the pendency of this litigation makes it difficult for Plaintiff to license the '833 Patent. Plaintiff also asserts, as it did in its motion for preliminary injunction, that Defendants are in a difficult financial situation and thus may be incapable of compensating Plaintiff down the road. For that reason, Plaintiff also asks the Court to order Defendants to post a bond pursuant to Rule 11 if it grants a stay. n5

> n5 Rule 11 does not grant the Court authority to order Defendants to post a bond now *in the event* Defendants are unable to pay a potential judgment in this matter. The only additional authority Plaintiff cites for its request is the district court's decision in *Canady v. Erbe Elektronedizin GmbH*, 271 F. Supp. 2d 64, 2002 WL 32128716 (D.D.C. 2002). Nothing in that case, however, suggests that a court may require a bond under these circumstances.

[*12]

### Analysis

Although there are factors supporting Plaintiff's and Defendants' positions, the Court finds, on balance, that the interests of the parties and the Court weigh in favor of a stay. n6

> n6 The Court finds that a stay at least is warranted while the PTO makes its initial determination as to whether to proceed with a reexamination. If the PTO finds in its initial review that

Case 1:05-cv-00590-GMS    Document 26-3    Filed 02/22/2006    Page 24 of 34

2003 U.S. Dist. LEXIS 24423, *; 68 U.S.P.Q.2D (BNA) 1755

Medwid's request fails to raise "substantial new questions of patentability," Plaintiff can ask the Court to lift the stay at that time.

This action has been pending for less than a year. Undoubtably the parties have spent considerable time and resources thus far- substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties [*13] and the Court to prepare this case for trial.

Plaintiff may be correct that Medwid did not act swiftly in seeking reexamination. Nothing in the record, however, indicates when Medwid became aware of the prior art which is the basis for his request for reexamination. Furthermore, Defendants' counsel only filed their notice of appearance on June 30,2003. Thus the Court cannot conclude that Mediwid unnecessarily delayed seeking a reexamination or that he only is doing so now to stall this litigation.

Furthermore, the Court finds that the PTO's determination will be beneficial to the efficient resolution of this action. The PTO may resolve any remaining disputes, simplify the issues with respect to that patent, or encourage the parties to settle the remaining claims. Although not binding on this Court, the PTO's decision will be admissible and carries a presumption of validity. Furthermore, the parties already have settled their claims with respect to the '382 Patent. Perhaps the PTO's decision regarding the '833 Patent will facilitate a settlement of their remaining claims.

The Court does not find the doctrine of primary jurisdiction applicable to the issues to be decided in this case. [*14] As courts have explained this doctrine:

> The doctrine of primary jurisdiction represents a version of the administrative exhaustion requirement under circumstances in which a judicially cognizable claim is presented but "enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body ..."

*Goya Foods, Inc. v. Tropicana Prods., Inc.,* 846 F.2d 848, 851 (2d Cir. 1988)(quoting *United States v. W. Pa-*

*cific R.R.,* 352 U.S. 59, 64, 77 S. Ct. 161, 165, 1 L. Ed. 2d 126, 135 Ct. Cl. 997 (1956)). The doctrine guarantees "uniformity and consistency in the regulation of business entrusted to a particular agency" and "is intended to recognize that, with respect to certain matters, 'the expert and specialized knowledge of the agencies' should be ascertained before judicial consideration of the legal claim." *Id.* (internal citations omitted).

The Court finds the doctrine inapplicable for the following reasons. [HN6] The reexamination process only is an alternative method for challenging the validity of a patent. The PTO's decision is presumptively valid, but not binding on the [*15] district court. Additional evidence may be submitted in the district court proceedings. Finally, [HN7] the determination as to whether a patent is valid is a question of law "within the conventional experience of judges." *Johnson & Johnson v. Wallace A. Erickson & Co.,* 627 F.2d 57, 61-62 (7th Cir. 1980)(quoting *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S. Ct. 492, 494, 96 L. Ed. 576 (1952)). As the *Goya Foods* court explained in rejecting the application of the doctrine to a trademark infringement action:

> We are not dealing here with a regulated industry in which policy determinations are calculated and rates are fixed in order to calibrate carefully an economic actor's position within a market under agency control, and the PTO's decision to permit, deny, or cancel registration is not the type of agency action that secures "uniformity and consistency in the regulation of business entrusted to a particular agency." Nor does the registration determination raise "technical questions of fact uniquely within the expertise and experience of an agency."

*Goya Foods,* 846 F.2d at 852 (internal citations omitted). [*16] Despite the Court's rejection of the doctrine's application to the present matter, the Court nevertheless concludes that the advantages of a stay to permit the PTO, with its technical expertise, to address Medwid's request for reexamination outweigh any prejudice to Plaintiff.

The Court is not persuaded otherwise by Plaintiff's assertion of the doctrine of assignor estoppel. [HN8] That doctrine prevents a party who assigns a patent to another from later challenging the validity of the assigned patent. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc.,* 150 F.3d 1374, 1377 (Fed. Cir. 1998).

Case 1:05-cv-00590-GMS    Document 26-3    Filed 02/22/2006    Page 25 of 34

2003 U.S. Dist. LEXIS 24423, *; 68 U.S.P.Q.2D (BNA) 1755

Plaintiff anticipates that Defendants will argue that the doctrine of assignor estoppel is inapplicable because, as Defendants claimed in earlier state court proceedings, Defendant Ultra Grip Incorporated's assignment of the '833 Patent to Gonnocci and Cross was unlawfully accomplished. Plaintiff argues that the state court action was dismissed with prejudice and thus Defendants are precluded from arguing in these proceedings that the assignment was unlawful.

First, while the state court action may have been dismissed with prejudice, the Court lacks sufficient information about [*17] that action (particularly under what circumstances it was dismissed) to conclude that Defendants should be barred from raising that issue here. Second, the assignor estoppel doctrine is an equitable doctrine that has been asserted to bar a party from claiming patent invalidity in response to an infringement action. Plaintiff cites no authority to suggest that the doctrine bars a party from requesting the PTO's reexamination of a patent. In fact, at least two courts have held that [HN9] Section 302 of the patent statute, which permits *any person* to request a reexamination (even anonymously), supersedes contrary equitable principles. *See Total Containment Inc. v. Environ Prods., Inc.,* 1995 U.S. Dist. LEXIS 2364, 34 U.S.P.Q.2d 1254, (E.D. Pa.

1995)(holding that [HN10] "although assignor estoppel is designed to work equity in proper circumstances, courts may not ignore statutory law ... Courts are bound to follow express statutory commands under the fundamental principal that equity follows the law."); *Vitronics Corp. v. Conceptronic, Inc.,* 36 F. Supp.2d 440, 442 (D.N.H. 1997)(Holding that [HN11] Section 302 places no restrictions on who may seek reexamination and this [*18] legal mandate supersedes contrary equitable principles).

Accordingly,

**IT IS ORDERED,** that Defendants' Motion to Stay District Court Proceedings Pending the Outcome of a Request for Reexamination of U.S. Patent No. 5,184,833 Before the U.S. Patent & Trademark Office is **GRANTED;**

**IT IS FURTHER ORDERED,** that this matter is **STAYED** and thus will be removed from the Court's October trailing trial docket.

PATRICK J. DUGGAN

UNITED STATES DISTRICT JUDGE

# EXHIBIT L

LEXSEE

**HEWLETT-PACKARD COMPANY, Plaintiff, v. ACUSON CORPORATION, Defendant.**

**No. C-93-0808 MHP**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**1993 U.S. Dist. LEXIS 6449**

**May 5, 1993, Decided**
**May 5, 1993, Filed; May 6, 1993, Entered**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant filed a motion to stay plaintiff's patent infringement action pending the outcome of its petition for reexamination of the patent pursuant to 35 U.S.C.S. §§ 301-07.

**OVERVIEW:** Plaintiff sued defendant for infringing its patent for a medical diagnostic imaging system. Prior to plaintiff's action, defendant submitted to the United States Patent and Trademark Office a petition for reexamination of the patent pursuant to 35 U.S.C.S. § 301-07. Defendant filed a motion to stay litigation pending the reexamination. The court granted defendant's motion to stay since a reexamination would likely simplify the issues, proof, and questions of law relating to the accommodation to the assignor estoppel doctrine, and expedite the infringement litigation by clarifying whether plaintiff's claim to assignor estoppel could prevail. The possible hardship to plaintiff was outweighed by the orderly cause of justice measured in terms of simplification of issues, proof, and questions of law expected to result from the stay.

**OUTCOME:** The court granted defendant's petition to stay plaintiff's patent infringement action pending the outcome of its petition for reexamination, since the possible hardship to plaintiff was outweighed by the simplification of issues, proof, and answers to questions of law expected to result from the stay.

**CORE TERMS:** patent, assignor, estoppel, reexamination, infringement, invalidity, accommodation, narrowed, invention, injunctive relief, questions of law, original patent, equitable, hardship, assigned, patent infringement, motion to stay, patent issued, unenforceability,

contesting, infringing, eliminated, expertise, estopped, licensee, assignee, measured, orderly, dictate, staying

**LexisNexis(R) Headnotes**

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN1] The district court has the authority to stay actions in order to control the disposition of the cases on its docket which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Patent Law > Remedies > Collateral Assessments > Costs*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN2] Ordinarily, courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers. The purpose of the reexamination procedure is to eliminate the need for a trial if the claim is canceled or to

provide the district court with the expert view of the Patent Office if the claim survives the reexamination. Additionally, there is clear congressional intent to maximize efficiency and reduce cost in this regard; thus, district courts often stay patent proceedings pending reexamination.

*Patent Law > Ownership > Conveyances > Assignor & Licensee Estoppel*
*Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview*
[HN3] The doctrine of assignor estoppel is not an all or nothing bar to an assignor's invalidity defense in an infringement proceeding. There is an "accommodation" to the assignor estoppel doctrine which may frustrate the use of estoppel to bar a defense of invalidity in a patent infringement case.

*Patent Law > Ownership > Conveyances > Assignments*
*Patent Law > Ownership > Conveyances > Assignor & Licensee Estoppel*
*Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview*
[HN4] Assignor estoppel is an equitable doctrine. The primary consideration in applying the doctrine is the measure of unfairness and injustice that would be suffered by the assignee if the assignor were allowed to raise defenses of patent invalidity. The court's analysis must be concerned mainly with the balance of equities between the parties.

**JUDGES:** [*1] PATEL

**OPINIONBY:** MARILYN HALL PATEL

**OPINION:**

### MEMORANDUM AND ORDER

Plaintiff Hewlett-Packard Company ("HP") brought this action on March 8, 1993 against defendant Acuson Corporation ("Acuson") for allegedly infringing upon United States patent No. 4,140,022 (" '022"). Prior to this action, Acuson submitted to the United States Patent and Trademark Office ("PTO") a petition for reexamination of the '022 patent pursuant to 35 U.S.C. § § 301-07. The matter is presently before the court on Acuson's motion to stay litigation pending the reexamination.

Having considered the submissions and arguments of the parties, and for the following reasons, the court GRANTS Acuson's motion to stay litigation pending reexamination.

BACKGROUND

While working for HP, Samuel H. Maslak ("Maslak") discovered an ultrasonic imaging invention. Pursuant to an employment agreement, Maslak (1) assigned to HP all of his right, title and interest in and to his invention, (2) expressly authorized HP to apply for and obtain a patent for the invention and (3) agreed to assist in obtaining such patent. Opp. to Mot. for Stay, Ex. 3.

On December 20, 1977 HP filed a United States patent application [*2] covering Maslak's invention, identifying Maslak as the inventor and HP as the assignee. McElhinny Dec., Ex. B at 1. A formal Notice of Allowance for the '022 patent issued on August 31, 1978, Opp. to Mot. for Stay, Ex. 7, and the patent issued on February 20, 1979. McElhinny Dec., Ex. B at 1. Maslak gave notice of his resignation from HP on November 20, 1978. Opp. to Mot. for Stay, Ex. 8.

In September 1981, Maslak co-founded Acuson and has been President, Chief Executive Officer and a director since that date. Oakley Dec., Ex. 2 at 30. Acuson introduced its first medical diagnostic imaging system in 1983. Id. P 3.

By letter dated June 1, 1990, HP contacted Acuson regarding possible infringement of its '022 patent. Id. P 2. Acuson filed a Request for Reexamination of the '022 patent with the PTO on March 3, 1993. McElhinny Dec., Ex. D. Grounds for reexamination raised by Acuson include anticipation, double patenting and obviousness. Id., Ex. D at 2-3. Acuson claims that the references cited to in its Request for Reexamination were not cited to or considered by the PTO during the original '022 patent proceedings. Id., Ex. D at 4. On March 8, 1993 HP filed this [*3] action alleging that Acuson's medical diagnostic systems infringe upon the '022 patent. Acuson now moves for a motion staying the litigation pending reexamination by the PTO.

LEGAL STANDARD

This circuit has held that [HN1] the district court has the authority to stay actions in order to:

> control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage

which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

Filtrol Corp. v. Kelleher, 467 F.2d 242, 244 (9th Cir. 1972), cert. denied, 409 U.S. 1110, 34 L. Ed. 2d 691, 93 S. Ct. 914 (1973) [*4] (citations omitted). [HN2] Ordinarily, courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers. See Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir.), cert. denied, 464 U.S. 935, 78 L. Ed. 2d 310, 104 S. Ct. 343 (1983). n1 The purpose of the reexamination procedure is to eliminate the need for a trial if the claim is canceled or to provide the district court with the expert view of the Patent Office if the claim survives the reexamination. Id. Additionally, there is clear congressional intent to maximize efficiency and reduce cost in this regard; thus, district courts often stay patent proceedings pending reexamination. See, e.g., Ingro v. Tyco Industries, Inc., 227 U.S.P.Q. (BNA) 69, 71 (N.D. Ill. 1985) ("legislative history indicates Congress . . . approved of courts liberally granting stays within their discretion."); Digital Magnetic Systems, Inc., v. Ansley, 213 U.S.P.Q. (BNA) 290 (W.D. Okla. 1982) ("Congress enacted the reexamination [*5] procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."). n2

n1 See also, Grayling Industries v. GPAC, Inc., 1991 U.S. Dist. LEXIS 16750, 19 U.S.P.Q.2D (BNA) 1872, 1873 (N.D. Ga. 1991); Brown v. Shimano American Corp., 18 U.S.P.Q.2D (BNA) 1496 (C.D. Cal. 1991).

n2 For more detailed information in support of a stay of patent proceedings pending reexamination, see Teradyne, Inc. v. Hewlett-Packard Company, Civil Action No. C-91-0344 MHP (Memorandum and Order, Jan. 7, 1993), at 16-20.

DISCUSSION

During oral argument, HP admitted that it was on notice that Acuson might be infringing its '022 patent as early as 1983. While the court applauds HP's efforts to settle its dispute with Acuson through means other than litigation, HP's ten year delay in seeking to protect its patented interests weighs heavily against denying Acuson's motion for stay. n3 Indeed, the first record [*6] of correspondence with Acuson concerning patent infringement is dated June 1, 1990. Oakley Dec. P 2. The record also shows that HP did not seek to enforce its patent until after Acuson had filed its Request for Reexamination of the '022 patent. The court finds that these combined factors compel a grant of Acuson's request for a stay pending the PTO proceedings.

n3 The present action is brought with only three years remaining in the life of the patent.

Moreover, the court is not persuaded by HP's assignor estoppel argument opposing Acuson's motion for stay. Acuson alleges that reexamination of patent '022 will result in an amendment or cancellation of the patent, thus streamlining the current litigation. Specifically, Acuson argues that HP failed to disclose to the PTO, during the original '022 patent proceedings, evidence of a patent previously issued to HP, n4 which would bear upon the patentability of the '022 patent. n5 Acuson urges that the technical nature of both the prior art and the '022 patent dictate [*7] that this court issue a stay so that the PTO's expertise can be brought to bear in assessing this question and in determining whether or not the '022 may be narrowed, amended or invalidated.

n4 Acuson alleges that the '229 is also owned by HP and was prosecuted by the same attorney as the '022.

n5 Acuson bolsters this claim by arguing that during the prosecution of the German equivalent of '022, Siemans Corporation cited the '229 against the '022. Acuson states that HP amended and narrowed claim 1 of the '022 patent as a result.

HP, on the other hand, opposes a stay of the present litigation. HP argues that Acuson is barred under the doctrine of assignor estoppel, as a matter of law, from alleging patent invalidity or unenforceability as a defense to the underlying infringement action. In support of this proposition, HP cites Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1224 (Fed. Cir.), cert. dismissed, 487 U.S. 1265 (1988):

[*8]  Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity.  The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor. n6

Diamond, 848 F.2d at 1224. Therefore, HP urges, Acuson's motion for stay pending reexamination for invalidity or unenforceability is without merit.

n6  In Lear, Inc. v. Adkins, 395 U.S. 653, 668-71, 23 L. Ed. 2d 610, 89 S. Ct. 1902 (1969), the Supreme Court abolished as inconsistent with federal patent and antitrust policy the doctrine that a licensee was estopped from contesting the validity of a patent.  However, the doctrine that an assignor was estopped from contesting the validity of a patent was not addressed by the Court. As a result, it remained unclear whether the rule of Lear should also be applied to assignor estoppel.  As late as 1972, the rule of this circuit was that the Lear rule should be applied.  See Coastal Dynamics Corp. v. Symbolic Displays, Inc., 469 F.2d 79 (9th Cir. 1972) (Lear dictates abolition of assignor estoppel).  However, the passage of 29 U.S.C. § 1295 gave exclusive jurisdiction to the Federal Circuit on appeals from district court decisions involving patent law under 28 U.S.C. § 1338.  And, in 1988, the Federal Circuit found that the rule of Lear did not apply to assignor estoppel, distinguishing assignor estoppel from licensee estoppel. See Diamond, 848 F.2d at 1224 (assignor estoppel available to bar invalidity defense in infringement proceedings).

[*9]

Although HP's argument may apply as a litigation strategy in the underlying infringement action, is not entirely persuasive on the motion for stay. n7 In fact, for the following reasons, this court finds that a stay in this action will "promote economy of time and effort for itself, for counsel, and for [the] litigants." Filtrol, 467 F.2d at 244.

n7 Whether HP has met all of the equitable requirements to use assignor estoppel to bar a defense of invalidity by Acuson in the infringement

action is not before the court. Rather, the court, at this juncture, is concerned only with Acuson's motion for stay.  While HP's intended use of assignor estoppel may bear upon the court's determination of stay, it is not dispositive.

First, Diamond indicates that [HN3] the doctrine of assignor estoppel is not an all or nothing bar to an assignor's invalidity defense in an infringement proceeding. 848 F.2d at 1226. Diamond recognizes an "accommodation" to the assignor estoppel [*10] doctrine which may frustrate the use of estoppel to bar a defense of invalidity in a patent infringement case.  The "accommodation" was carved out by Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 350-53, 69 L. Ed. 316, 45 S. Ct. 117 (1924).

"To the extent that [the party claiming infringement] may have broadened the claims in the patent applications (after the assignments) beyond what could be validly claimed in light of the prior art, Westinghouse may allow appellants to introduce evidence of prior art to narrow the scope of the claims of the patents, which may bring their accused devices outside the scope of the claims of the patents in suit."

Diamond, 848 F.2d at 1226 (citing Westinghouse, 266 U.S. at 350). Thus, the reexamination of '022 will, more likely than not, simplify the issues, proof, and questions of law relating to this "accommodation," see Filtrol, 467 F.2d at 244, and expedite the infringement litigation by clarifying whether HP's claim to assignor estoppel may prevail in the infringement litigation, or will be frustrated by the "accommodation".  [*11]

Second, as Acuson correctly points out, [HN4] assignor estoppel is an equitable doctrine. "The primary consideration in [] applying the doctrine is the measure of unfairness and injustice that would be suffered by the assignee if the assignor were allowed to raise defenses of patent invalidity. Our analysis must be concerned mainly with the balance of equities between the parties." Diamond, 848 F.2d at 1225; accord, Carroll Touch v. Electro Mechanical Systems, Inc., 779 F. Supp. 101, 103 (C.D. Ill. 1991) (Diamond did not create a mechanical checklist for application of assignor estoppel, the court must still consider the equities involved in applying the doctrine).  Therefore, Acuson's claim that HP's conduct before the PTO was inequitable and fraudulent in reference to the original '022 patent proceeding may very will

bar HP from relying on the doctrine of assignor estoppel during the infringement litigation. See Shamrock Technologies v. Medical Sterilization, Inc., 903 F.2d 789, 795 (Fed. Cir. 1990) ("in a proper case general principles of equity may preclude use of assignor estoppel to bar [*12] a viable equitable defense arising from post-assignment events"); accord, Buckingham Prods. Co. v. McAleer Mfg. Co., 108 F.2d 192, 195 (6th Cir. 1939); see also, Medical Designs, Inc. v. Medical Technology, Inc., 786 F. Supp. 614, 618 (N.D. Tex. 1992) (application of assignor estoppel barred when party seeking patent proceeded without calling to the attention of the PTO material prior art).

This second factor weighs heavily in favor of staying the litigation pending the PTO's reexamination of the '022 patent. In the event that a trial court should bar HP from using assignor estoppel after weighing the equities, the reexamination process, having possibly narrowed or eliminated some of the infringement claims, could greatly increase the efficiency of the litigation process. See Gould, 705 F.2d at 1342.

Therefore, this court finds that the possible hardship to HP, including delay of injunctive relief, is outweighed by the orderly cause of justice measured in terms of the simplification of issues, proof, and questions of law which are expected to result from the stay. n8 Filtrol, 467 F.2d at 244; [*13] see also Gould, 705 F.2d at 1342.

n8 HP claims no other substantial hardship other than the delay in obtaining injunctive relief based on a finding that Acuson has infringed the '022 patent. The court finds that the stay involved is not of such a protracted or indefinite period as to render its issuance an undue hardship. The fact that the life of the patent may expire before the stay is up is of no moment; other remedies besides injunctive relief still remain available to HP.

CONCLUSION

For all the foregoing reasons, Defendant's motion for a stay of litigation pending the later of (1) the decision by the United States Patent and Trademark Office on Defendant's request for reexamination of U.S. Letter Patent N. 4.140.022 ( '022), or (2) the conclusion of the reexamination proceedings is GRANTED.

IT IS SO ORDERED.

Dated: MAY 5 - 1993

MARILYN HALL PATEL

United States District Judge

# EXHIBIT M

Westlaw.

Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1985 WL 1483 (W.D.Okla.), 225 U.S.P.Q. 886
**(Cite as: Not Reported in F.Supp.)**

c

United States District Court; W.D. Oklahoma.
LOFFLAND BROTHERS COMPANY, Plaintiff,
v.
MID-WESTERN ENERGY CORP., a corporation;
WESTERN DRILLING COMPANY RIG-205, INC.,
a corporation; WESTERN DRILLING COMPANY
RIG-206, INC., a corporation, successor in interest to
Western Drilling Company; WESTERN DRILLING
COMPANY RIG-207, INC., a corporation;
RAYMOND E. SMITH, an individual; CHARLES
A. OVERSTREET, an individual; and BILL
BATTLES, an individual, Defendants.
**No. CIV-83-2255-E.**

January 3, 1985.

James R. Head HEAD, JOHNSON & STEVENSON
228 West 17th Place Tulsa, Oklahoma 74119, for
plaintiff.
Russell Mulinix HASTIE & KIRSHNER 3000 First
Oklahoma Tower Okla. City, Okla. 73102, for
plaintiff.
Raymond E. Tompkins W. Daniel Shelton LINN &
HEIMS Suite 400, Fidelity Plaza Okla. City, Okla.
73102, for defendant.
Richard F. Campbell, III & Robert D. Baron
FELLERS, SNIDER, BLANKENSHIP, BAILEY &
TIPPENS 2400 First National Center Okla. City,
Okla. 73102, for defendant.
Kenneth R. Webster McKINNEY, STRINGER &
WHESTER Ninth Floor, City Center Building Main
& Broadway Okla. City, Okla. 73102, for defendant.
William R. Davis 1319 Classen Drive Okla. City,
Okla. 73103, for defendant.

ORDER

??, District Judge.
*1 This is an action for the infringement of plaintiff's
patent for an elevating catwalk used on drilling rigs.
Jurisdiction over the patent claim is premised upon
28 U.S.C. § 1338. Pendent jurisdiction is alleged
over plaintiff's claims of unfair competition and
misappropriation of trade secrets.

Before the Court for consideration is defendants'
Motion for Partial Summary Judgment, or, in the
alternative, Renewed Motion to Stay.

BACKGROUND

Plaintiff filed its complaint in this action on
September 16, 1983. Defendants filed a request for
reexamination of the patent with the U.S. Patent and
Trademark Office (PTO) on April 11, 1984. The
PTO granted defendants' request on May 29, 1984.
The decision of the PTO to grant the request for
reexamination states that a substantial new question
of patentability affecting claims 1-6 of plaintiff's
patent is raised by the request. Defendants' Brief in
Support of the Motion for Partial Summary
Judgment, Exhibit A, at 2.

By order of September 21, 1984, the jury trial of this
matter scheduled to commence on October 9, 1984
was continued for a period of ninety (90) days
pending completion of the reexamination proceeding
in the PTO, thereafter to be re-set by order of this
Court. Trial has not been rescheduled.

On October 26, 1984, the PTO examiner issued an
official action rejecting claims 1-6 of plaintiff's
patent. Defendants' Brief in Support of the Motion
for Partial Summary Judgment, Exhibit E. However,
this is not the final action in the reexamination
proceeding. Id., Exhibit E, at 6, ¶ 8.

MOTION FOR PARTIAL SUMMARY
JUDGMENT

Defendants move the Court to grant partial summary
judgment in their favor on plaintiff's claim against
them for patent infringement. In support of their
motion, defendants claim that plaintiff's patent has
been narrowed and restricted in scope during the
course of its reexamination by the PTO. Defendants
further claim that they have not made, used or sold
any elevating catwalk structure of any type since
March 1, 1984.

Defendants contend that the doctrine of intervening
rights is dispositive of plaintiff's claim of patent
infringement, citing 35 U.S.C. § § 307(b) and 252 in
support of this contention. The portions of the
statutes quoted by the defendants in their argument
on this point concern rights following a
reexamination proceeding, 35 U.S.C. § 307(b), and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1985 WL 1483 (W.D.Okla.), 225 U.S.P.Q. 886
**(Cite as: Not Reported in F.Supp.)**

the <u>effect</u> a reissued patent has on a pending action, <u>35 U.S.C. § 252.</u> (Emphasis added). Pursuant to § 252, the claims of a reissued patent, or (according to the defendants' interpretation) the patent as it exists following a reexamination proceeding, must be compared to those of the original patent to determine the effect of the reissued patent on a pending action. However, absent <u>final</u> action by the PTO, the Court has no basis to determine the ultimate scope of the claims of plaintiff's patent or whether the patent will contain any valid claim or claims identical with the original patent when the reexamination proceeding is concluded.

**\*2** Briefly stated, plaintiff's position in response to defendants' motion is that the question of patent infringement is a question of material fact and will remain so even upon final action by the PTO.

The Court can only conclude that defendants' motion is premature since there is no final action by the Patent Office pursuant to the reexamination proceeding.

MOTION TO STAY THE INSTANT LITIGATION

As an alternative to their motion for partial summary judgment, defendants seek to stay the present litigation until the reexamination proceeding in the PTO is concluded. Defendants urged the Court to grant a similar motion earlier in these proceedings. The motion was denied at that time because the extremely heavy case load in this district provides an automatic stay. In support of their renewed motion to stay, defendants project that a final action in the reexamination proceeding will be forthcoming near the end of January, 1985.

Plaintiff opposes the motion to stay, but asks the Court to reschedule the dates set by the Court in its Order entered at pretrial for the completion of certain matters required in preparation for trial. The Court notes that extensions of time have previously been granted for at least some of the dates set at pretrial. See, e.g., Orders of: December 4, 1984 (granting plaintiff's application to extend discovery deadline), November 11, 1984 (granting defendants leave to file contentions out of time); September 24, 1984 (filing contentions; completion of discovery); and June 21, 1984 (defendants' witness and exhibit lists; parties' contentions). Additionally, plaintiff states that it 'believes it can be ready for trial by May, 1985.'

The technical expertise provided by the reexamination proceeding, including a final determination by the PTO examiner, will be extremely helpful to this Court should further consideration of this matter become necessary. Indeed, the Court invites a final determination by the PTO as to the validity of plaintiff's patent claims. The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled. It is equally possible for all of the claims in plaintiff's patent to be upheld, or to be narrowed in some degree. In any event, the expert view of the Patent Office examiner will certainly benefit this Court. Thus, the Court is of the opinion that a stay of the trial of this matter should be granted to allow the PTO to complete the reexamination proceeding.

Accordingly,

IT IS ORDERED that defendants' Motion for Partial Summary Judgment on the patent infringement claim be and is hereby denied in that it is premature.

IT IS FURTHER ORDERED that defendants' Motion to Stay the trial in the present litigation is granted.

IT IS FURTHER ORDERED that trial of this action be and is hereby stayed pending the conclusion of the reexamination of plaintiff's <u>U.S. Letters Patent No. 4,365,692</u> currently in progress in the U.S. Patent and Trademark Office.

**\*3** The Clerk of the Court is instructed to mail a copy hereof to counsel and/or parties of record.

Loffland Bros. Co. v. Mid-Western Energy Corp.
Not Reported in F.Supp., 1985 WL 1483 (W.D.Okla.), 225 U.S.P.Q. 886

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.