# EXHIBIT N

LEXSEE

**METHODE ELECTRONICS, INC., Plaintiff, v. INFINEON TECHNOLOGIES CORP. and OPTICAL COMMUNICATION PRODUCTS, INC., Defendants.**

**NO. C 99-21142 JW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

**2000 U.S. Dist. LEXIS 20689**

**August 7, 2000, Decided**
**August 7, 2000, Filed**

**DISPOSITION:** [*1] Defendants' joint motion to stay proceedings as to both the '408 and '468 patents pending reexamination of the '408 patent granted. OCP's request denied without prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendants for patent infringement. Defendants moved to stay all proceedings with respect to two of the patents at issue, pending reexamination of one of those patents.

**OVERVIEW:** Plaintiff alleged infringement of five patents pertaining to optoelectronic transceiver devices used in computer networks for the conversion of light pulses to electrical pulses and back to light pulses. Defendants denied infringement and alleged that the patents were invalid. In 1998, plaintiff had requested reexamination of one of the patents at issue. At the time of the present motion to stay proceedings, that patent was pending a third reexamination by the United States Patent and Trademark Office (PTO). The court found that it was appropriate to stay the proceedings with respect to two of the patents at issue. The present case was in its incipient stages; no depositions had been taken and no trial date had been set. A stay would allow the parties and the court to take advantage of the PTO's conclusions regarding prior art. The stay would not cause undue prejudice. Granting a stay with respect to only the patent being reexamined would be problematic since another patent at issue involved the same accused device. The issues regarding the second patent might be narrowed or amended as a result of the PTO's decision.

**OUTCOME:** Defendants' motion to stay proceedings was granted.

**CORE TERMS:** patent, reexamination, staying, discovery, motion to stay, infringement, transceiver, optoelectronic, pulses, joinder, undue prejudice, patentability, unpatentable, requesting, infringed, infringe, unduly, weigh, joined

**LexisNexis(R) Headnotes**

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN1] After a patent issues, 35 U.S.C.S. § 302 authorizes any person at any time to file a request with the United States Patent and Trademark Office (PTO) for reexamination of any claim of the patent on the basis of prior art patents and publications. Upon receipt of a request for reexamination, the PTO determines whether the cited prior art raises a substantial new question of patentability. 35 U.S.C.S. § 303. If it is determined that a substantial new question of patentability is raised, then a reexamination is granted and the claim or claims in question are examined in the same manner as the claims of a patent application.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN2] The district court has the inherent authority to order a stay pending the outcome of reexamination by the United States Patent and Trademark Office. The court, however, must weigh the competing interests presented by a specific set of facts. The court has the inherent ability to grant a stay of proceedings provided that it does not cause undue prejudice or present a clear tactical disadvantage to the non-moving parties. Other factors considered include the stage of the litigation, whether discovery is or will be almost completed, and whether

the matter has been marked for trial. In determining whether to grant a motion to stay, the district court has considerable latitude. There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*

[HN3] On a motion to stay the proceedings in a patent infringement case pending the outcome of reexamination by the United States Patent and Trademark Office, substantial expense and time invested in the litigation would militate against a further delay of disposition.

**COUNSEL:** For METHODE ELECTRONICS, INC., Plaintiff: Joseph N. Hosteny, Arthur Anthony Gasey, Paul C. Gibbons, Niro Scavone Haller & Niro, Chicago, IL.

For METHODE ELECTRONICS, INC., Plaintiff: Thomas F. Smegal, Jr., Knobbe Martens Olson & Bear LLP, San Francisco, CA.

For INFINEON TECHNOLOGIES CORPORATION, defendant: Scott D. Baker, Crosby Heafey Roach & May, Los Angeles, CA.

For OPTICAL COMMUNICATION PRODUCTS, INC., defendant: David S. Elkins, Graham & James LLP, David S. Elkins, Squire Sanders & Dempsey L.L.P., Palo Alto, CA.

For OPTICAL COMMUNICATION PRODUCTS, INC., defendant: Nathan Lane, III, Graham & James LLP, Nathan Lane, III, Squire Sanders & Dempsey LLP, San Francisco, CA.

**JUDGES:** JAMES WARE, United States District Judge.

**OPINIONBY:** JAMES WARE

**OPINION:**

**ORDER GRANTING DEFENDANT INFINEON TECHNOLOGIES CORP. AND DEFENDANT OPTICAL COMMUNICATION PRODUCTS, INC.'S JOINT MOTION TO STAY PROCEEDINGS PENDING REEXAMINATION OF THE '408 PATENT**

[Docket No. 50]

I. INTRODUCTION

Defendant Infineon Technologies [*2] Corporation now brings a motion to stay all proceedings as to the '408 and '468 patents pending reexamination of the '408 patent. A hearing was held on July 10, 2000. Defendant Optical Communication Products, Inc. joined in and incorporated by reference Infineon's motion. Based on all papers filed to date and the oral argument of counsel, and for the reasons set forth below, the Court grants the Defendants' motion to stay the action as to the '408 and '468 patents pending reexamination of the '408 patent.

II. BACKGROUND

This case involves an action for patent infringement by Plaintiff Methode Electronics, Inc. ("Methode") against Defendants Infineon Technologies Corporation ("Infineon") and Optical Communication Products, Inc. ("OCP"). Methode alleges infringement of five patents pertaining to optoelectronic transceiver devices used in computer networks for the conversion of light pulses to electrical pulses and back to light pulses. Methode alleges that Infineon has infringed U.S. Patent 5,528,408 (" '408 patent") and U.S. Patent 5,864,468 (" '468 patent"). Methode alleges that OCP has infringed the '408 and '468 patents, as well as three additional patents: U.S. Patent 5,717,533 [*3] (" '533 patent"); U.S. Patent 5,734,558 (" '558 patent"); and U.S. Patent 5,879,173 (" '173 patent").

The accused devices at issue in this infringement action are "1x9" optoelectronic transceivers, produced by both Infineon and OCP. The "1x9" optoelectronic transceivers are alleged to infringe both the '408 and '468 patents. Infineon also produces a Small Form Factor ("SFF") transceiver which is alleged to infringe only the '468 patent. Both Defendants deny infringement and allege that the patents are invalid.

The '408 patent issued on June 18, 1996. On June 16, 1998, Methode filed a Request For Reexamination of the '408 patent on the ground that the Examiner failed to consider nine prior art references during the original prosecution. Methode's request for reexamination was granted and assigned to the original '408 Examiner.

On February 5, 1999, the Patent and Trademark Office issued a First Office Action, rejecting all claims (1-16) as obvious under 35 U.S.C. § 103(a). Methode added additional claims 17-25. In a Second Office Action, issued on September 2, 1999, the PTO rejected claims 1-25. Methode then initiated this action against Infineon and OCP on October 15, 1999. Subsequently, [*4] Methode filed another amendment to its request for reexamination. On March 2, 2000, in a Third Office Action, the PTO rejected claims 1-16 for the third time and claims 17-25 for the second time on the ground that the claims are obvious in view of the previously undisclosed prior art references. Methode's response to the Third Office Action was due on June 2, 2000.

Defendants now move for a stay of litigation and all discovery as to the '408 and '468 patents pending the PTO's reexamination of the '408 patent. n1

> n1 OCP's joinder covers the same issues stated in Infineon's motion to stay. The Court finds that OCP's joinder is neither untimely nor unfair. Methode's ex parte motion to strike OCP's joinder is hereby denied.

III. STANDARDS

[HN1] After a patent issues, 35 U.S.C. § 302 authorizes any person at any time to file a request with the PTO for reexamination of any claim of the patent on the basis of prior art patents and publications. Upon receipt of a request for reexamination, [*5] the PTO determines whether the cited prior art raises "a substantial new question of patentability." 35 U.S.C. § 303. If it is determined that a substantial new question of patentability is raised, then a reexamination is granted and the claim or claims in question are examined in the same manner as the claims of a patent application.

[HN2] The district court has the inherent authority to order a stay pending the outcome of reexamination by the PTO. See Ethicon v. Quigg, 849 F.2d 1422, 1426 (Fed. Cir. 1988). The Court, however, must weigh the competing interests presented by a specific set of facts. See Gladish v. Tyco Toys, 1993 U.S. Dist. LEXIS 20211, 29 U.S.P.Q.2D (BNA) 1718, 1719 (E.D. Cal. 1993). "The court has the inherent ability to grant a stay of proceedings provided that it does not cause undue prejudice or present a clear tactical disadvantage to the non-moving parties." ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1380 (N.D. Cal. 1994) (internal quotations and citations omitted). Other factors considered include the stage of the litigation, whether discovery is or will be almost completed, and [*6] whether the matter has been marked for trial. See id. In determining whether to grant a motion to stay, the district court has considerable latitude. See Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983). "There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." See ASCII Corp., 844 F. Supp. at 1381.

IV. DISCUSSION

A. Staying litigation of the '408 patent

In this case, the relevant factors weigh heavily in favor of staying the proceedings as to the '408 patent pending the PTO's reexamination of the '408 patent. First, this case is in its incipient stages. Methode's complaint was filed less than eight months ago, no depositions have

been taken, and no trial date has been set. Second, a stay will allow the parties and the Court to take advantage of the PTO's conclusions regarding prior art. A stay will also further the goal of judicial economy: a PTO determination that some of the claims of the '408 patent are unpatentable may narrow the scope of this litigation. Third, if the PTO ultimately makes a determination that Methode's claims are unpatentable with [*7] respect to the '408 patent, a stay will have eliminated the need for discovery and trial of those issues that pertain solely to the '408 patent. Finally, regardless of the outcome of the reexamination, the PTO's expert opinion will help the Court focus on the pertinent issues.

Granting a stay would not cause undue prejudice. Although [HN3] "substantial expense and time . . . invested in the litigation . . . would militate against a further delay of disposition," GPAC Inc. v. D.W.W. Enterprises, 144 F.R.D. 60, 23 U.S.P.Q.2D (BNA) 1129, 1133, Methode concedes that its "expenditure of fees to this point have been minimal." Plaintiff's Opposition, p. 5. Methode's argument that a stay of the '408 patent solely with respect to Infineon would be prejudicial is rendered moot since OCP has joined in and incorporated by reference Infineon's motion. A stay of the proceedings with respect to the '408 patent would apply to both Defendants Infineon and OCP.

Furthermore, the Court finds that Defendants did not unduly delay in bringing the present motion, and that there is no reason to believe that Defendants are utilizing any dilatory tactics by requesting the stay. See Guthy-Renker L.L.C. v. Icon Health and Fitness Inc., 1998 U.S. Dist. LEXIS 16553, 48 U.S.P.Q.2D (BNA) 1058, 1061 (C.D.Cal. 1998). [*8]

Therefore, the Court hereby stays all proceedings as to the '408 patent pending the PTO reexamination.

B. Staying litigation of the '468 patent

The Court agrees with both parties that granting a stay with respect to only the '408 patent would be problematic since the '468 patent involves the same accused device. Duplicative discovery may result if only the '408 patent is stayed since there are likely to be common documents and witnesses regarding the infringement litigation of the '408 and '468 patents. For example, staying the '408 patent but not the '468 patent may result in two separate tutorials and two claim construction hearings after the reexamination proceedings.

Finally, although discovery will still take place regarding the same accused product regardless of the reexamination results, the Court finds that the issues regarding the '468 patent may be narrowed or amended as a result of the PTO's decision. Furthermore, it appears that there are overlapping issues in the '408 and '468 in-

fringement actions. Methode noted at the July 10 hearing that all elements in the '408 patent claims are contained in the '468 patent. The Court finds that Methode will not be unduly [*9] prejudiced by staying the '468 litigation proceedings.

Methode's argument that staying proceedings as to the '468 patent would waste the patent's limited lifetime has no merit. Methode has failed to explain why money damages would not be adequate if it prevails at trial. See Guthy-Renker. 48 U.S.P.Q.2D (BNA) at 1061.

Therefore, the Court hereby grants Defendants' motion to stay proceedings regarding the '468 patent pending the PTO's reexamination of the '408 patent as well.

V. CONCLUSION

Based on the reasons set forth above, the Court grants Defendants' joint motion to stay proceedings as to both the '408 and '468 patents pending reexamination of the '408 patent by the PTO. The Court orders the parties to submit a joint statement by September 11, 2000 informing the Court of the status of the case.

At the July 10 hearing, counsel for OCP requested a stay of proceedings as to the '533, '558, and '173 patents as well. OCP has not submitted papers requesting a stay as to those patents. Therefore, OCP's request is denied without prejudice.

Dated: August 7, 2000

JAMES WARE

United States District Judge

# EXHIBIT O

LEXSEE

**MIDDLETON, INC., Plaintiff, vs. MINNESOTA MINING AND
MANUFACTURING COMPANY, Defendant.**

**No. 4:03-cv-40493**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
IOWA, CENTRAL DIVISION**

**2004 U.S. Dist. LEXIS 16812**

**August 24, 2004, Decided
August 24, 2004, Filed**

**DISPOSITION:** [*1] Defendant's motion for stay
granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff brought suit
against defendant for infringement of plaintiff's patent.
The litigation had been pending for eight years. Discovery was complete, three summary judgment motions
were before the court, and the case was set for trial
within a few months. Defendant moved to stay the case
as a result of a recently granted reexamination of the
patent-in-suit by the Patent and Trademark Office (PTO).
Plaintiff resisted the motion.

**OVERVIEW:** Despite the fact that discovery was closed
and the case was set for trial, the element of judicial
economy weighed in favor of granting the stay. The apparent scope of the reexamination, the technical expertise
of the PTO, and the relationship to the issues suggested a
great likelihood that the continuing work of the court
would be impacted by the reexamination. The judicial
efforts that a stay would preserve outweighed any additional cost in staying the proceedings even at that late
juncture. Defendant's delay in filing for reexamination
was not unreasonable under all of the unique circumstances of the case, particularly in light of the numerous
prior art references discovered, both domestic and foreign. Any delay in filing for reexamination was not cause
to deny the motion. Plaintiff was not currently selling
products related to the patent-in-issue and would be entitled to any money damages if infringement was ultimately found, which was sufficient to protect it from
suffering any undue prejudice or a clear tactical disadvantage. The court declined to stay only the validity issues of anticipation and obviousness, as other issues may
have been impacted by reexamination.

**OUTCOME:** The court granted defendant's motion to
stay the proceedings pending reexamination of the patent-in-issue by the PTO.

**CORE TERMS:** reexamination, patent, discovery, infringement, motion to stay, summary judgment, commencement, parte, judicial economy, present action, unduly, expertise, pending litigation, protracted, pendency,
outweigh, dilatory, issuing, weigh, money damages, pretrial, patentability, preparation, simplify, staying, invalid,
expire, spent, inequitable conduct, patent-in-suit

**LexisNexis(R) Headnotes**

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN1] See 35 U.S.C.S. § 318.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN2] See 35 U.S.C.S. § 311(a).

*Governments > Legislation > Interpretation*
[HN3] When Congress uses different terms in a statute,
the presumption is that those terms have different meanings.

*Governments > Courts > Authority to Adjudicate*

*Governments > Courts > Rule Application & Interpretation*
[HN4] Courts generally refer to Fed. R. Civ. P. 1, allowing for the just, speedy, and inexpensive determination of every action, when reciting their authority to grant a stay of proceedings. Regulations cannot, however, trump the plain language of conflicting statutes.

*Governments > Courts > Authority to Adjudicate*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN5] A district court in which an infringement action has been filed has the discretion to stay the infringement action pending the outcome of the reexamination proceeding. The court has this discretion even though the reexamination procedure does not expressly provide for an automatic stay of parallel district court proceedings.

*Governments > Courts > Authority to Adjudicate*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN6] Congress stated its approval of district courts liberally granting stays within their discretion, when the committee stated that it is believed by the committee that stay provisions are unnecessary in that such power already resides with the court. Indeed, courts have routinely stayed infringement actions pending the outcome of reexamination proceedings.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN7] Generally, courts consider the following factors in determining whether to grant a stay: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. In other words, based on these factors a court determines whether the benefits of a stay outweigh the associated costs.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN8] The advantages that may result from a stay of district court proceedings pending completion of reexamination by the Patent and Trademark Office (PTO) include: (1) all prior art presented to a court will have

been first considered by the PTO, with its particular expertise; (2) many discovery problems relating to prior art can be alleviated by the PTO examination; (3) in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed; (4) the outcome of the reexamination may encourage a settlement without the further use of the court; (5) the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation; (6) issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination; and (7) the cost will likely be reduced both for the parties and the court.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN9] Reexamination of a patent by the Patent and Trademark Office (PTO) can result in the elimination of most, if not all, of the issues remaining in pending litigation. If not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before a court. In addition, the technical expertise provided by the reexamination proceeding is helpful to a court on any issues that remain. This is because the scope of the patent claims, which the PTO may narrow or otherwise limit, controls the outcome of any subsequent infringement analysis.

*Evidence > Procedural Considerations > Rulings on Evidence*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Validity Presumption*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN10] Although not binding on a court, a Patent and Trademark Office's determination will be admissible and will carry a presumption of validity.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN11] One factor in determining the propriety of a stay of proceedings in the face of patent reexamination is the judicial economy that such stay would promote.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN12] Courts have generally considered a delay in seeking patent reexamination in evaluating the propriety

of a stay in light of such reexamination. Indeed, the potential for abuse inherent in granting a stay where the petition for reexamination comes very late and without explanation is apparent.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN13] More important, in deciding whether to grant a stay in a patent case, than when a reexamination application was made is the purpose behind said application. Thus, instead of looking solely at when the application was made with regard to pending litigation, a court looks at whether the petition for reexamination was made with a dilatory purpose. While the timing of the application is relevant in making this determination, the court also looks to the proffered reasons for the delay. Moreover, if a court finds that the benefits of granting a stay in the proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN14] Pursuant to 35 U.S.C.S. § 318 of the Patent Statute, a court is not to issue a stay if it would not serve the interests of justice.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > Remedies > Equitable Relief > Injunctions*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN15] The fact, that there is a likelihood that there will be no life remaining in a patent in suit in the event that the matter is revived following reexamination, alone is not sufficient to deny a motion to stay.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > Remedies > General Overview*
*Patent Law > Ownership > Conveyances > Licenses*
[HN16] Money damages is an adequate remedy for any delay in redress where a patentee is not selling or actively licensing goods or services related to the patent in suit.

*Civil Procedure > Preclusion & Effect of Judgments > Collateral Estoppel*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN17] See 35 U.S.C.S. § 315(c).

*Patent Law > Preclusion > Collateral Estoppel*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > Infringement Actions > General Overview*
[HN18] A reexamination by the Patent and Trademark Office (PTO) can affect more than just validity issues before a court. Indeed, a PTO decision that a patent is invalid can render moot the issues of validity and infringement. In addition, if a final decision of unpatentability means the patent was void ab initio, then damages will be precluded. The issues of inequitable conduct and willfulness may not be impacted by a PTO's determination, though to only proceed on these two issues does not serve the interests of justice.

**COUNSEL:** For MIDDLETON INC, plaintiff: Joseph A Grear, George C Summerfield, Keith A Vogt, STADHEIM & GREAR, CHICAGO, IL. Suzanne J Levitt, DRAKE UNIVERSITY, DES MOINES, IA. Jonathan G Bunge, BUNGE LAW FIRM PC, CHICAGO, IL.

For MINNESOTA MINING AND MANUFACTURING COMPANY, defendant: David M Swinton, AHLERS & COONEY PC, DES MOINES, IA. William A Streff, JR, David Kenneth Callahan, Mary E Zaug, Karen J Nelson, KIRKLAND & ELLIS LLP, CHICAGO, IL. Kevin H Rhodes, 3M INNOVATIVE PROPERTIES COMPANY, ST PAUL, MN.

For MINNESOTA MINING AND MANUFACTURING COMPANY, counter-claimant: David M Swinton, AHLERS & COONEY PC, DES MOINES, IA. William A Streff, JR, David Kenneth Callahan, Mary E Zaug, Karen J Nelson, KIRKLAND & ELLIS LLP, CHICAGO, IL. Kevin H Rhodes, 3M INNOVATIVE PROPERTIES COMPANY, ST PAUL, MN.

For MIDDLETON INC, counter-defendant: Joseph A Grear, George C Summerfield, Keith A Vogt, STADHEIM & GREAR, CHICAGO, IL. Suzanne J

Levitt, DRAKE UNIVERSITY, DES MOINES, IA. Jonathan G Bunge, BUNGE LAW FIRM PC, CHICAGO, IL.

**JUDGES:** JAMES E. GRITZNER,    [*2]    JUDGE, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JAMES E. GRITZNER

**OPINION:**

### ORDER GRANTING DEFENDANT'S MOTION TO STAY

This matter is before the Court on Defendant's Motion to Stay (Clerk's No. 170). Defendant brought the motion as a result of a recently granted reexamination n1 of the patent-in-suit by the Patent and Trademark Office ("PTO"). Based on Defendant's request for expedited relief, an oral hearing was held on Friday, August 13, 2004, via telephone. Attorney George C. Summerfield appeared on behalf of the Plaintiff; attorneys David Callahan and Karen Nelson appeared on behalf of the Defendant. Following the hearing, the Court took the matter under advisement and finds Defendant's motion is now fully submitted and ready for ruling.

> n1 While the PTO officially granted an *inter partes* reexamination, counsel for Defendant noted at the hearing that this was clerical error, and the PTO is in the process of rectifying the mistake. The reexamination must necessarily be *ex parte* due to the age of the patent at issue. This change has no effect on the parties' arguments or the Court's analysis of the motion to stay.

[*3]

### PROCEDURAL    HISTORY    AND BACKGROUND FACTS

The Plaintiff, Middleton, Inc. ("Middleton"), commenced this action against the Defendant, Minnesota Mining and Manufacturing Co. ("3M"), in the United States District Court for the Northern District of Illinois, Chicago Division, on October 17, 1996. After much litigation activity in that district, the Honorable James F. Holderman of the Northern District of Illinois transferred the action to this Court on August 29, 2003. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, the federal question statute, and 28 U.S.C. § 1338(a), as this case arises under the federal patent laws, 35 U.S.C. §§ 101 et seq.

The lawsuit alleges infringement of a patent held by Middleton, specifically, U.S. Patent No. 4,944,514 ("the '514 patent"), by 3M. Trial is scheduled for the week beginning October 12, 2004. The Court also has three

summary judgment motions pending. The first motion was filed by Middleton and pertains to infringement. The second and third motions, filed by 3M, pertain to validity and infringement, respectively. 3M filed an application for reexamination n2 and learned [*4] on July 26, 2004, that the PTO had granted the request. The pending reexamination prompted the current motion to stay, which Middleton has resisted.

> n2 Out of courtesy, 3M made the Court aware of its pending application for reexamination. While the PTO was making its decision, the present action moved forward in accordance with the scheduling order.

### ANALYSIS

3M has moved to stay this matter based on the PTO's granted reexamination of the patent-in-suit. This case has a long and convoluted history even before the present circumstances giving rise to this motion. Prior to even coming to rest before this Court, this action proceeded from the United States District Court for the Northern District of Illinois to the Federal Circuit and back multiple times. Now, the present motion comes after eight years of litigation and with just over two months remaining before trial. Middleton resists the motion based primarily on the short time left before trial and the delay in seeking reexamination. Middleton also contends [*5] 3M lacks the authority to even bring the pending motion.

Briefly, the PTO recently granted n3 3M's request for reexamination of the '514 Patent based on the determination that the multiple independent prior art references identified by 3M in its application "raised substantial new questions of the patentability of claims 4-7," the patent claims at issue in the present infringement action. n4 Based upon this determination, 3M contends "it is now highly likely that the PTO will either declare these claims of [the '514 Patent] invalid, or require Middleton to narrow the claims to avoid the prior art references." See Tap Pharm. Prods. v. Atrix Labs., Inc., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *2 (N.D. Ill. March 4, 2004) ("There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope."). n5 3M contends the result of the reexamination could end or dramatically impact the remaining issues in this case, especially considering the PTO found all 13 references cited in the reexamination patent, either alone or in combination, relevant to patentability. Therefore, 3M requests the Court stay all proceedings in this case pending the outcome [*6] of the reexamination by the PTO. Specifically, 3M argues the stay should be granted because this will allow for the

most efficient use of the Court's resources, it will simplify the issues for trial, and it will not unduly prejudice Middleton.

> n3 The determination was mailed by the PTO on July 19, 2004, and received by 3M on July 26, 2004.

> n4 The prior art references identified by 3M consist of the following: U.S. Patent No. 3,785,102 ("Amos"); U.S. Patent No. 4,151,319 ("Sackoff"); U.S. Patent No. 4,543,765 ("Barrett"); U.S. Patent No. 4,328,274 ("Tarbutton"); Russian Patent Publication SU 1,111,880 ("Shevchenko"); U.S. Patent No. 3,665,543 ("Nappi"); Japanese Patent Document Sho 61-98834 ("Shirasu"); Unexamined German Patent Application Number 1,809,794 ("Wilson"); U.S. Patent No. 3,788,941 ("Kupits"); U.S. Patent No. 2,987,103 ("Yakubik"); U.S. Patent No. 4,221,620 ("Milne"); U.S. Patent No. 4,095,340 ("Kingsley"); and U.S. Patent No. 4,115,917 ("Charon").

> n5 "Generally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%." Tap Pharm. Prods., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *2.

[*7]

### A. Statutory Authority to Request a Stay

Middleton first argues that 3M lacks the statutory authority to request a stay. Middleton bases this assertion on an examination of the statutes governing patent reexamination. Pursuant to section 318 of the Patent Statute, [HN1]

> Once an order for *inter partes* reexamination of a patent has been issued under section 313, *the patent owner* may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the *inter partes* reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice.

35 U.S.C. § 318 (emphasis added).

Middleton claims this section clearly limits the rights set forth to those of the patent owner. In contrast, section 311 of the Patent Statute provides that [HN2] "*any person* at anytime may file a request for *inter partes* reexamination . . . ." 35 U.S.C. § 311(a) (emphasis added). [HN3] When Congress uses different terms in a statute, the presumption is that those terms have different meanings. See Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 497, 120 L. Ed. 2d 379, 112 S. Ct. 2589 (1992). [*8] Therefore, according to Middleton, while "any person" may file an *inter partes* reexamination request, only "the patent owner" may seek a stay of litigation once such a request is granted.

Further, [HN4] courts generally refer to Federal Rule of Civil Procedure 1 ("Rule 1"), allowing for "the just, speedy, and inexpensive determination of every action," when reciting their authority to grant a stay of proceedings. See, e.g., W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis, 138 F. Supp. 2d 1015, 1029 (W.D. Tenn. 2000). Regulations cannot, however, trump the plain language of conflicting statutes. Ellis v. GMAC, 160 F.3d 703, 709 (11th Cir. 1998) (quoting Robbins v. Bentsen, 41 F.3d 1195, 1198 (7th Cir. 1994)); see also Caldera v. J.S. Alberici Constr. Co.. 153 F.3d 1381, 1383 n.** (Fed. Cir. 1998) (finding that "statutes trump conflicting regulations"). Because the relevant statute provides that "the patent owner" can ask for a stay in the event of an *inter partes* reexamination, Middleton contends that Rule 1 does not [*9] give the Court the broader authority to grant such a request by 3M, which is not the patent owner.

This contention is easily resolved as Middleton disregards the Court's inherent discretionary power to issue a stay. See Softview Computer Prods. Corp. v. Haworth, Inc., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *2 (S.D.N.Y. Aug. 10, 2000) (finding "there is no question that [HN5] a district court in which an infringement action has been filed has the discretion to stay the infringement action pending the outcome of the reexamination proceeding") (citing Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)); see also Robert H. Harris Co. v. Metal Mfg. Co., 1991 U.S. Dist. LEXIS 16086, 1991 WL 217666, at *3 (E.D. Ark. June 21, 1991) ("Whether the action should be stayed pending the outcome of the reexamination proceeding before the PTO resides in the discretion of the court."). The Court has its discretion even though the reexamination procedure does not expressly provide for an automatic stay of parallel district court proceedings. Softview Computer Prods. Corp.. 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *2 (citations omitted); see also Grayling Industries v. GPAC, Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *1 (N.D. Ga. March 25, 1991) [*10] ("The decision whether to stay proceedings in district court while a reexamination by the PTO takes place, while not vested expressly in the discretion of the

district court by the statute, has been recognized to be within the district court's inherent discretionary power.").

As the courts have recognized, [HN6] "Congress stated its approval of district courts liberally granting stays within their discretion" when the committee stated "'it is believed by the committee that *stay provisions are unnecessary in that such power already resides with the Court . . . .'*" Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., 1987 WL 6314, at *2 (quoting H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, reprinted in 1980 U.S. Code Cong. & Ad. News 6460, 6463 (emphasis added)); see also Fisher Controls Co. v. Control Components Inc., 443 F. Supp. 581, 581 (S.D. Iowa 1977) ("The district court's power to stay proceedings has been drawn purposefully broad and is discretionary."). Indeed, "courts have routinely stayed infringement actions pending the outcome of reexamination proceedings," Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *2 [*11] (citations omitted), and Middleton has cited to no authority supporting the limitation it asserts. Accordingly, this Court finds it has the authority to issue a stay in the present matter if the circumstances weigh in favor of staying the proceedings. See Gould v. Control Laser Corp., 705 F.2d 1340, 1341-42 (Fed. Cir. 1983). n6

n6 In addition, as noted in footnote 1, this is an *ex parte* reexamination, while the statutes relied on by Middleton in raising this argument apply to *inter partes* reexaminations.

## B. Standard for Motion to Stay

[HN7] Generally, courts consider the following factors in determining whether to grant a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." Softview Computer Prods. Corp., 2000, U.S. Dist. LEXIS 11274, 12000 WL 1134471, at *2-3 (quoting [*12] Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (citations omitted)). In other words, based on these factors the Court determines whether the benefits of a stay outweigh the associated costs.

[HN8] The advantages that may result from a stay of the district court proceedings pending completion of reexamination by the PTO include,

"1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court."

Emhart Indus., Inc., 1987 WL 6314, at *2 (quoting Fisher Controls Co., 443 F. Supp. at 582 (S.D. Iowa 1977)). [*13] n7 [HN9] Reexamination may result in the elimination of most, if not all, of the issues remaining in the pending litigation. See Gould, 705 F.2d at 1342. If not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court. n8 See Loffland Bros. Co. v. Mid-Western Energy Corp., 1985 WL 1483, at *2 (W.D. Okla. Jan. 3, 1985). In addition, the technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain. See Gould, 705 F.2d at 1342.

n7 [HN10] "Although not binding on the Court, the PTO's determination will be admissible and will carry a presumption of validity." Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Co., 68 U.S.P.Q.2d 1755, 1759 (E.D. Mich. 2003).

n8 This is because the scope of the patent claims, which the PTO may narrow or otherwise limit, controls the outcome of any subsequent infringement analysis. See Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1344 (Fed. Cir. 2002) (finding "an assessment of whether an

accused device infringes claims of a patent necessarily involves both an identification and interpretation of the asserted claims, and a comparison of the properly interpreted claim limitations to the elements of the accused device").

[*14]

Plaintiff makes three primary arguments against issuance of a stay. First, Middleton argues the issuance of a stay will not promote judicial economy. Second, Middleton urges the Court to deny the stay based on 3M's delay in filing for reexamination. Third, Middleton contends it will be prejudiced if the stay is granted. In the alternative, if the Court determines a stay is warranted, Middleton requests the Court grant a stay only as to those issues before the PTO. Each of these contentions is summarized and discussed below.

**1. Judicial Economy**

Both parties accept that [HN11] one factor in determining the propriety of a stay of proceedings in the face of reexamination is the judicial economy that such stay would promote. Middleton contends that, contrary to 3M's assertions, a stay would not promote judicial economy at all in this case because of the amount of preparation by the parties thus far. This matter has now been pending for eight years, and that fact alone would seem to argue strongly against a stay. However, despite the lengthy pendency of this matter in the Northern District of Illinois, the validity of the '514 patent has only been explored by the parties for a little over [*15] a year, in isolation hardly an unusual period of time for development of such issues.

According to Middleton, the court in Toro Co. v. L.R. Nelson Corp. ruled a stay was unwarranted under similar circumstances.

> This suit has been pending in litigation for almost 3 1/2 years. Before the motion for stay was filed, the court had under advisement a motion by defendant for summary judgment, which may well be dispositive of the issue of validity of asserted claims 14 and 15. Those factors militate against a stay at this stage of the proceedings.
>
> The pendency of this suit does not necessarily preclude any further proceedings which the Patent Office may choose to pursue. It is the opinion of the court that its granting of a stay order would accomplish little, other than the delay of disposi-

tion of a suit which has, until now, run an overly protracted course.

Toro Co. v. L. R. Nelson Corp., 223 U.S.P.Q. 636, 638 (C.D. Ill. 1984).

Middleton contends that the factual circumstances impacting judicial economy in Toro and in the present case are vastly different than those involved in the cases cited by 3M. See Tap Pharm. Prods., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *1 [*16] ("Plaintiffs have known from the start of this case three months ago that the pending reexaminations could create grounds for a stay. As of yet, this case has not progressed beyond the initial pleadings stage; the parties have not engaged in any discovery and have not filed any other substantive motions."); Ralph Gonnocci Revocable Living Trust, 68 U.S.P.Q.2d at 1758 ("This action has been pending for less than a year. Undoubtedly the parties have spent considerable time and resources thus far - substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties and the Court to prepare this case for trial."); Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *3 ("Although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous [*17] summary judgment motions have been served, the Markman hearing has not yet been held and the Pretrial Order has not yet been prepared."); Robert H. Harris Co., Inc., 1991 U.S. Dist. LEXIS 16086, 1991 WL 217666, at *4 ("This action has been pending less than a year. Although it is set for trial next month, the Court is not persuaded that this a case which has 'run an overly protracted course' . . . The parties appear not to have engaged in expensive discovery or extensive pretrial preparation") (citations omitted); Emhart Indus., Inc., 1987 WL 6314, at *3 (noting that "substantially no trial preparations have been carried out -- there is no pretrial order in place and no trial schedule has been set"). Arguably, none of these cases was at the stage of litigation that the present case indicates.

In the present action, all summary judgment motions have been fully briefed, and discovery appears essentially complete. Accordingly, Middleton claims a stay at this point would do little to serve the interests of judicial economy, and would only have the effect of further de-

laying final resolution of this matter, which has already been pending far too long.

Additionally, Middleton [*18] contends 3M's reliance in part on Standard Havens Products, Inc. v. Gencor Industries, Inc. is misplaced as Middleton does not base its opposition to the present motion to stay on the proposition found to be faulty. See Standard Havens Prods. v. Gencor Indus., 996 F.2d 1236, 1993 WL 172432, at *1 (Fed. Cir. May 21, 1993) (reversing the lower court's decision denying a stay, as such decision was based upon the obviously incorrect proposition that a "reexamination decision can have no effect on this infringement suit even if the reexamination decision becomes final."). n9

n9 Middleton also notes that this decision is unreported and, as such, "shall not be employed as precedent by this court, and may not be cited by counsel, except in support of a claim of res judicata, collateral estoppel, or law of the case." Fed. Cir. R. 47.8. However, the decision is relevant not as precedent but to demonstrate the final result of issues similar to those in the present case.

At least one court [*19] found the fact that discovery is complete and the case set for trial has been found to be the most compelling reason to justify denial of a motion to stay pending reexamination by the PTO. See Enprotech Corp. v. Autotech Corp., 1990 U.S. Dist. LEXIS 2926, 1990 WL 37217, at *1-2 (N.D. Ill. March 16, 1990) (finding these factors the most compelling and concluding the action was "too far along the road to justify halting the journey while the defendant explores an alternate route" in denying the motion to stay). Likewise, this is the most compelling argument made by Middleton in resisting the pending motion to stay.

In the present case, the litigation has been ongoing for over eight years. n10 The trial date is set and is scheduled for the week of October 12, 2004. In addition, several motions for summary judgment remain pending that may be dispositive of some or all of the issues remaining in the case. Discovery is completed, and the parties are most likely well into their trial preparation. Thus, the parties have already spent a considerable amount of time and money on the pending litigation. On its face, these facts seem to weigh against granting a stay.

n10 As indicated in the text, most of the history of this case occurred in the Northern District of Illinois and the Federal Circuit through litigation activities promoted by both parties. The issue now before the Court is of much more recent vintage.

[*20]

However, these facts should be weighed against the benefits of issuing a stay. As argued by 3M, the following factors weigh in favor of issuing a stay: (1) a stay will be the most efficient use of judicial resources by preventing duplication of effort; (2) the reexamination may simplify and narrow the issues in the case; and (3) the Court will be able to benefit from the expertise of the PTO. Moreover, a stay issued pending reexamination "is not for such a protracted or indefinite period" as reexamination proceedings are to "'be conducted with special dispatch.'" n11 Gould, 705 F.2d at 1341 (quoting 35 U.S.C. § 305). Thus, while some courts have denied a stay based on the end of discovery and the proximity of trial, see Toro Co., 223 U.S.P.Q. at 638; Enprotech Corp., 1990 U.S. Dist. LEXIS 2926, 1990 WL 37217, at *2, the ultimate determination is within the Court's discretion based on a weighing of the benefits of issuing a stay versus any added expenses resulting from the stay.

n11 One study listed the average pendency of a reexamination to be 19 months. See Note, "Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination", 66 Geo. Wash. L. Rev. 172, 192 app. A (Nov. 1997). This note is, however, over seven years old, and the parties were unable to indicate to the Court whether this estimate is accurate, though Defendant's counsel thought, but could not state definitively, that the average pendency has been shortened.

[*21]

In the present action, the Court finds the element of judicial economy does in fact weigh in favor of granting the motion to stay. First, a stay would preserve the costs of a trial on the merits that may be obviated by the results of the reexamination. Second, even if a trial is ultimately required, the Court can have all issues heard in one trial on the proper scope of the patent claims. In addition to limiting the issues at trial, the reexamination decision may also limit the issues in the currently pending dispositive motions. Finally, the Court will be able to use the expertise of the PTO in making further determinations as related to the proper patent claims. In that regard, the Court is influenced by the breadth of the reexamination and the number of prior art references under active review.

The Court acknowledges the considerable expense already endured by the parties in the present action but

notes that these costs will not be recouped by denying a stay and proceeding to a trial. This may actually compound the parties' expenses if some or all of the issues need to be retried later as a result of the reexamination. In addition, the Court disagrees with Middleton's contention [*22] that only incremental resources will be expended if the action proceeds to trial. It is simply not efficient to rule on three motions for summary judgment, complete pretrial, and hold a full jury trial if all or part have to be redone. The apparent scope of the reexamination, the technical expertise of the PTO, and the relationship to the issues in this case suggest to the Court a great likelihood that the continuing work of this Court would be impacted by the reexamination. The judicial efforts that a stay would preserve outweigh any additional cost in staying the proceedings even at this late juncture.

## C. Filing for Reexamination

Middleton also argues that 3M's delay in filing reexamination warrants denying the motion. As noted above, 3M did not seek reexamination of the patent-in-suit until well after the commencement of the litigation. In addition, one of the references upon which 3M relied in seeking reexamination was one of its own patents. Under these circumstances, Middleton contends that it is an inevitable conclusion that 3M delayed unduly in seeking reexamination. n12

> n12 Middleton avers this is not the first time that 3M has used the reexamination procedure to engage in delay. For proof, Middleton cites to the decision in Freeman v. Minnesota Mining & Mfg. Co., in which the court, apparently anticipating a motion to stay from 3M, had the following to say:
>
>> Though not before the Court, it seems worthwhile to state the Court's view on granting a stay of court proceedings pending the PTO reexamination. In Digital Magnetic, the court commented that 'parties should not be permitted to abuse the [reexamination] process by applying for reexamination after protracted, expensive discovery or trial preparation.' . . . Discovery was concluded in this case seven months ago, and the first of the two suits was filed two and a half years ago. Moreover, 3M knew about all three of the documents on which its reexamination petition will be based no

later than August 8, 1986. To allow 3M to now use the reexamination process to get this case stayed would be to allow a defendant to use the reexamination as a mere dilatory tactic.

Freeman v. Minnesota Mining & Mfg. Co., 661 F. Supp. 886, 888 (D. Del. 1987) (citations omitted). However, 3M's actions in another case are not relevant to the present action, especially considering the court's statement in Freeman was *anticipatory* and not in reaction to any actual motion to stay filed by 3M, let alone any proof that 3M was so moving for the purpose of delaying or unduly protracting the litigation. 3M's motion in the present case will be analyzed on its own merits and under the circumstances of the present action.

[*23]

[HN12] Courts have generally considered a delay in seeking reexamination in evaluating the propriety of a stay in light of such reexamination. Indeed, "the potential for abuse inherent in granting a stay where the petition for reexamination comes very late and without explanation is apparent." Grayling Industries, 1991, U.S. Dist. LEXIS 16750, 1991 WL 236196, at *2. For example, in Enprotech Corp., the defendant first raised the question of reexamination and an associated stay some 18 months after the commencement of litigation and four months before trial. Enprotech Corp., 1990 U.S. Dist. LEXIS 2926, 1990 WL 37217, at *1. That court, in denying the motion to stay, stated "we are too far along the road to justify halting the journey while the defendant explores an alternate route." Id. at *2; see also Toro Co., 223 U.S.P.Q. at 638 (denying stay given three and a half year delay).

Middleton asserts again that the authority cited by 3M in support of granting a stay is inapposite on this issue. In Emhart Industries, Inc., the court found that although there was a delay in filing reexamination, that delay was the fault of the patentee in postponing needed discovery regarding the prior [*24] art. Emhart Indus., Inc., 1987 WL 6314, at *3 ("Whatever plaintiff's reasons were for postponing these depositions, plaintiff will not now be heard to object to defendant's motion for stay on the grounds that too much time has passed since the commencement of this litigation.").

With regard to the other authority cited by 3M, in no instance was the delay between the commencement of the suit and the request for reexamination nearly as long as in this case. See Tap Pharm. Prods., 2004 U.S. Dist.

LEXIS 3684, 2004 WL 422697, at *1 (reexamination requests were filed before the lawsuit began); Ralph Gonnocci Revocable Living Trust, 68 U.S.P.Q.2d at 1756 (request for reexamination filed within two months of the defendant's counsel's notice of appearance, and within eight months of commencement of suit); Robert H. Harris Co., 1991 U.S. Dist. LEXIS 160861991 WL 217666, at *4 (request for reexamination filed within one year of commencement of suit); Loffland Bros. Co., 1985 WL 1483, at *1 (request for reexamination filed within one year of commencement of suit); Gioello Enterprises Ltd. v. Mattel, Inc., 2001 WL 125430, at *1 (D. Del. Jan. 29, 2001) [*25] (request for reexamination filed within 18 months of commencement of suit); Grayling Indus., Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *1 (reexamination request filed within two years of commencement of suit). n13

> n13 It is unclear in the Softview Computer decision, also relied upon by 3M, how much time elapsed between the commencement of suit and the reexamination request. Softview Computer Prods. Corp., 2000 U.S. Dist. LEXIS 11274, 2000 WL 1134471, at *1.

3M seeks to justify its delay in filing for reexamination by arguing there was a discovery stay in place as to validity that was "implicitly" lifted on March 11, 2003. Middleton counters by stating that, in the first place, the prior art upon which 3M based its request for reexamination was not the result of any discovery efforts engaged in by 3M and that 3M has not taken a single deposition on the subject prior art after such art was identified. Middleton asserts that 3M could have filed for reexamination at the PTO at any time, notwithstanding any discovery stay [*26] imposed by a district court. Finally, even if 3M was somehow impeded by a discovery stay, it still took 3M over a year after the stay was "implicitly" lifted to file its reexamination request. Middleton contends that under the circumstances of the present case, a one-year delay is inexcusable, and 3M should not be allowed to benefit from its delay.

Middleton seemingly misses the point in arguing 3M's delay warrants denial of the motion to stay. [HN13] More important than when the reexamination application was made was the purpose behind said application. Thus, instead of looking solely at when the application was made with regard to the pending litigation, the Court looks at whether the petition for reexamination was made with a dilatory purpose. See Grayling Indus., Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *2-3; Emhart Indus., Inc., 1987 WL 6314, at *3. While the timing of the application is relevant in making this determination, the Court also looks to the proffered reasons for the delay. See Ralph Gonnocci Revocable Living Trust, 68 U.S.P.Q.2d at 1758 ("Plaintiff may be correct that [defendant] did not act swiftly in seeking reexamination. Nothing [*27] in the record, however, indicates when [defendant] became aware of the prior art which is the basis for his request for reexamination. . . . Thus the Court cannot conclude that [defendant] unnecessarily delayed seeking a reexamination or that he is doing so now to stall this litigation."); Grayling Indus., Inc., 1991 U.S. Dist. LEXIS 16750, 1991 WL 236196, at *3 (finding that "although it is not clear that Plaintiffs had good reason for the delay in petitioning the PTO for reexamination, neither has Defendant shown such egregiously dilatory conduct as would justify short-circuiting the reexamination procedure now that Plaintiffs have invoked it"). Moreover, if "the Court finds that the benefits of granting a stay in the present proceedings outweigh the burdens, it need not decide whether the defendant could actually have filed its request at an earlier date." Emhart Indus., Inc., 1987 WL 6314, at *3.

In the present action, Middleton has presented no evidence, beyond pointing out that one of the prior art references asserted by 3M was its own patent, that indicates 3M had knowledge of the prior art and could have made the request for reexamination much earlier. Due to the [*28] stay of discovery on issues related to the validity issue, 3M was not actively pursuing this issue. n14 Significantly, 3M had won a judgment of noninfringement on two different occasions in the Northern District of Illinois. Accordingly, 3M may have had little reason to pursue the issue of validity until the stay on discovery was lifted. 3M also argues that under the last decision from the Federal Circuit, the construction of the claims at issue was significantly broadened.

> n14 Middleton argues that 3M did not have its hands tied by the Illinois court but instead put all its eggs into the infringement basket, holding in abeyance any argument on validity even though 3M has alleged validity from the beginning.

The record indicates it was not until this decision, and the subsequent course of the proceeding, that 3M began to actively pursue the validity issue. In May 2003, 3M received information pursuant to discovery that was relevant to this issue. Based on this information, 3M was able to gather additional information. [*29] Upon determining the validity of the '514 patent was an issue, 3M drafted the reexamination application, notified the Court, submitted a motion for summary judgment on validity, and, as soon as the reexamination was granted, moved

for a stay. The Court finds it is not unreasonable under all of the unique circumstances of this case that it took 3M nearly a year from this time to file for reexamination, particularly in light of the numerous prior art references discovered, both domestic and foreign.

The Court finds that any delay in filing for reexamination is not cause to deny the motion to stay. While 3M may be guilty of focusing too much attention on the infringement issue, it was led on that course by the proceedings in the action. As soon as validity became a very real issue, 3M did not unduly delay in moving for reexamination. Moreover, there is no evidence that 3M has moved for a stay solely for a dilatory purpose beyond Middleton's argument to the contrary.

### D. Prejudice to Middleton

[HN14] Pursuant to section 318 of the Patent Statute, a court is not to issue a stay if it "would not serve the interests of justice." 35 U.S.C. § 318. Middleton contends [*30] that because of the prejudice it would incur should a stay be granted, such interests would not be served. When Middleton first filed suit against 3M, the patent in suit had more than a decade of useful life remaining, whereas now it is due to expire in less than three years. If 3M's proposed stay is granted, Middleton claims that it is likely [HN15] that there will be no life remaining in the patent in suit in the event this matter is revived following reexamination; however, this fact alone is not sufficient to deny the motion to stay. See Tap Pharm. Prods., 2004 U.S. Dist. LEXIS 3684, 2004 WL 422697, at *1 (dismissing plaintiff's argument that patent may expire thereby depriving them of any injunctive remedy because patent may still expire before trial is completed).

3M answers by stating that monetary compensation is sufficient to remedy infringement. Middleton disagrees and asserts that while it has no intention of commercializing the '514 patent, it would be deprived of its right to exclude others under the patent, stating that 3M's position would be tantamount to a compulsory license for using the patented invention. The Federal Circuit has found this to be an inadequate remedy for infringement. [*31] See, e.g., Reebok Int'l. Ltd. v. Baker, Inc., 32 F.3d 1552, 1557 (Fed. Cir. 1994); Hybritech Inc. v. Abbott Lab., 849 F.2d 1446, 1456-57 (Fed. Cir. 1988). According to Middleton, because it stands to lose its ultimate remedy for patent infringement in the event 3M's proposed stay becomes a reality, Middleton will be severely prejudiced by such a stay, and this warrants denial of 3M's motion.

At present Middleton is not, however, selling or marketing products under its patent. Indeed, it has never done so and thus has no market to protect. Under similar circumstances, a district court found [HN16] "money damages is an adequate remedy for any delay in redress" where the patentee was not "selling or actively licensing goods or services related to" the patent in suit. Gioello Enterprises Ltd., 2001 WL 126350, at *2; see also Emhart Indus., Inc., 1987 WL 6314, at *2 (finding that "notwithstanding plaintiff's argument that monetary damage will not compensate for its losses, this *is* a suit for money damages and plaintiff has never sought preliminary injunctive relief from the Court").

Middleton is not currently selling products [*32] related to the patent in issue and would be entitled to any money damages if infringement is ultimately found. Ultimately, the Court finds this is sufficient to protect Middleton from suffering any undue prejudice or a clear tactical disadvantage. Should the action proceed to trial following reexamination, the Court may still order appropriate injunctive relief. In addition, Middleton would be entitled to money damages if proven, and there is no immediate danger of not being able to collect said damages from 3M.

### E. Alternatively, Granting Stay Solely on Issues Before the PTO

In the alternative, if the Court issues a stay in light of the reexamination, Middleton urges that the stay be limited to those issues pending before the PTO as part of the reexamination proceedings, i.e., anticipation and obviousness. Thus, the issues of infringement, willfulness, damages, and inequitable conduct would continue before the Court under Middleton's plan. Under this proposal, any judgment would not become final until the PTO has ruled on the reexamination and the parties' appeal rights have been exhausted unless the Court makes the judgment final as to those issues tried, n15 thereby entitling [*33] the parties to appeal the judgment immediately.

n15 See Fed. R. Civ. P. 54(b).

As concerns the issue of validity, 3M's request was for a reexamination proceeding pursuant to Chapter 30 of the Patent Statute. Pursuant to section 315 of the Patent Statute, [HN17]

> A third party requester whose request for an *inter partes* reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any claim finally determined to be valid and patentable on any ground which the third

party requester raised or could have raised during the *inter partes* reexamination proceeding.

35 U.S.C. § 315(c). In other words, in the event the PTO finds the subject claims patentable, 3M would be estopped from returning to court to re-argue validity of those claims. Therefore, Middleton contends that staying only those issues before the [*34] PTO would be a practical solution that would provide Middleton with more timely relief on the remaining issues.

[HN18] The PTO's reexamination could, however, affect more than just the validity issues before the Court. Indeed, a PTO decision that the '514 Patent is invalid could render moot the issues of validity *and* infringement. See Gioello Enterprises Ltd., 2001 WL 125340, at *1 (finding the PTO's decision could render moot the issues of non-infringement and invalidity before the court in pending motions for summary judgment); ASCII Corp. v. STD Entertainment USA, 844 F. Supp. 1378, 1380-81 (N.D. Cal. 1994) (finding stay was justified because if claims were cancelled in reexamination then the need to try the infringement issue would be eliminated); Loffland Bros. Co., 1985 WL 1483, at *2 ("The reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled."). "In addition, if a final decision of unpatentability means the patent was void *ab initio,* then damages would also be precluded." Standard Havens Prods., 996 F.2d 1236, 1993 WL 172432, at *1

[*35] . The issues of inequitable conduct and willfulness may not be impacted by the PTO's determination, see Enprotech Corp., 1990 U.S. Dist. LEXIS 29261990 WL 37217, at *1 (finding reexamination would not affect the inequitable conduct claim at issue), though to only proceed on these two issues would not serve the interests of justice. Therefore, the Court finds it would not be appropriate to stay only a portion of the pending issues.

## CONCLUSION

For the foregoing reasons, the Court hereby **grants** Defendant's Motion to Stay the Proceedings Pending Reexamination of U.S. Patent No. 4,944,514 by the Patent and Trademark Office (Clerk's No. 170). The Court finds a high likelihood that results of the PTO's reexamination would have a dramatic effect on the issues before the Court, up to and including dismissal of the entire action if the patent claims are found to be unpatentable. In any event, the Court will benefit from the PTO's expertise and determination on reexamination, and Middleton will not be unduly prejudiced by the stay. Thus, under the unique circumstances of this case the Court finds the benefits of issuing the stay outweigh the arguments made by Middleton in resistance to [*36] the motion.

**IT IS SO ORDERED.**

Dated this 24th day of August, 2004.

JAMES E. GRITZNER, JUDGE

UNITED STATES DISTRICT COURT

# EXHIBIT P

LEXSEE

**PEGASUS DEVELOPMENT CORPORATION and PERSONALIZED MEDIA COMMUNICATIONS, L.L.C., Plaintiffs v. DIRECTV, INC., HUGHES ELECTRONICS CORPORATION, THOMPSON CONSUMER ELECTRONICS, INC., and PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, Defendants. AND RELATED COUNTERCLAIMS**

**Civil Action No. 00-1020-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2003 U.S. Dist. LEXIS 8052**

**May 14, 2003, Decided**

**SUBSEQUENT HISTORY:** As Amended September 4, 2003.

**PRIOR HISTORY:** Pegasus Dev. Corp. v. Directv, Inc., 2002 U.S. Dist. LEXIS 6825 (D. Del., Apr. 18, 2002)

**DISPOSITION:** [*1] Defendants' motion to stay pending patent reexamination granted. Plaintiffs' motion for leave to assert claim patent denied. Motions to dismiss denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holder sued defendant competitors, alleging infringement of six patents. One competitor prompted reexamination by the United States Patent and Trademark Office of one or possibly two of the patents. The competitors then moved jointly for a stay of the proceedings pending the outcome of the reexamination.

**OVERVIEW:** One competitor filed with the PTO a request for ex parte reexamination of two patents-in-suit. The PTO granted the request regarding all of the challenged claims on one patent. The court had not received information regarding the status of the second request. The competitors sought a stay of proceedings until the reexamination was complete. The court noted that the suit was quite complex and the greater context of the suit was extraordinary--the patent holder had filed more than 300 related patent applications based on an original application filed in 1981 and supplemented in 1987. Together, the applications contained an estimated 10,000 claims. The written submissions in the case had been voluminous, and the related patent applications could

become relevant to the case in respect to several issues, including claim construction, enablement, adequacy of the written description, indefiniteness, and inequitable conduct. The court noted that it would benefit from a narrowing of the issues in the case. The reexamination process would serve that purpose. It could result in a simplification or reduction of issues in the case or it could dispense with the litigation entirely.

**OUTCOME:** The court granted the motion.

**CORE TERMS:** reexamination, patent, patents-in-suit, discovery, scheduled, legally entitled, scheduling, invoke, stayed pending, briefing, dilatory, burying

**LexisNexis(R) Headnotes**

*Patent Law > Remedies > Collateral Assessments > Costs*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Civil Procedure > Trials > Continuances*
[HN1] The decision to stay a case is firmly within the discretion of the court. This authority applies equally to patent cases in which a reexamination by the United States Patent and Trademark Office has been requested.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Civil Procedure > Trials > Continuances*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN2] Courts have inherent power to manage their dockets and stay proceedings, including the authority to

order a stay pending conclusion of a United States Patent and Trademark Office reexamination.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Civil Procedure > Trials > Continuances*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN3] In passing the legislation establishing the reexamination proceeding, the United States Congress stated its approval of district courts liberally granting stays within their discretion.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Civil Procedure > Trials > Continuances*
[HN4] In determining whether a stay is appropriate, a federal court is guided by the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN5] The United States Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reissues > Requirements*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview*
[HN6] Upon reissue, the burden of proving a patent's invalidity is "made heavier."

**COUNSEL:** For Pegasus Development Corporation, Personalized Media Communications LLC, PLAINTIFFS: Rudolf E Hutz, Rudolf E Hutz, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Directv Inc, Hughes Electronics Corporation, Thomson Consumer Electronics Inc, Thomson Multimedia, Inc, DEFENDANTS: Donald F Parsons, Jr, Mona A Lee, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Thomson Consumer Electronics Inc, DEFENDANT: Karen Jacobs Louden, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Philips Electronics North America Corporation, DEFENDANT: Steven J Balick, Steven T Margolin, Ashby & Geddes, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION** [*2]

On December 4, 2000, Pegasus Development Corporation ("Pegasus") and Personalized Media Communications, L.L.C. ("PMC") filed a complaint against several defendants, alleging infringement of six patents, including U.S. Patent Nos. 4,965,825 ("the '825 patent") and 5,335,277 ("the '277 patent"). Since that time, the original scheduling order has been revised several times. Currently, fact discovery is scheduled to close on August 22, 2003, and a trial is scheduled for February of 2004.

On February 4, 2003 and March 14, 2003, respectively, the defendant Thomson Consumer Electronics, Inc. ("Thomson") filed with the Patent and Trademark Office ("PTO") a request for *ex parte* reexaminations of the '825 and '277 patents. The request for reexamination of the '825 patent was granted on April 10, 2003. n1 Presently before the court is a joint motion by the defendants to stay the litigation pending the completion of the patent reexaminations (D.I. 459). After careful consideration of the parties' submissions, and for the reasons detailed below, the court will grant the motion.

n1 The court is not yet aware of a decision by the PTO regarding reexamination of the '277 patent.

[*3]

**II. DISCUSSION**

[HN1] The decision to stay a case is firmly within the discretion of the court. *Cost Bros., Inc. v. Travelers Indem. Co.,* 760 F.2d 58, 60 (3d Cir. 1985). This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) [HN2] ("Courts have inherent power to manage their dockets

and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citation omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg.,* 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q. 2d 1889, 1890 (N.D. Ill. 1987) [HN3] ("In passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed. Cir. 1983) (citing legislative history of reexamination statute). [HN4] In determining whether a stay is appropriate, the court is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving [*4] party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp v. 3Comm Corp.,* 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999) (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co.,* 766 F. Supp. 212, 217 (D. Del. 1991) (stating a similar test).

In this case, there are two plaintiffs, four defendants, and several counter claimants, as well as six patents comprising dozens of claims. In addition, the written submissions in this case have been particularly voluminous; the briefing on claim construction alone, for example, constitutes 576 pages. *See* Report and Recommendation of Special Master Regarding Claim Construction at 2 (citing "copious briefing"). In these ways, the present suit is quite complex, although, perhaps, not extraordinarily so. The greater context of this suit is extraordinary, however: the plaintiffs have filed more than 300 related patent applications based upon an original patent application filed in 1981 and supplemented in 1987. Together, these applications contain an estimated 10,000 claims. Furthermore, as observed [*5] by the Special Master appointed in this case, the 1987 application alone constitutes over 300 columns of patent text and "is, by any measure, an extremely complex document." *Id.* at 2. These related applications may become relevant to the present case in respect to several issues including claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct. *See id.* at 21. Thus, in this case, more than many, the court would benefit from a narrowing of the issues.

The reexamination process will serve this purpose. For example, the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency. *See Braintree Laboratories, Inc. v. Nephron-Tech, Inc.,* 1997 U.S. Dist. LEXIS 2372, 1997 WL 94237, at *9 (D. Kan. 1997); *Hamilton Indus.. Inc. v. Midwest Folding Products Mfg..* 1990 U.S. Dist. LEXIS 3138, 1990 WL 37642, at *1-2 (N.D. Ill. 1990). Other potential efficiencies resulting from the reexamination process are numerous: (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the [*6] complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pretrial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent. *Id.* These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court. *Id.*

Thus, a stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-in-suit and hundreds of related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant reexamination, the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources. *See Digital Magnetic Systems, Inc. v. Ainsley,* [*7] 213 U.S.P.Q.290,290 (W.D.Okla. 1982) [HN5] ("Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."); *Softview Computer Products Corp. v. Haworth, Inc.,* 2000 U.S. Dist. LEXIS 4254, 2000 WL 1134471, at *3 (S.D.N.Y. 2000) ("The grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). Furthermore, the court notes that discovery is not complete, and the trial, although scheduled, is some nine months in the future. In light of all these factors, and considering that the reexamination process will proceed "with special dispatch," 35 U.S.C. 305, the court concludes that a stay is the most compelling alternative.

The court recognizes that a stay will cause further delay in a case that has suffered several delays already, as well as considerable distress to the plaintiffs. The court is sensitive to the plaintiffs' right to have their day in court. Nonetheless, for the reasons already mentioned, the court is convinced that a stay is appropriate in this particular case. In addition, [*8] the court reminds the plaintiffs that they affirmatively invoked the rights of the patent statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework. Thomson is legally entitled to invoke the reexamination mechanism, and the PTO has determined that reexamination is warranted. There is nothing facially

untoward in that. Moreover, the court notes that if, after reexamination, the plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,* 807 F.2d 955, 961 (Fed. Cir. 1986) (holding that [HN6] upon reissue, the burden of proving invalidity is 'made heavier') (quoting *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1139 (Fed. Cir. 1985)). In this light, and given the particular circumstances of this case, the court cannot find that the prejudice to the plaintiffs is undue.

Objecting to a stay, the plaintiffs also have complained of dilatory conduct by the defendants, who, in turn, have accused the plaintiffs of "burying" the PTO in claims and prior [*9] art references. *See, e.g.,* Mem. of Plaintiffs in Opp. to Defs.' Joint Motion to Stay (D.I. 488) at 5-22 (detailing ways in which the defendants allegedly "have repeatedly acted to complicate and delay the resolution of this litigation"); Defs.' Joint Brief in Support of Motion to Stay (D.I. 460) at 4 ("Many of the Harvey patents had vast numbers of cited prior art references of record, effectively burying the most relevant ones.") and 7 ("It appears that PMC sought to 'overwhelm' the PTO and the Courts.").

As a brief response to the accusation of dilatory conduct, the court notes that Thomson's request for reexamination of the '825 patent comprised 2,610 pages; its request regarding the '277 patent totaled 4,736 pages. It is presumed that such an effort requires an enormous expenditure of time and other resources; thus, the timing of Thomson's reexamination requests does not, necessarily, reflect undue delay. Furthermore, as noted above, Thomson was legally entitled to invoke the reexamination procedure when it did. As to the defendants' repeated complaint that the plaintiffs overwhelmed the PTO with prior art references during prosecution of the patents-in-suit, the implications [*10] of such alleged conduct will be explored at another time in the litigation, if necessary. At this stage in the process, the court is satisfied that the PTO has found "substantial new questions of patentability" raised by each of the cited references, and has determined that all of the challenged claims of the '825 patent necessitate a reexamination. *See* PTO's Decision Granting Reexamination, Supp. Appendix to Defs.' Joint Brief in Support of Motion to Stay (D.I. 467) at 138. Although the court regrets a further delay in the present case, it is confident that the advantages of a stay outweigh the costs.

## III. CONCLUSION

Because the PTO's reexamination of one or more of the patents-in-suit may materially affect the issues in this case, the court will grant the defendants' motion to stay. The case is stayed pending a disposition of the PTO's reexamination of patent '825, and will be stayed pending reexamination of the '277 patent, if applicable. All pending motions will be denied without prejudice; the parties may refile them following the stay and upon the entry of a new scheduling order, if applicable.

Thus, for the aforementioned reasons, IT IS HEREBY ORDERED that: [*11]

> 1. The defendants' Motion to Stay Pending Reexamination by the U.S. Patent and Trademark Office (D.I. 459) is GRANTED. The proceedings are stayed from the date of this order until further notice.
>
> 2. The parties shall advise the court of any decision that results from the PTO's reexamination of the '825 patent, and any other decision of the PTO regarding reexamination of any of the other patents-in-suit.
>
> 3. The plaintiffs' Motion for Leave to Assert Claim 15 of U.S. Patent 4,965,825 (D.I. 399) is DENIED without prejudice.
>
> 4. Thomson's Motion to Dismiss or in the Alternative for Summary Judgment (D.I. 376) is DENIED without prejudice.
>
> 5. Phillips' Motion to Dismiss for Lack of Standing (D.I. 396) is DENIED without prejudice.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Date: May 14, 2003

# EXHIBIT Q

LEXSEE

**ROBERT H. HARRIS COMPANY, INC., PLAINTIFF v. METAL MANUFACTURING CO., INC., DEFENDANT**

Civil No. J-C-90-179

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS, JONESBORO DIVISION**

1991 U.S. Dist. LEXIS 16086

**June 20, 1991, Decided
June 21, 1991, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant manufacturer either sought to dismiss for lack of personal jurisdiction or transfer, pursuant to 28 U.S.C.S. § 1404(a), plaintiff patentee's infringement action that alleged the manufacturer had made and sold a product which infringed upon the patentee's patent. Moreover, the manufacturer filed a motion to stay the action pending a requested patent re-examination that was made pursuant to 35 U.S.C.S. § § 301-307.

**OVERVIEW:** After the patentee brought an infringement action against the manufacturer, the manufacturer moved to either dismiss the action for lack of personal jurisdiction, or transfer the action, pursuant to 28 U.S.C.S. § 1404(a). It also sought to stay the action pending a patent re-examination. The court denied the motions to dismiss and to transfer, but granted the motion to stay the action. In denying the motion to dismiss, the court held the manufacturer was subject to Arkansas's long-arm statute, Ark. Code Ann. § 16-4-101(C)(1)(a), because the manufacturer had purposefully availed itself of the privilege of conducting business in the state by deriving revenues from and soliciting business in the state. In denying the motion to transfer made under 28 U.S.C.S. § 1404(a), the court held the balance of convenience or burden to the manufacturer had not outweighed the patentee's forum choice. Finally, in granting the motion to stay the action, the court held staying the infringement action until completion of the re-examination request would be advantageous, noting that the re-examination procedure had the potential to eliminate trial on the issue of infringement.

**OUTCOME:** The court denied the manufacturer's motion to dismiss for lack of personal jurisdiction and motion to transfer but granted the manufacturer's motion to stay the manufacturer's infringement action pending a requested patent re-examination.

**CORE TERMS:** reexamination, patent, venue, reside, exercise personal jurisdiction, venue statute, patentability, infringement, pretrial, outweigh, exercise of personal jurisdiction, substantial question, motion to dismiss, choice of forum, non-resident, convenience, reexamined, examiner, long-arm, trial calendar, infringing, discovery, weighed

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN1] To determine whether the court can exercise personal jurisdiction over a defendant, the court must find that jurisdiction is proper under the Arkansas long-arm statute and that the exercise of personal jurisdiction is consistent with due process.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN2] Pursuant to Ark. Code Ann. § 16-4-101(C)(1)(a), the Arkansas long-arm statute provides that a court may exercise personal jurisdiction over a non-resident for a cause of action arising from the defendant's transacting any business in the state. The term "transacting business" is more inclusive than the previous statutory provision of "doing business," and the legislative intent is to expand

jurisdiction to the limits permitted by the due process clause of the United States Constitution.

**Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview**
**Copyright Law > Civil Infringement Actions > Jurisdiction & Venue > General Overview**
[HN3] 28 U.S.C.S. § 1400(b) provides that an action for patent infringement may be brought in the judicial district where a defendant resides or where the defendant commits acts of infringements and has a regular and established place of business.

**Copyright Law > Civil Infringement Actions > Jurisdiction & Venue > General Overview**
**Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview**
[HN4] The definition of "reside" in 28 U.S.C.S. § 1391(c) applies to 28 U.S.C.S. § 1400(b).

**Civil Procedure > Venue > Change of Venue in Federal Courts**
[HN5] Under 28 U.S.C.S. § 1404(a), a court may transfer an action to any district where it might be brought for the convenience of the parties and witnesses and in the interest of justice. A plaintiff's choice of forum is usually entitled to great weight and should not be disturbed unless the balance of the various factors is clearly in favor of a defendant. However, this choice is deserving of less weight when none of the operative facts of an action occur in a forum selected by a plaintiff. In determining whether to exercise its discretion to transfer an action, the court may consider a number of factors, including the convenience of parties and witnesses, the availability of judicial process to compel the attendance of unwilling witnesses, the governing law, ease of access to sources of proof such as the location of records and documents, the place where events at issue occur, and the place where the case can be tried more expeditiously and inexpensively.

**Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations**
**Trademark Law > Protection of Rights > Registration > Federal Registration**
[HN6] When a petition for re-examination is filed, the United States Patent and Trademark Office must decide within three months whether there is a substantial question of patentability, pursuant to 35 U.S.C.S. § 303(a). If a substantial question of patentability is found, a patent will be re-examined, and a patent owner will be given a

reasonable period to respond, pursuant to 35 U.S.C.S. § 304.

**Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations**
[HN7] Only items of prior art are to be considered in a re-examination proceeding. Typically, the cited prior art patents or printed publications upon which such a request is based are ones which are not considered by a patent examiner during the processing of a patent application which results in a patent-in-suit. Once a re-examination request is granted, a patent examiner who is familiar with the technology involved with a patent conducts the re-examination and is obligated to do so with special dispatch, pursuant to 37 C.F.R. § 1.550(a).

**Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas**
**Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations**
[HN8] Whether an action should be stayed pending the outcome of a re-examination proceeding before the United States Patent and Trademark Office resides in the discretion of the court.

**JUDGES:** [*1]

George Howard, Jr., United States District Judge.

**OPINIONBY:**

HOWARD

**OPINION:**

ORDER

Plaintiff brings this action alleging that defendant manufactures and sells a product which infringes plaintiff's patent. Defendant has filed a motion to dismiss for lack of personal jurisdiction and for improper venue. In the alternative, defendant asks that the Court transfer this action pursuant to 28 U.S.C. § 1404(a). Defendant has also filed a motion for stay pending re-examination.

Motion to Dismiss or to Transfer

[HN1] To determine whether the Court can exercise personal jurisdiction over defendant, the Court must find that jurisdiction is proper under the Arkansas long-arm statute and that the exercise of personal jurisdiction is consistent with due process. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982).

[HN2] The Arkansas long-arm statute provides that a court may exercise personal jurisdiction over a non-

resident for a cause of action arising from the defendant's transacting any business in this state. A.C.A. § 16-4-101(C)(1)(a). The Arkansas Supreme Court has held that the term "transacting business" is more inclusive than the previous statutory provision of "doing [*2] business" and that the legislative intent is to expand jurisdiction to the limits permitted by the due process clause of the United States Constitution. Dudley v. Dittmer. 795 F.2d 669, 672 (8th Cir. 1986).

Defendant states that its contacts with the state are too "attenuated" to comport with due process. Defendant also asserts that the Court cannot exercise personal jurisdiction over it unless plaintiff demonstrates that defendant has shipped the allegedly infringing product into Arkansas.

The Court disagrees. Defendant has purposefully availed itself of the privilege of conducting business in Arkansas. See Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174 (1985). Defendant has derived significant revenues from the sale of its products in Arkansas. It solicits business in Arkansas (including the sale of the allegedly infringing product) through the mailing of catalogs, magazine advertisements, and telephone contacts. The documentation provided by plaintiff demonstrates sufficient "minimum contacts" between the non-resident defendant and the forum state so that the exercise of personal jurisdiction over defendant is consistent with traditional [*3] notions of fair play and substantial justice. International Shoe Co. v. Washington. 326 U.S. 310 (1945).

Defendant also argues that venue is inappropriate in this district. Defendant relies on the language of the patent venue statute, [HN3] 28 U.S.C. § 1400(b) which provides that an action for patent infringement may be brought in the judicial district where the defendant resides, or where defendant has committed acts of infringements and has a regular and established place of business.

The question of the meaning of the patent venue statute in light of the recent changes to the general venue statute, 28 U.S.C. § 1391(c) was addressed in a recent decision. VE Holding Corp. v. Johnson Gas Appliance Co.. 917 F.2d 1574 (Fed. Cir. 1990). The court held that [HN4] the definition of "reside" in § 1391(c) applies to § 1400(b).

By order dated December 12, 1990, the Court stayed a decision on the motion to dismiss because of improper venue pending action by the United States Supreme Court on the petition for certiorari filed in VE Holding Corp. Certiorari in that case has recently been denied. 111 S.Ct. 1315 (1991).

As the Court noted in its December [*4] 12th order, the holding in VE Holding Corp. is dispositive of the venue issue. As defendant is subject to personal jurisdiction in this district, venue is proper here.

Defendant contends, in the alternative, that the Court should transfer the case to the Middle District of Florida.

[HN5] Under 28 U.S.C. § 1404(a), a court may transfer an action to any district where it might have been brought "for the convenience of the parties and witnesses, (and] in the interest of justice." The plaintiff's choice of forum is usually entitled to great weight and should not be disturbed unless the balance of the various factors is clearly in favor of the defendants. Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947). However, "this choice is deserving of less weight when none of the operative facts of the action occur in the forum selected by the plaintiff." National Mortgage Network, Inc. v. Home Equity Centers, Inc., 683 F.Supp. 116, 119 (E.D. Pa. 1988). In determining whether to exercise its discretion to transfer an action, the Court may consider a number of factors, including the convenience of the parties and the witnesses, the availability of judicial process [*5] to compel the attendance of unwilling witnesses, the governing law, ease of access to sources of proof such as the location of records and documents, the place where the events at issue occurred, and the place where the case could be tried more expeditiously and inexpensively. Darchuk v. Kellwood Co., 47 FEP Cases ,1259 (E.D. Ark. 1988); Kolko v. Holiday Inns, Inc., 672 F.Supp. 713 (S.D.N.Y. 1987).

The Court has weighed the factors and is persuaded that the balance of convenience or burden to defendants in this instance does not outweigh plaintiff's choice of forum. Both plaintiff and defendant will be somewhat burdened by having to obtain witnesses and documents from Florida. Plaintiff, however, contends that it is not financially able to prosecute its action in Florida.

In sum, the Court finds that defendant has not met its burden of demonstrating that transfer is warranted under 28 U.S.C. § 1404(a).

Motion for Stay Pending Re-Examination

Defendant has filed a reexamination request with the United States Patent and Trademark Office (PTO) on June 7, 1991. The reexamination process is a relatively new procedure codified at 35 U.S.C. § § [*6] 301-307. [HN6] When a petition for reexamination is filed, the PTO must decide within three months whether there is a substantial question of patentability. 35 U.S.C. § 303(a). If a substantial question of patentability is found, the patent will be reexamined, and the patent owner will be given a reasonable period to respond. 35 U.S.C. § 304.

See Freeman v. Minnesota Mining & Mfg. Co., 661 F.Supp. 886 (D.Del. 1987).

[HN7] Only items of prior art are to be considered in the reexamination proceeding. "Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were not considered by the patent examiner during the processing of the patent application which results in the patent-in-suit. Once a reexamination request is granted, a Patent Examiner who is familiar with the technology involved with the patent conducts the reexamination and is obligated to do so 'with special dispatch.'" 37 C.F.R. § 1.550(a)." Ingro v. Tyco Industries, Inc., 227 U.S.P.Q. 69, 70 (N.D. Ill. 1985).

In this instance, defendant states that a recently discovered manual raises new questions of patentability with respect to plaintiff's [*7] patent. Defendant therefore has requested that Claims 1-8 of the Harris patent be reexamined.

[HN8] Whether the action should be stayed pending the outcome of a reexamination proceedings before the PTO resides in the discretion of the court. The legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays.

The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of the United States patents in an efficient and relatively inexpensive manner.

H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, reprinted in 1980 U.S. Code Cong. & Ad. News 6460, 6463.

A number of courts have recognized the advantages of staying a pending infringement action until completion of a reexamination request. In Emhart Industries, Inc. v. Sankyo Keiki Mfg., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987), [*8] the court enumerated the following advantages in granting a stay which would shift to the PTO the validity of a patent claim:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

Similarly, in Loffland Brothers Co. v. Mid-Western Energy Corp., 225 U.S.P.Q. 886, 887 (W.D. Okla. 1985), the court noted that "the reexamination procedure has the potential to eliminate trial on the issue of patent infringement, should all of the patent's claims be cancelled. It is equally possible for all of the claims [*9] in plaintiff's patent to be upheld . . . In any event, the expert view of the Patent Office examiner will certainly benefit this Court."

Plaintiff objects to a stay. It argues that defendant seeks a stay solely to prolong the litigation and increase plaintiff's costs. In particular, plaintiff argues that it continues to be prejudiced by the existence of defendant in the marketplace. Plaintiff argues that the prejudice of the delay would outweigh any benefit which might result from the reexamination procedure.

The Court has weighed the costs and benefits of granting a stay. This action has been pending less than a year. Although it is set for trial next month, the Court is not persuaded that this a case which has "run an overly protracted course." See Toro Company v. L.R. Nelson Corp., 223 U.S.P.Q. 636, 638 (C.D. Ill. 1984). The parties appear not to have engaged in expensive discovery or extensive pretrial preparation. Furthermore, plaintiff has sued for damages and has an adequate legal remedy. See Ingro, supra.

The Court is not persuaded that defendant has abused the reexamination process in an attempt to delay trial proceedings. The Court [*10] notes that the decision on whether defendant's request for reexamination is granted will be forthcoming; should it be denied, the case can immediately be replaced on the trial calendar.

Should the reexamination request be granted, some delay will result. The Court, however, is not of the opinion that the delay will be significant and finds that the benefits of the reexamination procedure far outweigh the prejudice to plaintiff resulting from the delay.

1991 U.S. Dist. LEXIS 16086, *

Thus, the Court grants defendant's motion for stay of proceedings pending resolution of its request for reexamination by the PTO. Defendant is directed to notify the Court as soon as the PTO acts on the request. The case will be removed from the July 29th trial calendar.

Accordingly, the motion to quash or dismiss for lack of jurisdiction or improper venue, or in the alternative, to transfer venue is denied. The motion for stay of proceedings or to continue is granted.

IT IS SO ORDERED this 20th day of June, 1991.

# EXHIBIT R

LEXSEE

**SULZER INC. and SULZER PAPERTEC MANSFIELD, INC., Plaintiffs, -against- BLACK CLAWSON COMPANY, Defendant. BLACK CLAWSON COMPANY, Third-Party Plaintiff, -against- SULZER-ESCHER-WYSS and GEBRUEDER SULZER AG, Third-Party Defendants.**

**93 Civ. 8721 (JGK)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**1995 U.S. Dist. LEXIS 8328**

**June 14, 1995, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a patent infringement action where plaintiff corporations and defendant corporations sought a stay, plaintiffs moved to continue the existing stay during the pendency of the reexamination proceedings in the U.S. Patent and Trademark Office.

**OVERVIEW:** Plaintiff corporations and defendant corporations both sought a stay of the patent infringement action at the outset, pending a decision on the reexamination proceeding in the U.S. Patent and Trademark Office. The initial examiner rejected the claims in the plaintiffs' patent, although plaintiffs filed further data in response to the examiner's request. Plaintiffs indicated that they would appeal a substantially adverse decision to the Board of Patent Appeals. Plaintiffs moved to continue an existing stay during the pendency of the reexamination proceedings. The court granted the motion and the stay was to be continued, conditioned on plaintiffs continuing to prosecute the reexamination proceeding and appeal as expeditiously as possible. The court noted that a final decision on the reexamination proceeding could assist in focussing discovery and trial and might promote settlement.

**OUTCOME:** Plaintiffs' motion to continue the existing stay during the pendency of the reexamination proceedings in the U.S. Patent and Trademark Office was granted.

**CORE TERMS:** reexamination, expeditiously, cloud, present litigation, examiner, outset, lift

**COUNSEL:** [*1] Counsel for Plaintiff & Third-Party Defendant: Sprung, Horn, Kramer & Woods, Tarrytown, NY, By: Arnold Sprung, Ira J. Schaefer and Nathaniel D. Kramer. Bachner, Tally, Polenoy and Mesher, New York, NY, By: Roger R. Crane Jr., & Lina Liberatore.

Counsel for the Defendant & Third-Party Plaintiff: Braunschweig, Rachlis, Fishman & Raymond, New York, NY, By: Richard Raymond & Robert Braunschweig.

**JUDGES:** John G. Koeltl, United States District Court Judge

**OPINIONBY:** John G. Koeltl

**OPINION:**

OPINION AND ORDER

JOHN G. KOELTL, District Judge:

Plaintiff moves to continue the existing stay during the pendency of the reexamination proceedings in the U.S. Patent and Trademark Office. The motion is granted and the stay will be continued, conditioned on the plaintiff continuing to prosecute the reexamination proceeding and appeal as expeditiously as possible. If the plaintiff does not expeditiously pursue that proceeding and appeal, the defendant can apply to lift the stay.

Both parties sought a stay of this patent infringement action at the outset pending a decision on the reexamination proceeding which is now near completion. The initial examiner has rejected the claims in the plaintiff's patent at [*2] issue in this case, although the plaintiff has filed further data in response to the examiner's request. The plaintiff has indicated that it will appeal a

substantially adverse decision to the Board of Patent Appeals. A final decision on the reexamination proceeding may well assist in focussing discovery and trial in this case and indeed may well promote settlement. The most cost effective and efficient means of pursuing the present litigation will be to await the results of the reexamination proceeding. See generally, Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir.), cert. denied, 464 U.S. 935, 78 L. Ed. 2d 310, 104 S. Ct. 343 (1983); GPAC v. D.W.W Enterprises, Inc., 144 F.R.D. 60, 23 U.S.P.Q.2D (BNA) 1129 (D.N.J. 1992); United Sweetener USA, Inc. v. Nutrasweet Co. Inc., 766 F. Supp. 212, 217 (D.Del. 1991); Robert H. Harris Co. v. Metal Mfg. Co. Inc., 19 U.S.P.Q.2D (BNA) 1786 (E.D. Ark. 1991); Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co., Ltd., 3 U.S.P.Q.2D (BNA) 1889, 1890 (N.D.Ill. 1987).

While the defendant argues that this action results in a "cloud" over its own allegedly infringing device, that "cloud" is admittedly the same that existed when the defendant [*3] agreed to the stay at the outset of this action. Moreover, awaiting the conclusion of the P.T.O. proceeding and then proceeding expeditiously with the present litigation is the most efficient and timely way to resolve the dispute between the parties and to dispel any cloud. In short, the defendant will not be prejudiced by the stay and the stay will conserve the resources of the parties and promote the efficient resolution of this case.

Therefore, the motion to continue the stay is granted. Either party may move to lift the stay for good cause including the failure by the plaintiff to pursue expeditiously the P.T.O. reexamination proceeding. The case will remain on this Court's Suspense Docket. The parties are directed to report to the Court on or before January 12, 1996 on the current status of the P.T.O. proceeding.

SO ORDERED.

John G. Koeltl

United States District Court Judge

Dated: New York, New York
June 14, 1995

# EXHIBIT S

LEXSEE

**JOHN WERRE, Plaintiff, vs. BATTENFELD TECHNOLOGIES, INC., a Missouri corporation, MIDWAY ARMS, INC., a Missouri corporation, DOES 1-100 and DOES, INC. 1-100, Defendants.**

Civil No. 03-1471-AA

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON**

2004 U.S. Dist. LEXIS 23250

**November 9, 2004, Decided**

**DISPOSITION:** Defendants' motion to stay litigation granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants moved to stay litigation pending reexamination of a patent by the United States Patent and Trademark Office (PTO).

**OVERVIEW:** The court applied three factors, which all favored a stay. First, no undue prejudice would occur to plaintiff if the stay were granted. Discovery was not scheduled to close until February 2005. Each party had served and responded to only a single set of written discovery requests. No depositions had been taken. No expert reports had been exchanged. A Markman hearing had not been scheduled, and summary judgment motions had not been filed. Second, as to simplification of the issues, the court noted that there was only one patent at issue and defendants were accused of infringing only two claims, both of which were being reexamined. A determination of invalidity by the PTO would dispose of the case before the court. A cancellation of some of the claims might narrow the issues before the court. Third, discovery was in the beginning stages, and no trial date had been set.

**OUTCOME:** The motion was granted.

**CORE TERMS:** patent, reexamination, discovery, trial date, stay proceedings, depositions, scheduled, motion to stay

**LexisNexis(R) Headnotes**

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN1] The decision to stay litigation is within the sound discretion of this court.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN2] There exists a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN3] The relevant considerations when courts are considering staying patent ligation during the reexamination of a patent by the United States Patent and Trademark Office are: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage for the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

**COUNSEL:** [*1] For John Werre, Plaintiff: Bert P. Krages, II, Bert P. Krages II, Attorney at Law, Portland, OR; Leonard D. DuBoff, DuBoff Dorband Cushing & King PLLC, Portland, OR.

For Battenfeld Technologies, Inc., a Missouri corporation, Defendant: David W Harlan, Senniger Powers Leavitt & Roedel, St. Louis, MO; Paul T. Fortino, Perkins Coie LLP, Portland, OR; Scott D. Eads, Perkins Coie, LLP, Portland, OR; Christopher L. Garrett, Perkins Coie, LLP, Portland, OR.

For Midway Arms, Inc., a Missouri corporation: Paul T. Fortino, Perkins Coie LLP, Portland, OR; Scott D. Eads, Perkins Coie, LLP, Portland, OR; Christopher L. Garrett, Perkins Coie, LLP, Portland, OR.

For Does 1-100 and Does, Inc. 1-100: Scott D. Eads, Perkins Coie, LLP, Portland, OR.

JUDGES: Ann Aiken, United States District Judge.

OPINIONBY: Ann Aiken

OPINION:

ORDER

AIKEN, Judge:

Defendants' motion to stay litigation pending reexamination of 131 Patent by the United States Patent and Trademark Office (PTO) is granted.

Plaintiff contends that defendants have infringed claims 1 and 2 of plaintiff's U.S. Patent No. 5,813,131 (the 131' Patent). Plaintiff commenced this action on October 24, 2003. On July 2, 2004, defendant Midway [*2] Arms, Inc. (Midway) requested that the PTO "reexamine" claims 1 through 4 of the 131 Patent in light of relevant "prior art" that was not considered by the PTO during the original prosecution of the 131 Patent. On August 31, 2004, the PTO granted Midway's request, finding that the new prior art raises a "substantial new question of patentability" as to claims 1 through 4 of the 131 Patent.

[HN1] The decision to stay litigation is within the sound discretion of this court. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted). Further, the court recognizes that [HN2] there exists a "liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." Whatley v. Nike Inc., 54 U.S.P.Q.2d 1124, 1125 (D. Or. 2000).

Case law sets forth [HN3] the relevant considerations when courts are considering staying patent litigation during the reexamination of a patent by the PTO. Those are: (1) whether a stay would unduly prejudice or present [*3] a clear tactical disadvantage for the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. Whatley, 54 U.S.P.Q.2d at 1125. I find that all three factors favor a stay in this case.

First, I find no undue prejudice that will occur to the plaintiff if the stay is granted. Discovery is not scheduled to close in this case until February 2005. Each party has served and responded to only a single set of written discovery requests. No depositions have been noticed or taken. No expert reports have been exchanged. A Markman claim construction hearing has not been held, or even scheduled, nor have any summary judgment motions been filed. Moreover, I note the PTO's obligation to handle the reexamination proceeding "with special dispatch." 35 U.S.C. § 305.

As to the second factor, simplification of issues, this also weighs in favor of granting the stay. The 131 Patent is the only patent at issue; further, defendants are accused of infringing only two claims of that patent, both of which are now being reexamined by the PTO. A determination [*4] of invalidity by the PTO would entirely dispose of the case before this court. Further, even if the PTO cancels just some of the claims 1 through 4, that may very well narrow the issues before this court.

Finally, the third factor -- whether discovery is complete and a trial date has been set -- also favors entering the stay. As stated earlier, discovery is in the beginning stages. There have been no depositions, expert discovery, claim construction, or dispositive motions filed. No trial date has been set.

CONCLUSION

Defendant's motion to stay this litigation pending reexamination of 131 Patent by the U.S. Patent & Trademark Office (doc. 29) is granted. The parties are ordered to notify the court when the PTO has concluded its reexamination proceeding and reached a conclusion.

IT IS SO ORDERED.

Dated this 9 day of November 2004.

Ann Aiken

United States District Judge