PUBLIC VERSION

# EXHIBIT L

PUBLIC VERSION

LEXSEE

**HARRY W. EBERLE, III, et al., Plaintiffs, v. STEVEN HARRIS, et al., Defendants.**

**Civil Action No. 03-5809 (SRC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

**2005 U.S. Dist. LEXIS 31885**

**December 7, 2005, Decided**
**December 8, 2005, Filed**

**NOTICE:** [*1] NOT FOR PUBLICATION

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holders filed a patent infringement suit against defendants, a manufacturing company and an individual. Defendants answered and counterclaimed that the holders' patent was invalid, unenforceable and void. Defendants moved to stay the patent infringement suit pending a determination by the United States Patent & Trademark Office (PTO) as to the patent's continued validity.

**OVERVIEW:** After the infringement suit was filed, the individual filed a request with the PTO, pursuant to 35 U.S.C.S. § 302, seeking an ex parte reexamination of the holders' patent. Defendants moved for a stay after the PTO granted the request. The PTO found that a substantial new question had been raised regarding patentability and the validity of the patent. Plaintiffs were thereafter allowed to amend their complaint to add claims relating to a second patent. They opposed the motion for a stay, arguing that they would be unduly prejudiced by the delay and that a stay would be inappropriate given that they had alleged infringement of two patents, only one of which was being reexamined by the PTO. The court noted that, when seeking leave to amend their complaint, plaintiffs failed to disclose that the second patent was also subject to potential PTO reexamination. It was clear that the reexamination would effect the infringement suit in some manner and to some extent, particularly if the PTO decided to reexamine the second patent as well. The benefits of waiting until the reexamination was concluded far outweighed the burden of waiting for the PTO's decision. A stay would assist the parties.

**OUTCOME:** The court granted defendants' motion for a stay and ordered that the patent infringement suit should be stayed pending the PTO's reexamination of the holders' patent or patents.

**CORE TERMS:** reexamination, patent, discovery, civil action, disadvantage, staying, additionally, amend, reexamined, simplify, stayed pending, motion to stay, trial date, patentability, certificate, patentable, reduction, mediation, unduly, docket entry, lengthy, waiting

**LexisNexis(R) Headnotes**

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN1] 35 U.S.C.S. § 302 allows any person at any time to file a request with the United States Patent & Trademark Office (PTO) for reexamination of any claim of a patent, on the basis of any prior art. The PTO will consider all requests for reexamination and will grant those requests that present a substantial new question of patentability affecting any claim of the patent. 35 U.S.C.S. § 303(a). During the course of a reexamination, the patent owner may propose any amendment to the patent in question to distinguish the invention as claimed from the prior art. 35 U.S.C.S. § 305. When the PTO completes the reexamination process, it will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable. 35 U.S.C.S. § 307(a). Should the patent owner be dissatisfied with the PTO's reexamination determination, he/she may appeal to the Board of Patent Appeals and Interferences, and then to the United States Court of Appeals for the Federal Circuit. 35 U.S.C.S. § § 134(b), 141, and 306. When the appeals have terminated, or the time for such appeals has expired, the PTO will issue a reexamination certificate. 35 U.S.C.S. § 307(a).

2005 U.S. Dist. LEXIS 31885, *

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN2] The relevant statutes regarding United States Patent & Trademark Office (PTO) reexaminations, specifically 35 U.S.C.S. ch. 30, do not expressly provide for a stay of court proceedings because it is believed that stay provisions are unnecessary, in that such power already resides with the court. 1980 U.S.C.S.C.A.N. 6460, 6463. Congress has noted its approval of district courts liberally granting stays within their discretion to prevent costly pretrial maneuvering, which attempts to circumvent the reexamination procedure. H.R. Rep. No. 1307, pt. I (1980).

*Civil Procedure > Trials > Pretrial Conferences*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN3] Courts maintain an inherent power to control and manage their dockets and stay proceedings, including stays pending conclusions of United States Patent & Trademark Office reexaminations.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN4] Courts have enumerated various advantages in staying a civil action pending United States Patent & Trademark Office (PTO) reexaminations. Those advantages include: (1) a review of all prior art presented to a court by the PTO, with its particular expertise; (2) the potential alleviation of numerous discovery problems relating to prior art by PTO examination; (3) the potential dismissal of a civil action should invalidity of a patent be found by the PTO; (4) encouragement to settle based upon the outcome of the PTO reexamination; (5) an admissible record at trial from the PTO proceedings which would reduce the complexity and length of the litigation; (6) a reduction of issues, defenses and evidence during pre-trial conferences; and (7) a reduction of costs for the parties and a court. Conversely, a stay in litigation inevitably causes further delay in an already lengthy process, and could potentially harm the plaintiffs. The plaintiffs have a right to have their day in court, and more and more in American jurisprudence the goal is to have that day sooner rather than later.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN5] In determining whether a stay is appropriate, courts must consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN6] A clearer line of sight for staying a case pending United States Patent & Trademark Office reexamination exists when it is only a single patent case.

**COUNSEL:** For HARRY W. EBERLE, III, A RESIDENT OF NEW JERSEY, BLUE HERON ENTERPRISES, LLC, A NEW JERSEY LIMITED LIABILITY COMPANY, Plaintiffs: ERNEST D. BUFF, ERNEST D. BUFF & ASSOCIATES, LLC, BEDMINSTER, NJ.

For STEVEN HARRIS, A RESIDENT OF KANSAS TRADING AS KK MFG. CO. TRADING AS KK MANUFACTURING CO. TRADING AS KK MANUFACTURING COMPANY, KK MFG. CO., INC., A CORPORATION OF THE STATE OF KANAS, Defendants: STEVEN GERBER, ADORNO & YOSS LLP, WAYNE, NJ.

For STEVEN HARRIS, A RESIDENT OF KANSAS, KK MFG. CO., INC., A CORPORATION OF THE STATE OF KANAS, Counter Claimants: STEVEN GERBER, ADORNO & YOSS LLP, WAYNE, NJ.

For BLUE HERON ENTERPRISES, LLC, A NEW JERSEY LIMITED LIABILITY COMPANY, HARRY W. EBERLE, III, A RESIDENT OF NEW JERSEY, Counter Defendant: ERNEST D. BUFF, ERNEST D. BUFF & ASSOCIATES, LLC, BEDMINSTER, NJ.

**JUDGES:** BONGIOVANNI, Magistrate Judge.

**OPINIONBY:** TONIANNE J. BONGIOVANNI

**OPINION:**

    **LETTER OPINION AND ORDER**

    [Docket Entry #17]

PUBLIC VERSION          2005 U.S. Dist. LEXIS 31885, *

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Motion by Defendants/Counterclaimants G. Steven Harris, Sr. and KK Manufacturing Co., Inc. (hereinafter "Defendants") seeking an order to [*2] stay the above-referenced civil action pending the United States Patent & Trademark Office's (hereinafter "PTO") reexamination of United States Patent No. 4,602,415 (hereinafter "the '415 patent") [docket entry #17]. Plaintiffs Harry W. Eberle, III and Blue Heron Enterprises, LLC (hereinafter "Plaintiffs") object to Defendants' Motion to Stay. For the foregoing reasons, this Court will grant Defendants Motion and this civil action shall be stayed pending the PTO reexamination of the '415 patent and United States Patent No. 6,851,884 (hereinafter "the '884 patent"), should the PTO decide that the '884 patent is to be reexamined as well.

**PROCEDURAL HISTORY**

On December 8, 2003, Plaintiffs filed a Complaint alleging infringement of their '415 patent. (See Docket Entry #1.) Defendants filed an Answer on February 18, 2004 and counterclaimed by alleging that the '415 patent is invalid, unenforceable and void. (Def.'s Br., p. 2.) This Court referred the litigation to mediation by Order dated April 29, 2004. (See Docket Entry #6.) On December 13, 2004, this Court was notified that mediation was unsuccessful. (See Docket.) Thereafter, this Court entered a Scheduling [*3] Order detailing, among other things, that fact discovery was to be completed by November 30, 2005. (See Docket Entry #13.)

On August 5, 2005, Defendant Harris filed a Request for Ex Parte Reexamination of the '415 patent with the PTO. (Def.'s Br., p. 2.) Defendant Harris based the request for reexamination on newly discovered prior art. (Id.) The PTO granted Defendant Harris' request on September 20, 2005, and indicated that a "substantial new question" of patentability and validity regarding the '415 patent had been raised. (Def.'s Br., p. 3.)

On October 3, 2005, Plaintiffs filed a Motion to Amend Complaint to add an additional patent, the '884 patent, which Plaintiffs assert is also being infringed upon by Defendants. (See Docket Entry #15.) On October 12, 2005, Defendants filed the instant motion. (See Docket Entry #17.) On or about October 20, 2005, Defendant Harris filed a second reexamination request with the PTO for the '884 patent. (Def.'s Reply Br., p. 4.) That request is currently pending before the PTO. (Id.) On November 23, 2005, by Court Order, Plaintiffs Motion to Amend Complaint to add the '884 patent was granted. (See Docket.)

**DISCUSSION** [*4]

*Ex Parte PTO Patent Reexamination*

[HN1] 35 U.S.C. § 302 allows any person at any time to file a request with the PTO for reexamination of any claim of a patent, on the basis of any prior art. The PTO will consider all requests for reexamination and will grant those requests that present "a substantial new question of patentability affecting any claim of the patent . . ." See 35 U.S.C. § 303(a). During the course of a reexamination, the patent owner may propose any amendment to the patent in question to distinguish the invention as claimed from the prior art. 35 U.S.C. § 305. When the PTO completes the reexamination process, it will "issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307(a). Should the patent owner be dissatisfied with the PTO's reexamination determination, he/she may appeal to the Board of Patent Appeals and Interferences, and then to the [*5] Court of Appeals for the Federal Circuit. 35 U.S.C. § § 134(b), 141, and 306. When the appeals have terminated, or the time for such appeals has expired, the PTO will issue a reexamination certificate. 35 U.S.C. § 307(a).

*Staying Proceedings Pending PTO Reexamination*

[HN2] The relevant statutes regarding PTO reexaminations, specifically Chapter 30 of Title 35, United States Code, do not expressly provide for a stay of court proceedings because "it is believed by the committee that stay provisions are unnecessary in that such power already resides with the court." Ethicon. Inc. v. Quigg, 849 F.2d 1422, 1426 (Fed.Cir.1988), quoting 1980 U.S.C.C.A.N. 6460, 6463. Congress noted its approval of district courts liberally granting stays within their discretion "to prevent costly pretrial maneuvering which attempts to circumvent the re-examination procedure." Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed.Cir.1983), citing H.R.Rep. No. 1307, Part I, 96th Congress, 2d Sess. (1980).

As such, [HN3] courts maintain an inherent power to control and manage their dockets and stay proceedings, including stays [*6] pending conclusions of PTO reexaminations. Id. at 1342. See also Rohm & Hass v. Mobile Oil Company, 462 F.Supp. 732, 734 (D.Del.1978) (a motion to stay an action pending the resolution of a related matter in the PTO is directed to the sound discretion of the court).

*Advantages/Disadvantages to Staying Proceedings Pending PTO Reexamination*

Page 3

[HN4] Courts have enumerated various advantages in staying a civil action pending PTO reexamination. Those advantages include: (1) a review of all prior art presented to a court by the PTO, with its particular expertise; (2) the potential alleviation of numerous discovery problems relating to prior art by PTO examination; (3) the potential dismissal of a civil action should invalidity of a patent be found by the PTO; (4) encouragement to settle based upon the outcome of the PTO reexamination; (5) an admissible record at trial from the PTO proceedings which would reduce the complexity and length of the litigation; (6) a reduction of issues, defenses and evidence during pre-trial conferences; and (7) a reduction of costs for the parties and a court. GPAC, Inc. v. D.W.W. Enterprises, Inc., 144 F.R.D. 60, 63 (D.N.J. 1992), citing Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., 3 U.S.P.Q.2d (BNA) 1889, 1890, 1987 WL 6314 (N.D.Ill.1987).

Conversely, as Plaintiffs indicate in their opposition papers, a stay in litigation inevitably causes further delay in an already lengthy process, and could potentially harm Plaintiffs. Plaintiffs have a right to have their day in court, and more and more in American jurisprudence the goal is to have that day sooner rather than later.

*Determining When a Stay is Appropriate*

[HN5] In determining whether a stay is appropriate, courts must consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." Xerox Corp. v. 3 Comm Corp., 69 F.Supp.2d 404, 406 (W.D.N.Y.1999).

*Analysis*

Plaintiffs' object to Defendants' Motion to Stay Pending Patent Reexamination. Specifically, Plaintiffs argue that a stay is more typically granted in single patent cases, and that this case, pursuant to this Court's decision to allow Plaintiffs' [*8] to amend their Complaint to add an additional patent, contains two patents, one of which is not subject to PTO reexamination at this time. n1 (Plf.'s Br., p. 3.) Additionally, Plaintiffs argue that staying the litigation in question would unduly prejudice Plaintiffs because reexamination proceedings are lengthy and the stay would allow the ongoing injuries sustained by Plaintiffs because of Defendants' alleged infringing activities to continue *ad nauseam.* (*Id.*) Plaintiffs conclude by arguing that the '415 patent is not complex and therefore, will not simplify the issues before the Court. (Plf.'s Br., p. 4.)

N1 There is some question as to Plaintiffs' motives when they filed their motion to amend the complaint. [HN6] A clearer line of sight for staying a case pending PTO reexamination exists when it is only a single patent case. Additionally, there is evidence that suggests that Plaintiffs were aware that the second patent allowed into the case was subject to potential PTO reexamination as well, and unfortunately, Plaintiffs did not offer that information to the Court during its case laden legal analysis as to why cases with multiple patents in which one patent is under reexamination should not be stayed. Nevertheless, Defendants have advised the Court as to the status of the second patent, and the Court duly notes that information.

[*9]

Defendants' reject Plaintiffs' objections and argue that Plaintiffs have not demonstrated an urgency regarding this case insofar as they have only recently propounded discovery requests. (Def.'s Reply, p. 7.) Defendants further argue that a stay would not prejudice or disadvantage Plaintiffs, but rather, would conserve the time and resources of this Court and the parties. (*Id.*) Defendants additionally argue that at least some of the patent claims could become moot and some if not all of the discovery conducted up to that point could become useless or would at the very least need to be revisited. (*Id.*) Defendants end by arguing that the number of patents involved in a litigation does not dictate whether a stay should be issued, and that there is no law to support Plaintiffs' position that because there are two patents, and only one is being reexamined by the PTO, that the request to stay should be denied. (*Id.* at 4.)

The Court notes Plaintiffs' objections, and understands their perceived need to press on in this litigation. However, the Court also notes that Plaintiffs did not express that need until their opposition to Defendants' Motion was received. With one PTO reexamination [*10] granted and another potential reexamination pending, the debate is not whether or not this civil action will be affected, but rather the extent of said affect. The benefits of waiting for the PTO's reexamination(s) far outweigh the burden of waiting for their decision(s). The dynamics of the litigation in issue will potentially alter, and with that alteration, the needs of the parties, the discovery they seek, the witnesses they will name, perhaps the very basis for the litigation will change. The advantages to the Court, and more importantly the parties by staying the litigation are clear. (*See infra*, p. 4.) Avoiding duplicate work, narrowing the scope of the litigation and focusing the range of discovery are just some of the advantages that directly impact the parties regarding the effort they

2005 U.S. Dist. LEXIS 31885, *

would need to expend, and what the costs of that effort would entail.

As to the factors this Court must review when considering a motion to stay pending patent reexamination, the Court is confident that all are satisfied. The stay would not clearly disadvantage or prejudice Plaintiffs, but rather, it would assist the parties on many levels, including financial. The stay would also simplify [*11] the issues in this case, or potentially eliminate them. Finally, discovery has just recently begun and no trial date has been set. Therefore, all factors have been satisfied, and as such a stay in this litigation pending PTO reexamination is appropriate.

ACCORDINGLY, IT IS, on this 7th day of December, 2005,

ORDERED that Defendants' Motion to Stay Litigation Pending PTO Reexamination is GRANTED; and it is further

ORDERED that this litigation shall be stayed pending the PTO reexamination of the '415 patent and the '884 patent, should the PTO decide that the '884 patent is to be reexamined as well.

7 DEC 05

s/Tonianne J. Bongiovanni

**HONORABLE TONIANNE J. BONGIOVANNI**

**UNITED STATES MAGISTRATE JUDGE**

PUBLIC VERSION

# EXHIBIT M

PUBLIC VERSION

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

C
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
GIOELLO ENTERPRISES LTD., Plaintiff,
v.
MATTEL, INC., Defendant.
No. C.A. 99-375 GMS.

Jan. 29, 2001.

Philip A. Royner, Potter, Anderson & Corroon LLP, Wilmington, DE, James G. Goggin, Verrill & Dana LLP, Portland, Maine, for Plaintiff, of counsel. Robert W. Whetzel, Chad M. Shandler, Richards, Layton & Finger, Wilmington, DE, Peter E. Heuser, David A. Fanning, Charles H. DeVoe, Kolisch, Hartwell, Dickinson, McCormick, & Heuser, Portland, Oregon, for Defendants, of counsel.

*ORDER*

SLEET, J.

*1 On June 11, 1999, the plaintiff, Gioello Enterprises Ltd. ("Gioello"), filed a complaint against Mattel, Inc. ("Mattel") claiming infringement of U.S. Patent 4,546,434 (the " '434 patent"). Mattel answered and filed a counterclaim which Gioello, in turn, answered. Both parties filed motions which are currently pending. Mattel filed a request with the U.S. Patent and Trademark Office (the "PTO") on November 9, 2000 for an reexamination of claims 1-3 of the '434 patent. The PTO granted Mattel's request on December 21, 2000, and issued a schedule for statements from the parties (D.I.104). Currently before the court is Mattel's motion to stay proceedings pending reexamination (D.I.84). [FN1] Upon consideration of the parties' submissions, the court will grant Mattel's motion and stay the proceedings until further notice.

FN1. Although Mattel filed its motion before the PTO granted its request, the court will consider the PTO's actions.

In deciding whether to stay the proceedings, the court's discretion is guided by the following factors: (1) whether a stay would unduly prejudice Gioello or present a clear tactical advantage for Mattel, (2) whether a stay will simplify the issues, and (3) whether discovery is complete and whether a trial date has been set. See *Xerox Corp v. 3Comm Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citing cases); cf. *United Sweetner USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991) (stating a similar test).

The PTO's recent decision to reexamine the '434 patent will simplify the issues in this case and focus the litigation. Numerous courts have cited a number of advantages of granting a stay pending PTO reexamination: (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further involvement of the court, (5) the record of the reexamination would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court. See, e.g., *Braintree Laboratories, Inc.,* Civ. A. No. 96-2459-JWL, 1997 WL 94237, at 9 (D.Kan. Feb. 26, 1997); *Hamilton Indus. v. Midwest Folding Products Mfg.,* Civ. A. No. 89-C-8689, 1990 WL 37642, at *1- *2 (N.D.Ill. March 20, 1990) (citing cases). All of these potential advantages are present, to some degree, if the court imposes a stay of the proceedings pending the outcome of the PTO's reexamination.

Not staying the proceedings runs the risk of inconsistent adjudications or issuance of advisory opinions. Presently, this case is scheduled for trial on April 13, 2001. According to the PTO's order granting the request for reexamination, it is possible

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

PUBLIC VERSION

Page 2

that submission of statements will not be complete until April 12, 2001. [FN2] Additionally, the outstanding motions for summary judgment by Mattel claim invalidity and non-infringement-two issues the PTO's decision could render moot. Since the court must decide the summary judgment motions well in advance of trial, it would have to address the arguments raised before the PTO. Such a situation raises resource questions. As one court noted:

> FN2. The PTO's order of December 21, 2000 states that Gioello has up to two months to submit an optional response. If Gioello submits a response, Mattel has up to two months to submit a reply. Since no extensions will be granted, the court believes April 12, 2001-16 weeks from the date of the order is the maximum time allowable for written submissions to the PTO.

*2 ... if the parties continue to litigate the validity of the claims in this Court [sic] and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court [sic] will have wasted time and the parties will have spend additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court [sic] nor the parties expend their assets addressing invalid claims.

*Softview Computer Products Corp. and Ergo View Technologies Corp. v. Haworth, Inc.*, No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000). Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict. *See Hamilton,* 1990 WL 37642, at *2 (citing *Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed.Cir.1988).

The court finds the prejudice to Gioello is slight, if any. Gioello claims it is prejudiced both by Mattel's dilatory tactics in not requesting an examination earlier and by it spending money on discovery that is nearly complete. Leaving aside timing arguments,

the court finds no merit in this position. First, Gioello is not selling or actively licensing goods or services related to the '434 patent; money damages is an adequate remedy for any delay in redress. Second, both Mattel and Gioello have spent money on discovery. Third, Mattel is entitled by law to request a reexamination. *See* 35 U.S.C. §§ 302-307; 37 C.F.R. § 1.525. The fact that the request was granted means the PTO deems the '434 patent worthy of reexamination. It is not for the court to second guess the PTO's decision to reassess the prior art.

Given the possibility that the PTO's reexamination could materially affect the issues in this case, the court will deny Mattel's motions for summary judgment and Gioello's motion to strike without prejudice. [FN3] Although the could will hold a status conference in late April or early May, 2001, the parties should advise the court of any earlier developments in the PTO's reexamination.

> FN3. Upon the entry of a new scheduling order, the parties are free to re-file their motions.

Therefore, IT IS HEREBY ORDERED that:
1. Mattel's motion to stay the proceeding pending reexamination (D.I.84) is GRANTED. The proceedings are stayed from the date of this order until further notice.
2. Mattel's motion for summary judgment on invalidity (D.I.87) is DENIED without prejudice.
3. Mattel's motion for summary judgement on noninfringement (D.I.89) is DENIED without prejudice.
4. Gioello's motion to strike (D.I.91) is DENIED without prejudice.
5. The parties shall advise the court of any decision that results from the PTO's reexamination of the '434 patent.

D.Del.,2001.
Gioello Enterprises Ltd. v. Mattel, Inc.
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                        Page 3
PUBLIC VERSION
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUBLIC VERSION

# EXHIBIT N

PUBLIC VERSION

LEXSEE

HEWLETT-PACKARD COMPANY, Plaintiff, v. ACUSON CORPORATION, Defendant.

No. C-93-0808 MHP

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1993 U.S. Dist. LEXIS 6449

May 5, 1993, Decided
May 5, 1993, Filed; May 6, 1993, Entered

CASE SUMMARY:

PROCEDURAL POSTURE: Defendant filed a motion to stay plaintiff's patent infringement action pending the outcome of its petition for reexamination of the patent pursuant to 35 U.S.C.S. § § 301-07.

OVERVIEW: Plaintiff sued defendant for infringing its patent for a medical diagnostic imaging system. Prior to plaintiff's action, defendant submitted to the United States Patent and Trademark Office a petition for reexamination of the patent pursuant to 35 U.S.C.S. § 301-07. Defendant filed a motion to stay litigation pending the reexamination. The court granted defendant's motion to stay since a reexamination would likely simplify the issues, proof, and questions of law relating to the accommodation to the assignor estoppel doctrine, and expedite the infringement litigation by clarifying whether plaintiff's claim to assignor estoppel could prevail. The possible hardship to plaintiff was outweighed by the orderly cause of justice measured in terms of simplification of issues, proof, and questions of law expected to result from the stay.

OUTCOME: The court granted defendant's petition to stay plaintiff's patent infringement action pending the outcome of its petition for reexamination, since the possible hardship to plaintiff was outweighed by the simplification of issues, proof, and answers to questions of law expected to result from the stay.

CORE TERMS: patent, assignor, estoppel, reexamination, infringement, invalidity, accommodation, narrowed, invention, injunctive relief, questions of law, original patent, equitable, hardship, assigned, patent infringement, motion to stay, patent issued, unenforceability,

contesting, infringing, eliminated, expertise, estopped, licensee, assignee, measured, orderly, dictate, staying

LexisNexis(R) Headnotes

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN1] The district court has the authority to stay actions in order to control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Patent Law > Remedies > Collateral Assessments > Costs*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN2] Ordinarily, courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers. The purpose of the reexamination procedure is to eliminate the need for a trial if the claim is canceled or to

1993 U.S. Dist. LEXIS 6449, *

provide the district court with the expert view of the Patent Office if the claim survives the reexamination. Additionally, there is clear congressional intent to maximize efficiency and reduce cost in this regard; thus, district courts often stay patent proceedings pending reexamination.

*Patent Law > Ownership > Conveyances > Assignor & Licensee Estoppel*
*Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview*
[HN3] The doctrine of assignor estoppel is not an all or nothing bar to an assignor's invalidity defense in an infringement proceeding. There is an "accommodation" to the assignor estoppel doctrine which may frustrate the use of estoppel to bar a defense of invalidity in a patent infringement case.

*Patent Law > Ownership > Conveyances > Assignments*
*Patent Law > Ownership > Conveyances > Assignor & Licensee Estoppel*
*Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview*
[HN4] Assignor estoppel is an equitable doctrine. The primary consideration in applying the doctrine is the measure of unfairness and injustice that would be suffered by the assignee if the assignor were allowed to raise defenses of patent invalidity. The court's analysis must be concerned mainly with the balance of equities between the parties.

JUDGES: [*1] PATEL

OPINIONBY: MARILYN HALL PATEL

OPINION:

### MEMORANDUM AND ORDER

Plaintiff Hewlett-Packard Company ("HP") brought this action on March 8, 1993 against defendant Acuson Corporation ("Acuson") for allegedly infringing upon United States patent No. 4,140,022 (" '022"). Prior to this action, Acuson submitted to the United States Patent and Trademark Office ("PTO") a petition for reexamination of the '022 patent pursuant to 35 U.S.C. § § 301-07. The matter is presently before the court on Acuson's motion to stay litigation pending the reexamination.

Having considered the submissions and arguments of the parties, and for the following reasons, the court GRANTS Acuson's motion to stay litigation pending reexamination.

BACKGROUND

While working for HP, Samuel H. Maslak ("Maslak") discovered an ultrasonic imaging invention. Pursuant to an employment agreement, Maslak (1) assigned to HP all of his right, title and interest in and to his invention, (2) expressly authorized HP to apply for and obtain a patent for the invention and (3) agreed to assist in obtaining such patent. Opp. to Mot. for Stay, Ex. 3.

On December 20, 1977 HP filed a United States patent application [*2] covering Maslak's invention, identifying Maslak as the inventor and HP as the assignee. McElhinny Dec., Ex. B at 1. A formal Notice of Allowance for the '022 patent issued on August 31, 1978, Opp. to Mot. for Stay, Ex. 7, and the patent issued on February 20, 1979. McElhinny Dec., Ex. B at 1. Maslak gave notice of his resignation from HP on November 20, 1978. Opp. to Mot. for Stay, Ex. 8.

In September 1981, Maslak co-founded and has been President, Chief Executive Officer and a director since that date. Oakley Dec., Ex. 2 at 30. Acuson introduced its first medical diagnostic imaging system in 1983. Id. P 3.

By letter dated June 1, 1990, HP contacted Acuson regarding possible infringement of its '022 patent. Id. P 2. Acuson filed a Request for Reexamination of the '022 patent with the PTO on March 3, 1993. McElhinny Dec., Ex. D. Grounds for reexamination raised by Acuson include anticipation, double patenting and obviousness. Id., Ex. D at 2-3. Acuson claims that the references cited to in its Request for Reexamination were not cited to or considered by the PTO during the original '022 patent proceedings. Id., Ex. D at 4. On March 8, 1993 HP filed this [*3] action alleging that Acuson's medical diagnostic systems infringe upon the '022 patent. Acuson now moves for a motion staying the litigation pending reexamination by the PTO.

LEGAL STANDARD

This circuit has held that [HN1] the district court has the authority to stay actions in order to:

> control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage

which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

Filtrol Corp. v. Kelleher, 467 F.2d 242, 244 (9th Cir. 1972), cert. denied, 409 U.S. 1110, 34 L. Ed. 2d 691, 93 S. Ct. 914 (1973) [*4] (citations omitted). [HN2] Ordinarily, courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers. See Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir.), cert. denied, 464 U.S. 935, 78 L. Ed. 2d 310, 104 S. Ct. 343 (1983). n1 The purpose of the reexamination procedure is to eliminate the need for a trial if the claim is canceled or to provide the district court with the expert view of the Patent Office if the claim survives the reexamination. Id. Additionally, there is clear congressional intent to maximize efficiency and reduce cost in this regard; thus, district courts often stay patent proceedings pending reexamination. See, e.g., Ingro v. Tyco Industries, Inc., 227 U.S.P.Q. (BNA) 69, 71 (N.D. Ill. 1985) ("legislative history indicates Congress . . . approved of courts liberally granting stays within their discretion."); Digital Magnetic Systems, Inc., v. Ansley, 213 U.S.P.Q. (BNA) 290 (W.D. Okla. 1982) ("Congress enacted the reexamination [*5] procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."). n2

n1 See also, Grayling Industries v. GPAC, Inc., 1991 U.S. Dist. LEXIS 16750, 19 U.S.P.Q.2D (BNA) 1872, 1873 (N.D. Ga. 1991); Brown v. Shimano American Corp., 18 U.S.P.Q.2D (BNA) 1496 (C.D. Cal. 1991).

n2 For more detailed information in support of a stay of patent proceedings pending reexamination, see Teradyne, Inc. v. Hewlett-Packard Company, Civil Action No. C-91-0344 MHP (Memorandum and Order, Jan. 7, 1993), at 16-20.

DISCUSSION

During oral argument, HP admitted that it was on notice that Acuson might be infringing its '022 patent as early as 1983. While the court applauds HP's efforts to settle its dispute with Acuson through means other than litigation, HP's ten year delay in seeking to protect its patented interests weighs heavily against denying Acuson's motion for stay. n3 Indeed, the first record [*6] of correspondence with Acuson concerning patent infringement is dated June 1, 1990. Oakley Dec. P 2. The record also shows that HP did not seek to enforce its patent until after Acuson had filed its Request for Reexamination of the '022 patent. The court finds that these combined factors compel a grant of Acuson's request for a stay pending the PTO proceedings.

n3 The present action is brought with only three years remaining in the life of the patent.

Moreover, the court is not persuaded by HP's assignor estoppel argument opposing Acuson's motion for stay. Acuson alleges that reexamination of patent '022 will result in an amendment or cancellation of the patent, thus streamlining the current litigation. Specifically, Acuson argues that HP failed to disclose to the PTO, during the original '022 patent proceedings, evidence of a patent previously issued to HP, n4 which would bear upon the patentability of the '022 patent. n5 Acuson urges that the technical nature of both the prior art and the '022 patent dictate [*7] that this court issue a stay so that the PTO's expertise can be brought to bear in assessing this question and in determining whether or not the '022 may be narrowed, amended or invalidated.

n4 Acuson alleges that the '229 is also owned by HP and was prosecuted by the same attorney as the '022.

n5 Acuson bolsters this claim by arguing that during the prosecution of the German equivalent of '022, Siemans Corporation cited the '229 against the '022. Acuson states that HP amended and narrowed claim 1 of the '022 patent as a result.

HP, on the other hand, opposes a stay of the present litigation. HP argues that Acuson is barred under the doctrine of assignor estoppel, as a matter of law, from alleging patent invalidity or unenforceability as a defense to the underlying infringement action. In support of this proposition, HP cites Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1224 (Fed. Cir.), cert. dismissed, 487 U.S. 1265 (1988):

1993 U.S. Dist. LEXIS 6449, *

[*8]  Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity.  The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor. n6

Diamond, 848 F.2d at 1224. Therefore, HP urges, Acuson's motion for stay pending reexamination for invalidity or unenforceability is without merit.

    n6 In Lear, Inc. v. Adkins, 395 U.S. 653, 668-71, 23 L. Ed. 2d 610, 89 S. Ct. 1902 (1969), the Supreme Court abolished as inconsistent with federal patent and antitrust policy the doctrine that a licensee was estopped from contesting the validity of a patent. However, the doctrine that an assignor was estopped from contesting the validity of a patent was not addressed by the Court. As a result, it remained unclear whether the rule of Lear should also be applied to assignor estoppel. As late as 1972, the rule of this circuit was that the Lear rule should be applied. See Coastal Dynamics Corp. v. Symbolic Displays, Inc., 469 F.2d 79 (9th Cir. 1972) (Lear dictates abolition of assignor estoppel).  However, the passage of 29 U.S.C. § 1295 gave exclusive jurisdiction to the Federal Circuit on appeals from district court decisions involving patent law under 28 U.S.C. § 1338. And, in 1988, the Federal Circuit found that the rule of Lear did not apply to assignor estoppel, distinguishing assignor estoppel from licensee estoppel. See Diamond, 848 F.2d at 1224 (assignor estoppel available to bar invalidity defense in infringement proceedings).

[*9]

    Although HP's argument may apply as a litigation strategy in the underlying infringement action, is not entirely persuasive on the motion for stay. n7 In fact, for the following reasons, this court finds that a stay in this action will "promote economy of time and effort for itself, for counsel, and for [the] litigants." Filtrol, 467 F.2d at 244.

    n7 Whether HP has met all of the equitable requirements to use assignor estoppel to bar a defense of invalidity by Acuson in the infringement

action is not before the court. Rather, the court, at this juncture, is concerned only with Acuson's motion for stay.  While HP's intended use of assignor estoppel may bear upon the court's determination of stay, it is not dispositive.

    First, Diamond indicates that [HN3] the doctrine of assignor estoppel is not an all or nothing bar to an assignor's invalidity defense in an infringement proceeding. 848 F.2d at 1226. Diamond recognizes an "accommodation" to the assignor estoppel [*10]  doctrine which may frustrate the use of estoppel to bar a defense of invalidity in a patent infringement case.  The "accommodation" was carved out by Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 350-53, 69 L. Ed. 316, 45 S. Ct. 117 (1924).

    "To the extent that [the party claiming infringement] may have broadened the claims in the patent applications (after the assignments) beyond what could be validly claimed in light of the prior art, Westinghouse may allow appellants to introduce evidence of prior art to narrow the scope of the claims of the patents, which may bring their accused devices outside the scope of the claims of the patents in suit."

Diamond, 848 F.2d at 1226 (citing Westinghouse, 266 U.S. at 350). Thus, the reexamination of '022 will, more likely than not, simplify the issues, proof, and questions of law relating to this "accommodation," see Filtrol, 467 F.2d at 244, and expedite the infringement litigation by clarifying whether HP's claim to assignor estoppel may prevail in the infringement litigation, or will be frustrated by the "accommodation". [*11]

    Second, as Acuson correctly points out, [HN4] assignor estoppel is an equitable doctrine. "The primary consideration in [] applying the doctrine is the measure of unfairness and injustice that would be suffered by the assignee if the assignor were allowed to raise defenses of patent invalidity. Our analysis must be concerned mainly with the balance of equities between the parties." Diamond, 848 F.2d at 1225; accord, Carroll Touch v. Electro Mechanical Systems, Inc., 779 F. Supp. 101, 103 (C.D. Ill. 1991) (Diamond did not create a mechanical checklist for application of assignor estoppel, the court must still consider the equities involved in applying the doctrine).  Therefore, Acuson's claim that HP's conduct before the PTO was inequitable and fraudulent in reference to the original '022 patent proceeding may very will

bar HP from relying on the doctrine of assignor estoppel during the infringement litigation. See Shamrock Technologies v. Medical Sterilization, Inc., 903 F.2d 789, 795 (Fed. Cir. 1990) ("in a proper case general principles of equity may preclude use of assignor estoppel to bar [*12] a viable equitable defense arising from post-assignment events"); accord, Buckingham Prods. Co. v. McAleer Mfg. Co., 108 F.2d 192, 195 (6th Cir. 1939); see also, Medical Designs, Inc. v. Medical Technology, Inc., 786 F. Supp. 614, 618 (N.D. Tex. 1992) (application of assignor estoppel barred when party seeking patent proceeded without calling to the attention of the PTO material prior art).

This second factor weighs heavily in favor of staying the litigation pending the PTO's reexamination of the '022 patent. In the event that a trial court should bar HP from using assignor estoppel after weighing the equities, the reexamination process, having possibly narrowed or eliminated some of the infringement claims, could greatly increase the efficiency of the litigation process. See Gould, 705 F.2d at 1342.

Therefore, this court finds that the possible hardship to HP, including delay of injunctive relief, is outweighed by the orderly cause of justice measured in terms of the simplification of issues, proof, and questions of law which are expected to result from the stay. n8 Filtrol, 467 F.2d at 244; [*13] see also Gould, 705 F.2d at 1342.

.

n8 HP claims no other substantial hardship other than the delay in obtaining injunctive relief based on a finding that Acuson has infringed the '022 patent. The court finds that the stay involved is not of such a protracted or indefinite period as to render its issuance an undue hardship. The fact that the life of the patent may expire before the stay is up is of no moment; other remedies besides injunctive relief still remain available to HP.

CONCLUSION

For all the foregoing reasons, Defendant's motion for a stay of litigation pending the later of (1) the decision by the United States Patent and Trademark Office on Defendant's request for reexamination of U.S. Letter Patent N. 4,140,022 ( '022), or (2) the conclusion of the reexamination proceedings is GRANTED.

IT IS SO ORDERED.

Dated: MAY 5 - 1993

MARILYN HALL PATEL

United States District Judge

PUBLIC VERSION

# EXHIBIT O

PUBLIC VERSION

LEXSEE

**METHODE ELECTRONICS, INC., Plaintiff, v. INFINEON TECHNOLOGIES CORP. and OPTICAL COMMUNICATION PRODUCTS, INC., Defendants.**

**NO. C 99-21142 JW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

**2000 U.S. Dist. LEXIS 20689**

**August 7, 2000, Decided
August 7, 2000, Filed**

**DISPOSITION:** [*1] Defendants' joint motion to stay proceedings as to both the '408 and '468 patents pending reexamination of the '408 patent granted. OCP's request denied without prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendants for patent infringement. Defendants moved to stay all proceedings with respect to two of the patents at issue, pending reexamination of one of those patents.

**OVERVIEW:** Plaintiff alleged infringement of five patents pertaining to optoelectronic transceiver devices used in computer networks for the conversion of light pulses to electrical pulses and back to light pulses. Defendants denied infringement and alleged that the patents were invalid. In 1998, plaintiff had requested reexamination of one of the patents at issue. At the time of the present motion to stay proceedings, that patent was pending a third reexamination by the United States Patent and Trademark Office (PTO). The court found that it was appropriate to stay the proceedings with respect to two of the patents at issue. The present case was in its incipient stages; no depositions had been taken and no trial date had been set. A stay would allow the parties and the court to take advantage of the PTO's conclusions regarding prior art. The stay would not cause undue prejudice. Granting a stay with respect to only the patent being reexamined would be problematic since another patent at issue involved the same accused device. The issues regarding the second patent might be narrowed or amended as a result of the PTO's decision.

**OUTCOME:** Defendants' motion to stay proceedings was granted.

**CORE TERMS:** patent, reexamination, staying, discovery, motion to stay, infringement, transceiver, optoelectronic, pulses, joinder, undue prejudice, patentability, unpatentable, requesting, infringed, infringe, unduly, weigh, joined

LexisNexis(R) Headnotes

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN1] After a patent issues, 35 U.S.C.S. § 302 authorizes any person at any time to file a request with the United States Patent and Trademark Office (PTO) for reexamination of any claim of the patent on the basis of prior art patents and publications. Upon receipt of a request for reexamination, the PTO determines whether the cited prior art raises a substantial new question of patentability. 35 U.S.C.S. § 303. If it is determined that a substantial new question of patentability is raised, then a reexamination is granted and the claim or claims in question are examined in the same manner as the claims of a patent application.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN2] The district court has the inherent authority to order a stay pending the outcome of reexamination by the United States Patent and Trademark Office. The court, however, must weigh the competing interests presented by a specific set of facts. The court has the inherent ability to grant a stay of proceedings provided that it does not cause undue prejudice or present a clear tactical disadvantage to the non-moving parties. Other factors considered include the stage of the litigation, whether discovery is or will be almost completed, and whether

the matter has been marked for trial. In determining whether to grant a motion to stay, the district court has considerable latitude. There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN3] On a motion to stay the proceedings in a patent infringement case pending the outcome of reexamination by the United States Patent and Trademark Office, substantial expense and time invested in the litigation would militate against a further delay of disposition.

COUNSEL: For METHODE ELECTRONICS, INC., Plaintiff: Joseph N. Hosteny, Arthur Anthony Gasey, Paul C. Gibbons, Niro Scavone Haller & Niro, Chicago, IL.

For METHODE ELECTRONICS, INC., Plaintiff: Thomas F. Smegal, Jr., Knobbe Martens Olson & Bear LLP, San Francisco, CA.

For INFINEON TECHNOLOGIES CORPORATION, defendant: Scott D. Baker, Crosby Heafey Roach & May, Los Angeles, CA.

For OPTICAL COMMUNICATION PRODUCTS, INC., defendant: David S. Elkins, Graham & James LLP, David S. Elkins, Squire Sanders & Dempsey L.L.P., Palo Alto, CA.

For OPTICAL COMMUNICATION PRODUCTS, INC., defendant: Nathan Lane, III, Graham & James LLP, Nathan Lane, III, Squire Sanders & Dempsey LLP, San Francisco, CA.

JUDGES: JAMES WARE, United States District Judge.

OPINIONBY: JAMES WARE

OPINION:

ORDER GRANTING DEFENDANT INFINEON TECHNOLOGIES CORP. AND DEFENDANT OPTICAL COMMUNICATION PRODUCTS, INC.'S JOINT MOTION TO STAY PROCEEDINGS PENDING REEXAMINATION OF THE '408 PATENT

[Docket No. 50]

I. INTRODUCTION

Defendant Infineon Technologies [*2] Corporation now brings a motion to stay all proceedings as to the '408

and '468 patents pending reexamination of the '408 patent. A hearing was held on July 10, 2000. Defendant Optical Communication Products, Inc. joined in and incorporated by reference Infineon's motion. Based on all papers filed to date and the oral argument of counsel, and for the reasons set forth below, the Court grants the Defendants' motion to stay the action as to the '408 and '468 patents pending reexamination of the '408 patent.

II. BACKGROUND

This case involves an action for patent infringement by Plaintiff Methode Electronics, Inc. ("Methode") against Defendants Infineon Technologies Corporation ("Infineon") and Optical Communication Products, Inc. ("OCP"). Methode alleges infringement of five patents pertaining to optoelectronic transceiver devices used in computer networks for the conversion of light pulses to electrical pulses and back to light pulses. Methode alleges that Infineon has infringed U.S. Patent 5,528,408 (" '408 patent") and U.S. Patent 5,864,468 (" '468 patent"). Methode alleges that OCP has infringed the '408 and '468 patents, as well as three additional patents: U.S. Patent 5,717,533 [*3] (" '533 patent"); U.S. Patent 5,734,558 (" '558 patent"); and U.S. Patent 5,879,173 (" '173 patent").

The accused devices at issue in this infringement action are "1x9" optoelectronic transceivers, produced by both Infineon and OCP. The "1x9" optoelectronic transceivers are alleged to infringe both the '408 and '468 patents. Infineon also produces a Small Form Factor ("SFF") transceiver which is alleged to infringe only the '468 patent. Both Defendants deny infringement and allege that the patents are invalid.

The '408 patent issued on June 18, 1996. On June 16, 1998, Methode filed a Request For Reexamination of the '408 patent on the ground that the Examiner failed to consider nine prior art references during the original prosecution. Methode's request for reexamination was granted and assigned to the original '408 Examiner.

On February 5, 1999, the Patent and Trademark Office issued a First Office Action, rejecting all claims (1-16) as obvious under 35 U.S.C. § 103(a). Methode added additional claims 17-25. In a Second Office Action, issued on September 2, 1999, the PTO rejected claims 1-25. Methode then initiated this action against Infineon and OCP on October 15, 1999. Subsequently, [*4] Methode filed another amendment to its request for reexamination. On March 2, 2000, in a Third Office Action, the PTO rejected claims 1-16 for the third time and claims 17-25 for the second time on the ground that the claims are obvious in view of the previously undisclosed prior art references. Methode's response to the Third Office Action was due on June 2, 2000.

Defendants now move for a stay of litigation and all discovery as to the '408 and '468 patents pending the PTO's reexamination of the '408 patent. n1

n1 OCP's joinder covers the same issues stated in Infineon's motion to stay. The Court finds that OCP's joinder is neither untimely nor unfair. Methode's ex parte motion to strike OCP's joinder is hereby denied.

III. STANDARDS

[HN1] After a patent issues, 35 U.S.C. § 302 authorizes any person at any time to file a request with the PTO for reexamination of any claim of the patent on the basis of prior art patents and publications. Upon receipt of a request for reexamination, [*5] the PTO determines whether the cited prior art raises "a substantial new question of patentability." 35 U.S.C. § 303. If it is determined that a substantial new question of patentability is raised, then a reexamination is granted and the claim or claims in question are examined in the same manner as the claims of a patent application.

[HN2] The district court has the inherent authority to order a stay pending the outcome of rexamination by the PTO. See Ethicon v. Quigg, 849 F.2d 1422, 1426 (Fed. Cir. 1988). The Court, however, must weigh the competing interests provided a specific set of facts. See Gladish v. Tyco Toys, 1993 U.S. Dist. LEXIS 20211, 29 U.S.P.Q.2D (BNA) 1718, 1719 (E.D. Cal. 1993). "The court has the inherent ability to grant a stay of proceedings provided that it does not cause undue prejudice or present a clear tactical disadvantage to the non-moving parties." ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1380 (N.D. Cal. 1994) (internal quotations and citations omitted). Other factors considered include the stage of the litigation, whether discovery is or will be almost completed, and [*6] whether the matter has been marked for trial. See id. In determining whether to grant a motion to stay, the district court has considerable latitude. See Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983). "There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." See ASCII Corp., 844 F. Supp. at 1381.

IV. DISCUSSION

A. Staying litigation of the '408 patent

In this case, the relevant factors weigh heavily in favor of staying the proceedings as to the '408 patent pending the PTO's reexamination of the '408 patent. First, this case is in its incipient stages. Methode's complaint was filed less than eight months ago, no depositions have been taken, and no trial date has been set. Second, a stay will allow the parties and the Court to take advantage of the PTO's conclusions regarding prior art. A stay will also further the goal of judicial economy: a PTO determination that some of the claims of the '408 patent are unpatentable may narrow the scope of this litigation. Third, if the PTO ultimately makes a determination that Methode's claims are unpatentable with [*7] respect to the '408 patent, a stay will have eliminated the need for discovery and trial of those issues that pertain solely to the '408 patent. Finally, regardless of the outcome of the reexamination, the PTO's expert opinion will help the Court focus on the pertinent issues.

Granting a stay would not cause undue prejudice. Although [HN3] "substantial expense and time . . . invested in the litigation . . . would militate against a further delay of disposition," GPAC Inc. v. D.W.W. Enterprises, 144 F.R.D. 60, 23 U.S.P.Q.2D (BNA) 1129, 1133, Methode concedes that its "expenditure of fees to this point has been minimal." Plaintiff's Opposition, p. 5. Methode's argument that a stay of the '408 patent solely with respect to Infineon would be prejudicial is rendered moot since OCP has joined in and incorporated by reference Infineon's motion. A stay of the proceedings with respect to the '408 patent would apply to both Defendants Infineon and OCP.

Furthermore, the Court finds that Defendants did not unduly delay in bringing the present motion, and that there is no reason to believe that Defendants are utilizing any dilatory tactics by requesting the stay. See Guthy-Renker L.L.C. v. Icon Health & Fitness Inc., 1998 U.S. Dist. LEXIS 16553, 48 U.S.P.Q.2D (BNA) 1058, 1061 (C.D.Cal. 1998). [*8]

Therefore, the Court hereby stays all proceedings as to the '408 patent pending the PTO reexamination.

B. Staying litigation of the '468 patent

The Court agrees with both parties that granting a stay with respect to only the '408 patent would be problematic since the '468 patent involves the same accused device. Duplicative discovery may result if only the '408 patent is stayed since there are likely to be common documents and witnesses regarding the infringement litigation of the '408 and '468 patents. For example, staying the '408 patent but not the '468 patent may result in two separate tutorials and two claim construction hearings after the reexamination proceedings.

Finally, although discovery will still take place regarding the same accused product regardless of the reexamination results, the Court finds that the issues regarding the '468 patent may be narrowed or amended as a result of the PTO's decision. Furthermore, it appears that there are overlapping issues in the '408 and '468 in-

PUBLIC VERSION            2000 U.S. Dist. LEXIS 20689, *

fringement actions. Methode noted at the July 10 hearing that all elements in the '408 patent claims are contained in the '468 patent. The Court also finds that Methode will not be unduly [*9] prejudiced by staying the '468 litigation proceedings.

Methode's argument that staying proceedings as to the '468 patent would waste the patent's limited lifetime has no merit. Methode has failed to explain why money damages would not be adequate if it prevails at trial. See Guthy-Renker. 48 U.S.P.Q.2D (BNA) at 1061.

Therefore, the Court hereby grants Defendants' motion to stay proceedings regarding the '468 patent pending the PTO's reexamination of the '408 patent as well.

V. CONCLUSION

Based on the reasons set forth above, the Court grants Defendants' joint motion to stay proceedings as to both the '408 and '468 patents pending reexamination of the '408 patent by the PTO. The Court orders the parties to submit a joint statement by September 11, 2000 informing the Court of the status of the case.

At the July 10 hearing, counsel for OCP requested a stay of proceedings as to the '533, '558, and '173 patents as well. OCP has not submitted papers requesting a stay as to those patents. Therefore, OCP's request is denied without prejudice.

Dated: August 7, 2000

JAMES WARE

United States District Judge

PUBLIC VERSION

# EXHIBIT P

PUBLIC VERSION

LEXSEE

NICHOLAS V. PERRICONE, Plaintiff, v. UNIMED NUTRITIONAL SERVICES, INC., Defendant.

Civil Action No. 3:01CV512(CFD)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2002 U.S. Dist. LEXIS 17613

July 18, 2002, Decided

**DISPOSITION:** [*1] Defendant's motion for a stay [Doc. # 6] GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent owner filed an action against defendant corporation alleging infringement of its patent and seeking a preliminary and permanent injunction, damages, attorney's fees and costs. Defendant filed a motion to stay the action pending the outcome of its request for reexamination of plaintiff's patent with the U.S. Patent and Trademark Office (PTO).

**OVERVIEW:** Defendant requested a reexamination of plaintiff's patent with the PTO, and the PTO agreed to proceed with reexamination based upon three of the arguments raised by defendant. The court granted defendant's motion to stay the proceedings. The court noted that imposition of a stay would be advantageous because it would conserve time and resources. The litigation was not in a late stage, and imposition of the stay would not unduly prejudice plaintiff. Although the imposition of the stay might preclude plaintiff's request for injunctive relief and might erode plaintiff's position in the market, there was no showing of undue prejudice. Plaintiff would be able to recover its losses in a damage award, if appropriate.

**OUTCOME:** Defendant's motion to stay litigation against defendant for patent infringement pending resolution of the reexamination proceeding initiated by the PTO was granted.

**CORE TERMS:** patent, reexamination, discovery, skin, re-examination, motion to stay, trial date, infringement, patented invention, protracted, expertise, undue prejudice, patentability, suit filed, disadvantage, inflammation, duplicative, non-moving, scheduled, pre-trial, sim-

plify, tactical, infringe, treating, posture, survives, lipoic, alpha, aging, acid

LexisNexis(R) Headnotes

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN1] In determining whether to grant a stay of an infringement action pending the outcome of a reexamination of a patent, a court should consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN2] When patent validity has been raised as an issue by the defendant, there are numerous advantages to the court and parties in issuing a stay pending the outcome of the U.S. Patent and Trademark Office (PTO) reexamination, including (1) all prior art presented to the court will have been first considered by the PTO, with its particular expertise; (2) many discovery problems relating to the prior art can be alleviated by the PTO examination; (3) in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed; (4) the outcome of the re-examination may encourage a settlement without the further use of the court; (5) the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation; (6) issues, defenses and evidence will be more easily limited in pre-trial conferences after a reexamination; and (7) the cost will likely be reduced both for the parties and the court.

2002 U.S. Dist. LEXIS 17613, *

*Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction > Appeals*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN3] The patent reexamination procedure is intended to provide the federal courts with the additional expertise of the U.S. Patent and Trademark Office (PTO). As the United States Court of Appeals for the Federal Circuit has noted, the bill's proponents foresaw three principal benefits. First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases. Second, the procedure will allow courts to refer patent validity questions to the expertise of the PTO. Third, reexamination would reinforce investor confidence in the certainty of patent rights by affording the PTO a broader opportunity to review "doubtful patents."

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN4] Despite the numerous advantages of a stay pending a determination by the U.S. Patent and Trademark Office, several courts have denied a stay where it would cause undue prejudice or present a clear tactical disadvantage to the non-moving party. Where such a stay would result in a tactical advantage to one party or the other, the court will not employ its discretion to stay the ordinary course of its proceedings simply because the outcome of the patent proceedings may moot the issues remanded.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN5] Some courts have granted stays pending reexamination proceedings notwithstanding the well-developed posture of the litigation.

*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN6] Where a case is in the early stages of litigation a court may avoid duplicative efforts by granting a motion to stay pending reexamination of the patent by the U.S. Patent and Trademark Office.

COUNSEL: For Nicholas V Perricone, PLAINTIFF: Stephen P McNamara, St Onge, Steward, Johnston & Reens, Stamford, CT USA.

For Unimed Nutritional Svc, Inc, DEFENDANT: James W Jakobsen, Pillsbury, Winthrop, Stamford, CT USA.

JUDGES: CHRISTOPHER F. DRONEY, UNITED STATES DISTRICT JUDGE.

OPINIONBY: CHRISTOPHER F. DRONEY

OPINION:

### RULING ON MOTION FOR STAY

The plaintiff, Nicholas V. Perricone, brings this action pursuant to 35 U.S.C. § § 271, 281 alleging infringement of U.S. Patent No. 5,709, 868 (the "'868 patent"), issued to the plaintiff on January 20, 1998, which discloses methods of treating skin by topical application of alpha lipoic acid and its derivatives to alleviate skin inflammation or the conditions of aging arising from free radical effects in the skin. The plaintiff alleges that the defendant's skin care products, which incorporate alpha lipoic acid and are marketed for application to the skin, infringe, contribute to the infringement of, and/or induce infringement of the '868 patent. The plaintiff seeks a preliminary and permanent injunction, damages, and attorney's fees and costs.

The defendant has filed [*2] a motion for a stay of this action [Doc. # 6] pending the outcome of its request for reexamination of the plaintiff's patent by the U.S. Patent and Trademark Office ("PTO"). The defendant's request presented fourteen separate arguments that question the patentability of the subject matter contained in the '868 patent. On October 25, 2001, the PTO concluded that three of the arguments raised by the defendant raise new questions of patentability with regard to the '868 patent and has proceeded with the reexamination.

I. Discussion

[HN1] In determining whether to grant a stay of an infringement action pending the outcome of a reexamination of a patent, a court should consider the following factors:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party;
> (2) whether a stay will simplify the issues in question and trial of the case; and
> (3) whether discovery is complete and whether a trial date has been set.

Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y.1999) (citations omitted). Each of those factors will be discussed below.

A. Stay Will Simplify the Issues in Question

[HN2] When [*3] patent validity has been raised as an issue by the defendant, as it has been here, there are numerous advantages to the Court and parties in issuing a stay pending the outcome of the PTO reexamination. The court in Emhart Industries v. Sankyo Seiki Mfg., 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2D (BNA) 1889, 1890 (N.D. Ill. 1987), enumerated such advantages:

> (1) All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
> (2) Many discovery problems relating to the prior art can be alleviated by the PTO examination.
> (3) In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
> (4) The outcome of the re-examination may encourage a settlement without the further use of the Court.
> (5) The record of re-examination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
> (6) Issues, defenses and evidence will be more easily limited in pre-trial conferences after a re-examination.
> (7) The cost will likely be reduced both for the parties and the Court.

3 U.S.P.Q.2D (BNA) at 1890 (citing Fisher Controls Co., Inc. v. Control Components, Inc., 443 F. Supp. 581, 582 (S.D. Iowa 1977)). [*4]  [HN3] The patent reexamination procedure was intended to provide the federal courts with the additional expertise of the PTO. As the Federal Circuit noted:

> The bill's proponents foresaw three principal benefits. First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases. Second, the procedure will allow courts to refer patent validity questions to the expertise of the Patent Office. See Senate Hearings at 1, wherein Senator Bayh said that re-examination would be "an aid" to the trial court "in making an informed decision on the patent's validity. Third, re-

examination would reinforce "investor confidence in the certainty of patent rights" by affording the PTO a broader opportunity to review "doubtful patents". 126 Cong. Rec. 29,895 (1980) (statement of Rep. Kastenmeier).

Patlex Corp. v. Mossinghoff, 758 F.2d 594, 602 (Fed. Cir. 1985), modified on other grounds 771 F.2d 480 (Fed. Cir. 1985).

A stay here would conserve the time and resources of the Court and the parties. A record of the reexamination could reduce the complexity and length of the [*5] litigation, more easily define issues, defenses, and evidence before trial, and reduce litigation costs and discovery problems. As noted above, the PTO, in granting the request for reexamination, found that "[a] substantial new question of patentability affecting Claims 1-15 of US Patent No. 5,709,868 to Perricone is raised by the request for reexamination." Order Re: Request for Ex Parte Reexamination at 2. The PTO found "a substantial likelihood that a reasonable examiner would consider the limitation of a 'method of treating skin inflammation or aging mediated by free radicals' to be inherently met by methods and compositions [of U.S. Pat. 5,084,481 to Ulrich et al. or by U.S. Pat. 5,569,670 to Weischer et al.] that are directed to inflammatory diseases of the skin." Id. at 3. Additionally, the PTO found "a substantial likelihood that a reasonable examiner would consider "the teachings of [an article by Fuchs et al. and U.S. Pat. 5,114, 716 to N'Guyen] important in deciding whether or not the claims are patentable over Weischer in view of Perricone." Id. at 3-4.

The reexamination procedure will likely inform the Court's determination of the validity of the '868 patent. [*6] The reexamination could invalidate the '868 patent or require the patent to be amended, in light of the questions noted above. Similarly, if the '868 patent survives reexamination, such a determination will be of some assistance to this Court. See Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination).").

B. Undue Prejudice and Stage of Litigation

[HN4] Despite the numerous advantages of a stay pending a PTO determination, several courts have denied a stay where it would cause undue prejudice or present a clear tactical disadvantage to the non-moving party. In E.I. DuPont de Nemours and Co v. Phillips Petroleum

Co., 711 F. Supp. 1205 (D. Del.1989), the court held that "where such a stay would result in a tactical advantage to one party or the other, this Court will not employ its discretion to stay the ordinary course of its proceedings [*7] may moot the issues remanded." 711 F. Supp. at 1208 n.9.

Most often, a request for a stay has been denied due to the late stage of litigation, the fact that discovery was or would be almost completed, or trial had been set. By denying a motion to stay that was filed late in the litigation, the court avoids duplicative efforts because the parties and the court have already competed the work necessary to determine the patent's validity. See E.I. DuPont, the court rejected a stay in part because the litigation had advanced through trial, appeal and remand before one of the parties requested the stay. See E.I. DuPont. 711 F. Supp. at 1208; see also Enprotech Corp. v. Auto Tech Corp., 1990 U.S. Dist. LEXIS 2926, 15 U.S.P.Q.2D (BNA) 1319, 1320 (N.D. Ill.1990) (discovery completed and case set for trial); Freeman v. Minnesota Mining. 661 F. Supp. 886, 888 (D. Del.1987) (discovery completed and suit filed two and a half years prior to stay request); The Toro Company v. L.R. Nelson Corporation, 1984 U.S. Dist. LEXIS 24816, 223 U.S.P.Q. 636. 638 (N.D. Ill.1984) (denying stay in a three and a half year old case where [*8] summary judgment motion was pending because the "stay would accomplish little other than the delay of disposition of the suit which has until now run an overly protracted course")..n1

n1 [HN5] Some courts have granted stays pending re-examination proceedings notwithstanding the well-developed posture of the litigation. See, e.g., Gould. 705 F.2d 1340 (stay granted five years after commencement of litigation and 20 days before scheduled trial date); Loffland Brothers Co v. Mid-western Energy Corp., 225 U.S.P.Q. 886 (W.D.Okla.1985) (stay granted after substantial discovery, pre-trial conference, and scheduled trial date); Emhart. 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2D (BNA) 1889 (stay granted 18 months after significant discovery, but no trial preparation); Grayling Industries. Inc. v. GPAC. Inc., 1991 U.S. Dist. LEXIS 16750, 19 U.S.P.Q.2D (BNA) 1872, 1873 (N.D. Ga. 1991) (stay granted with discovery completed and only trial remaining in case).

[HN6] Where a case [*9] is in the early stages of litigation, however, a court may avoid duplicative efforts by granting a motion to stay. Here, the suit was filed less than six months prior to the filing of the motion to stay and substantial discovery has yet to occur. See GPAC. Inc., v. D.W.W. Enterprises. Inc., 144 F.R.D. 60, 23 U.S.P.Q.2D (BNA) 1129 (D.N.J. 1992) (granting stay when suit filed 16 months prior to request and after some discovery had taken place); Target Therapeutics. Inc. v. Scimed Life Systems. Inc., 33 U.S.P.Q.2D (BNA) 2022 (N.D. Cal. 1995) (granting stay because case was in "incipient stages"). A trial date has not, and will not soon, be assigned. This case does not rest in the same posture as those cases where protracted and expansive discovery had been expended and trial was imminent.

However, in light of the plaintiff's motion for preliminary injunction, a stay may continue to deprive the plaintiff, during the pendency of the reexamination, of the right to exclude others from making, using, offering to sell, or selling the patented invention. The Court finds, however, that the harm indicated by the plaintiff--the loss of customers and sales of the plaintiff's [*10] product and the erosion of the plaintiff's position in the market--while serious, does not amount to undue prejudice. As indicated at the hearing on the motion to stay, sales of the allegedly infringing product occur primarily through radio advertisement and mail order and reach a limited geographic market (the Northeast) as compared to the nationwide market reached by the plaintiff's product. Additionally, profits lost by the plaintiff by the continued sales of the defendant's product can be compensated by damages. Finally, the patented invention at issue does not appear to be a short-lived technology, such as electronics or software, such that a stay of this case will permit the defendant to infringe upon the patented invention for the life of that invention. Cf. Output Tech. Corp. v. Dataproducts Corp., 1991 U.S. Dist. LEXIS 20168, 22 U.S.P.Q.2D (BNA) 1072, 1074 (W.D. Wash. 1991) (denying accused infringer's motion for a stay after considering, among other factors, that the patent owner was a small business and would suffer irreparable harm from a further delay in the litigation). Thus, the plaintiff has not established that the prejudice faced by the continued marketing [*11] and sales of the defendant's product outweighs the benefits to this Court and the parties conferred by a stay pending the PTO's reexamination of the '868 patent.

II. Conclusion

The defendant's motion for a stay [Doc. # 6] is GRANTED, and the case is STAYED pending the outcome of the reexamination of the plaintiff's patent by the U.S. Patent and Trademark Office.

Additionally, the parties shall file a joint status report by September 1, 2002.

SO ORDERED this 18th day of July 2002 at Hartford, Connecticut.

PUBLIC VERSION                     2002 U.S. Dist. LEXIS 17613, *

**CHRISTOPHER F. DRONEY**                  **UNITED STATES DISTRICT JUDGE**

PUBLIC VERSION

# EXHIBIT Q

PUBLIC VERSION

LEXSEE

TRI-TECH, INC., d/b/a STAIRMASTER, Plaintiff/Counterdefendant-Appellee, v.
TRU-TRAC THERAPY PRODUCTS, INC., and EVAN FLAVELL, Defen-
dants/Counterclaimants-Appellants.

94-1384

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

1995 U.S. App. LEXIS 9788

April 28, 1995, Decided

**NOTICE:**    [*1]    RULE   47.6(b).
NONPRECEDENTIAL OPINIONS AND ORDERS.
OPINIONS   AND   ORDERS   WHICH   ARE
DESIGNATED AS NOT CITABLE AS PRECEDENT
ARE THOSE UNANIMOUSLY DETERMINED BY
THE PANEL AT THE TIME OF THEIR ISSUANCE
AS NOT ADDING SIGNIFICANTLY TO THE BODY
OF LAW.   OPINIONS   AND   ORDERS   SO
DESIGNATED SHALL NOT BE EMPLOYED OR
CITED AS PRECEDENT. THIS RULE DOES NOT
PRECLUDE ASSERTION OF ISSUES OF CLAIM
PRECLUSION, ISSUE PRECLUSION, JUDICIAL
ESTOPPEL, LAW OF THE CASE OR THE LIKE
BASED ON A DECISION OF. THE COURT
RENDERED IN A NONPRECEDENTIAL OPINION
AND ORDER.

**SUBSEQUENT HISTORY:**

Rehearing Denied May 24, 1995, Reported at: 1995
U.S. App. LEXIS 13893.

Reported in Table Case Format at: 53 F.3d 349. 1995
U.S. App. LEXIS 18709.

**PRIOR HISTORY:** United States District Court for the
Central District of California. No. SA CV 90-761.

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant sought review
of an order from the United States District Court for the
Central District of California, which granted summary
judgment of patent noninfringement to appellee as to its
Stairmaster exercises machine.

**OVERVIEW:** Appellant argued that his patent covered
both variable speed and constant speed devices. How-
ever, the court found that based on the prior prosecution
history of appellant's patent, it was clear that appellant's
patent was for a variable speed device only. The court
also found that the structures of appellant's device and
the Stairmaster were not the same or equivalent within
the meaning of 35 U.S.C.S. § 112. The court further
found that appellant's reissue claims excluded constant
speed devices. Accordingly, the court concluded that no
reasonable juror could conclude that appellee's Stair-
master machine, which was a constant speed device, in-
fringed appellant's patent.

·

**OUTCOME:** The court affirmed the district court's
judgment of noninfringement in favor of appellee as to
its Stairmaster machine.

**CORE TERMS:** speed, patent, constant, specification,
variable, speed-regulating, reasonable juror, reexamina-
tion, resistance, varying, granting summary judgment,
noninfringement, infringe, exercise device, ignoring,
coverage, user

**JUDGES:** Before NEWMAN, MICHEL and PLAGER,
Circuit Judges.

**OPINIONBY:** MICHEL

**OPINION:**

DECISION

Tru-Trac appeals from the order of the United States
District Court for the Central District of California in No.
SA CV 90-761, granting summary judgment of nonin-
fringement to Tri-Tech, Inc. Because of narrowing

amendments to the claims, statements in the specification and statements of the patentee during reexamination that are part of the prosecution history record in the Patent and Trademark Office, the functions of the speed-regulating means of the claimed and accused [*2] devices are not identical. The former functions to allow variations of speed while increasing resistance, but the latter functions to prevent increases in speed. Nor are the associated structures the same or equivalent within the meaning of 35 U.S.C. § 112, P 6. In addition, we hold the district court correctly construed the reissue claims as excluding constant speed devices and no reasonable juror could conclude that the accused device infringes the claims as so construed, since they would have to find the accused Stairmaster machine to be a variable speed device which it plainly is not. Therefore, we affirm.

## DISCUSSION

I. As the district court properly held, the claimed device was a variable speed device and the speed-regulating means allowed changes in speed. During reexamination, the applicant was confronted with overcoming the Gardiner patent. To distinguish over it, he argued that Gardiner involved a constant speed exercise device, "precluding such user-induced speed increases and decreases entirely," Appendix 644-45, as his device allowed. In this way the applicant expressly distinguished his claimed device, which allows for speed increases over and above the set speed, [*3] from Gardiner, which, per Tru-Trac, did not. Whether Tru-Trac accurately understood Gardiner is irrélevant. In light of Tru-Trac's view of Gardiner, Tru-Trac disclaimed some potential coverage of its patent application claims. It is in this light that the phrase that Tru-Trac added must be construed. The added phrase stated that the speed-regulating means operated, "such that . . . at or above the selected speed the user encounters a resistance proportioned to the force applied by the person exercising." Accordingly, despite the broad wording of the added clause that linguistically would include levels of increased resistance that would prevent changes in speed altogether, the '267 patent as reissued cannot cover constant speed devices. Such coverage was thus surrendered during reexamination. Nor may appellant's attorney's private interview notes be considered part of the prosecution history which is a public record. Moreover, the incorporation by reference of patents for devices, some of which include constant speed regulators, does not matter, for the surrender occurred thereafter and thus effectively "unincorporated" those devices. Finally, coverage of constant speed devices is [*4] inconsistent with the emphasis throughout the specification, e.g., col. 3:67-4:2, "higher speeds are more difficult to attain," that the claimed devices allowed and indeed accommodated varying speeds.

II. No reasonable juror could find that the Stairmaster device, the PT-4000, allows for varying speeds above the pre-set speed, according to the desire and effort of the user. Rather, it is a constant speed device, both as designed and as actually operated. As the district court noted, it operates, once over the threshold speed, "with a speed that does not exceed the set speed."

Although appellant argued that in some circumstances the speed of the Stairmaster device can vary "slightly," in the district court's words, this lack of absolute operational perfection does not change the Stairmaster PT-4000 from a constant speed to a variable speed exercise device. No reasonable juror could find otherwise.

III. Because the accused device does not meet the limitation of the means clause concerning speed regulation, it cannot infringe the patent even if it meets all other claim limitations. Therefore, there is no need to analyze the other limitations in the '267 patent.

Appellant essentially [*5] argues that the added language, viewed in isolation, could support a construction consistent with its position, that is, that the '267 patent covers both variable speed and constant speed devices. The short answer is that would be true only by ignoring applicant's representations to the examiner, particularly those designed to distinguish the Gardiner patent. It would also require ignoring the thrust of the specification which throughout emphasizes varying speeds in the claimed device. That is not permissible. Competitors are entitled to rely on the specification and prosecution history record.

Appellant's argument on the same or structurally equivalent speed-regulating means being incorporated by reference via patents listed in the specification fails because of the lack of substantial evidence on the summary judgment record that the structures of these patents are the same or equivalent to the structures of the Stairmaster -- computer, AC alternator, tachometer, software interface, variable voltage, intermittent braking, etc. It also fails because unexplained citations to prior art patents cannot negate inconsistent clear language by applicant himself in the prosecution history [*6] and the specification.

In light of the foregoing, appellant's other arguments need not be analyzed, seriatim, although all of them have been considered.

As to validity and enforceability, the district court made no rulings. Therefore, neither do we.

As to the construction of the '267 claims, the district court was correct, just as it was, consequently, in granting summary judgment of noninfringement.

PUBLIC VERSION

# EXHIBIT R

PUBLIC VERSION

LEXSEE

**JOHN WERRE, Plaintiff, vs. BATTENFELD TECHNOLOGIES, INC., a Missouri corporation, MIDWAY ARMS, INC., a Missouri corporation, DOES 1-100 and DOES, INC. 1-100, Defendants.**

Civil No. 03-1471-AA

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

2004 U.S. Dist. LEXIS 23250

November 9, 2004, Decided

**DISPOSITION:** Defendants' motion to stay litigation granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants moved to stay litigation pending reexamination of a patent by the United States Patent and Trademark Office (PTO).

**OVERVIEW:** The court applied three factors, which all favored a stay. First, no undue prejudice would occur to plaintiff if the stay were granted. Discovery was not scheduled to close until February 2005. Each party had served and responded to only a single set of written discovery requests. No depositions had been taken. No expert reports had been exchanged. A Markman hearing had not been scheduled, and summary judgment motions had not been filed. Second, as to simplification of the issues, the court noted that there was only one patent at issue and defendants were accused of infringing only two claims, both of which were being reexamined. A determination of invalidity by the PTO would dispose of the case before the court. A cancellation of some of the claims might narrow the issues before the court. Third, discovery was in the beginning stages, and no trial date had been set.

**OUTCOME:** The motion was granted.

**CORE TERMS:** patent, reexamination, discovery, trial date, stay proceedings, depositions, scheduled, motion to stay

**LexisNexis(R) Headnotes**

Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas
[HN1] The decision to stay litigation is within the sound discretion of this court.

Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas
Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations
[HN2] There exists a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings.

Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas
Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations
[HN3] The relevant considerations when courts are considering staying patent litigation during the reexamination of a patent by the United States Patent and Trademark Office are: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage for the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

**COUNSEL:** [*1] For John Werre, Plaintiff: Bert P. Krages, II, Bert P. Krages II, Attorney at Law, Portland, OR; Leonard D. DuBoff, DuBoff Dorband Cushing & King PLLC, Portland, OR.

For Battenfeld Technologies, Inc., a Missouri corporation, Defendant: David W Harlan, Senniger Powers Leavitt & Roedel, St. Louis, MO; Paul T. Fortino, Perkins Coie LLP, Portland, OR; Scott D. Eads, Perkins Coie, LLP, Portland, OR; Christopher L. Garrett, Perkins Coie, LLP, Portland, OR.

For Midway Arms, Inc., a Missouri corporation: Paul T. Fortino, Perkins Coie LLP, Portland, OR; Scott D. Eads, Perkins Coie, LLP, Portland, OR; Christopher L. Garrett, Perkins Coie, LLP, Portland, OR.

For Does 1-100 and Does, Inc. 1-100: Scott D. Eads, Perkins Coie, LLP, Portland, OR.

JUDGES: Ann Aiken, United States District Judge.

OPINIONBY: Ann Aiken

OPINION:

ORDER

AIKEN, Judge:

Defendants' motion to stay litigation pending reexamination of 131 Patent by the United States Patent and Trademark Office (PTO) is granted.

Plaintiff contends that defendants have infringed claims 1 and 2 of plaintiff's U.S. Patent No. 5,813,131 (the 131' Patent). Plaintiff commenced this action on October 24, 2003. On July 2, 2004, defendant Midway [*2] Arms, Inc. (Midway) requested that the PTO "reexamine" claims 1 through 4 of the 131 Patent in light of relevant "prior art" that was not considered by the PTO during the original prosecution of the 131 Patent. On August 31, 2004, the PTO granted Midway's request, finding that the new prior art raises a "substantial new question of patentability" as to claims 1 through 4 of the 131 Patent.

[HN1] The decision to stay litigation is within the sound discretion of this court. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted). Further, the court recognizes that [HN2] there exists a "liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." Whatley v. Nike Inc., 54 U.S.P.Q.2d 1124, 1125 (D. Or. 2000).

Case law sets forth [HN3] the relevant considerations when courts are considering staying patent litigation during the reexamination of a patent by the PTO. Those are: (1) whether a stay would unduly prejudice or present [*3] a clear tactical disadvantage for the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. Whatley, 54 U.S.P.Q.2d at 1125. I find that all three factors favor a stay in this case.

First, I find no undue prejudice that will occur to the plaintiff if the stay is granted. Discovery is not scheduled to close in this case until February 2005. Each party has served and responded to only a single set of written discovery requests. No depositions have been noticed or taken. No expert reports have been exchanged. A Markman claim construction hearing has not been held, or even scheduled, nor have any summary judgment motions been filed. Moreover, I note the PTO's obligation to handle the reexamination proceeding "with special dispatch." 35 U.S.C. § 305.

As to the second factor, simplification of issues, this also weighs in favor of granting the stay. The 131 Patent is the only patent at issue; further, defendants are accused of infringing only two claims of that patent, both of which are now being reexamined by the PTO. A determination [*4] of invalidity by the PTO would entirely dispose of the case before this court. Further, even if the PTO cancels just some of the claims 1 through 4, that may very well narrow the issues before this court.

Finally, the third factor -- whether discovery is complete and a trial date has been set -- also favors entering the stay. As stated earlier, discovery is in the beginning stages. There have been no depositions, expert discovery, claim construction, or dispositive motions filed. No trial date has been set.

CONCLUSION

Defendant's motion to stay this litigation pending reexamination of 131 Patent by the U.S. Patent & Trademark Office (doc. 29) is granted. The parties are ordered to notify the court when the PTO has concluded its reexamination proceeding and reached a conclusion.

IT IS SO ORDERED.

Dated this 9 day of November 2004.

Ann Aiken

United States District Judge

PUBLIC VERSION

# EXHIBIT S

PUBLIC VERSION

LEXSEE

WHISTLER CORPORATION, Plaintiff, v. DYNASCAN CORPORATION, Defendant

No. 88 C 8368

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1989 U.S. Dist. LEXIS 1513

February 9, 1989, Decided; February 10, 1989, Filed

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff patent owner sought a preliminary injunction in its infringement action to prohibit defendant infringer from manufacturing, using, or selling four models of radar detectors that allegedly infringed on the owner's patent.

OVERVIEW: The patent owner held by assignment a patent for a radar signal detector. The parties were direct competitors and two of the largest national distributors of radar detectors. Although the validity of the patent at issue was previously challenged and declared valid in an infringement action filed in another court, validity remained an open questions because of subsequent proceedings in that case. The court denied the motion for a preliminary injunction because the patent owner did not make a clear showing that it was likely to succeed on the merits. The patent owner failed to produce evidence of irreparable harm and did not make a strong showing of validity and infringement necessary to establish a presumption of irreparable harm. Moreover, the patent owner could be compensated by monetary damages. Because the owner's lack of diligence in notifying the infringer of the claimed infringement and in seeking judicial relief mitigated against a finding of irreparable harm and because a preliminary injunction was found to disserve the public interest, the motion was denied.

OUTCOME: The patent owner's motion for preliminary injunction was denied in its infringement action against the alleged infringer.

CORE TERMS: patent, detector, radar, preliminary injunction, reexamination, infringement, sweep, irreparable harm, injunction, infringe, likelihood of success, subsequent suit, public interest, challenging, presumed, holder, radar signal, conclusions of law, manufacturing, manufacture, competitors, electronic, circuitry, shipped, selling, invalid, notice

LexisNexis(R) Headnotes

*Civil Procedure > Injunctions > Elements*
[HN1] The court considers and balances four factors in deciding whether to issue a preliminary injunction: whether plaintiff has demonstrated a reasonable likelihood of success on the merits; whether plaintiff has an adequate remedy at law or will be irreparably harmed if the injunction does not issue; whether the threatened injury to plaintiff outweighs the threatened harm the injunction may inflict on the defendant; and the impact of a preliminary injunction on the public interest. No single element is dispositive. Each factor is weighed and measured against the others and against the relief demanded.

*Patent Law > Infringement Actions > Burdens of Proof*
*Evidence > Procedural Considerations > Inferences & Presumptions*
*Patent Law > Remedies > Equitable Relief > Injunctions*
[HN2] A patent holder must establish a likelihood of success on the merits with respect to both the validity of its patent and defendant's alleged infringement.

*Patent Law > Infringement Actions > Burdens of Proof*
[HN3] A party challenging validity of a patent must show by clear and convincing evidence that the patent is invalid.

PUBLIC VERSION    1989 U.S. Dist. LEXIS 1513, *

*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Validity Presumption*
*Patent Law > U.S. Patent & Trademark Office Proceedings > Reexaminations*
[HN4] A patent is presumed valid. 35 U.S.C.S. § 282. It remains valid absent action by the United States Patent and Trademark Office under the reexamination statutes. 35 U.S.C.S. §§ 301-307. The presumption of validity is a statutory procedural device; it is not augmented by an earlier adjudication of patent validity.

*Patent Law > Remedies > Equitable Relief > Injunctions*
[HN5] In the context of a motion for preliminary injunction against further alleged infringement of a patent, the patent holder may use a prior adjudication of patent validity involving a different defendant as evidence of its likelihood of success on the merits.

*Patent Law > Preclusion > Collateral Estoppel*
*Patent Law > Infringement Actions > Burdens of Proof*
[HN6] Although a prior holding of validity is given some weight in a subsequent suit challenging the validity of a patent, the prior holding does not necessarily have stare decisis effect. The weight given a prior holding of validity will vary depending on the additional prior art and other evidence of patentability produced in the subsequent suit.

*Evidence > Procedural Considerations > Inferences & Presumptions*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Validity Presumption*
*Patent Law > Remedies > Equitable Relief > Injunctions*
[HN7] Irreparable harm may be presumed where both validity of a patent and its infringement by another is clearly established.

*Patent Law > Remedies > Equitable Relief > Injunctions*
[HN8] The period of delay exercised by a party prior to seeking a preliminary injunction in a case involving intellectual property is one factor to be considered in a determination of irreparable harm.

*Patent Law > Remedies > Equitable Relief > Injunctions*
[HN9] A patent holder's lack of diligence in notifying a manufacturer of alleged infringement and in seeking judicial relief mitigates against a finding of irreparable harm.

**OPINIONBY:** [*1]

CONLON

**OPINION:**

MEMORANDUM OPINION AND ORDER

SUZANNE B. CONLON, UNITED STATES DISTRICT JUDGE

Plaintiff Whistler Corporation ("Whistler") moves for a preliminary injunction to prohibit defendant Dynascan Corporation ("Dynascan") from manufacturing, using or selling four models of radar detectors that allegedly infringe Whistler's patent. After reviewing the deposition testimony, affidavits and exhibits, and considering the memoranda and arguments of counsel, the court enters the following findings of fact and conclusions of law, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

FINDINGS OF FACT

1. Whistler presently manufactures and markets thirteen models of police radar detectors.

2. Whistler owns by assignment U. S. Patent No. 4,315,261 ("the '261 patent"), entitled "Radar Signal Detector." The '261 patent was issued on February 9, 1982 to Richard K. Mosher. It relates to a radar signal receiver that detects the presence of low levels of radar radiation of short duration and unknown frequency (such as those emitted by a police radar gun) by means of a reduction in the sweep rate.

3. Virtually all of Whistler's current detectors incorporate the patented circuitry. [*2] The Q-1000 model, introduced in 1979, was commercially available prior to the date the application for the '261 patent was filed in 1980.

4. Dynascan markets police radar detectors and other electronic devices under the trademark "Cobra." Radar detectors account for approximately 38-40% of Dynascan's gross sales of Cobra products; in 1988, Dynascan reported that its radar detector sales amounted to $ 50-60 million.

5. Whistler and Dynascan are direct competitors and two of the largest national distributors of radar detectors. Whistler controls the greatest market share in the industry: Whistler controls approximately 30% of the market; Dynascan controls approximately 20% of the market.

6. Dynascan markets four radar detector models with similar operative electronic circuitry: Cobra model Nos. RD-2110, RD-3120, RD-3168 and RD-3170. These models, like the RD-4100 introduced in October 1984, incorporate a sweep stop circuit: upon detection of a radar signal, the detector reduces the sweep rate and ultimately stops the sweep for a variable period of time.

7. Model No. RD-3170 was first shipped for commercial sale during the summer of 1987. Model Nos. RD-2110, RD-3120 and RD-3168 were [*3] introduced at a consumer electronics show in January 1988 and were first shipped during the summer of 1988 -- possibly as early as March or April 1988.

8. Whistler alleges that Cobra model Nos. RD-2110, RD-3120, RD-3168 and RD-3170 infringe claim 1 of Whistler's '261 patent.

9. Dynascan denies that its products infringe the '261 patent and contends that the patent is invalid.

10. The validity of the '261 patent was previously challenged in an infringement action filed in December 1985 in the Northern District of Texas. In July 1988, after a seven day jury trial, the court ruled that the '261 patent was valid and that defendant's product infringed the patent under the doctrine of equivalents. See Whistler Corp. v. Autotronics, Inc., CA 3-85-2573-D (N.D. Texas July 28, 1988). The decision is currently on appeal to the Federal Circuit Court of Appeals.

11. Whistler conducted sweep stop investigations of Dynascan radar detectors as early as February 1985. Whistler confirmed the sweep stop capacity in model No. RD-3170 in June 1987.

12. Whistler did not advise Dynascan of the pendency of the Autotronics litigation or give Dynascan notice of its alleged infringement of the '261 [*4] patent prior to filing this action on September 30, 1988.

13. On October 14, 1988, Whistler moved for a preliminary injunction to prohibit Dynascan from the further manufacture, sale or use of the four radar detectors at issue.

14. On November 9, 1988, Dynascan filed a reexamination request in the Patent and Trademark Office ("PTO"), requesting reexamination of claims 1, 2, 3, 4, 6 and 9 of the '261 patent.

15. On December 8, 1988, counsel for Whistler filed a notice of adjudication of patent validity and citation of prior art, advising the PTO that the validity of the '261 patent was upheld in Autotronics.

16. On January 13, 1989, the PTO granted Dynascan's reexamination request and ordered the reexamination of each claim of the '261 patent.

17. According to reexamination filing data produced by the PTO for the period ending December 31, 1988, 74% of all claims reexamined at the request of a third party are either cancelled or amended.

18. Whistler argues that it will "continue to suffer market and price erosion if the infringement continues" and its motion for a preliminary injunction is denied.

19. Dynascan maintains that an injunction would prohibit the sale of 70% of its [*5] radar detectors currently on the market.

CONCLUSIONS OF LAW

1. The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § § 1331 and 1338(a).

2. The decisions of the Federal Circuit control this action. See Smith International, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1579 (Fed. Cir.), cert. denied, 464 U.S. 996 (1983).

3. [HN1] The court considers and balances four factors in deciding whether to issue a preliminary injunction:

(1) whether plaintiff has demonstrated a reasonable likelihood of success on the merits;

(2) whether plaintiff has an adequate remedy at law or will be irreparably harmed if the injunction does not issue;

(3) whether the threatened injury to plaintiff outweighs the threatened harm the injunction may inflict on the defendant;

(4) the impact of a preliminary injunction on the public interest.

Hybritech, Inc. v. Abbott Laboratories, 849 F.2d 1446, 1451 (Fed. Cir. 1988). No single element is dispositive; each factor is weighed and measured against the others and against the relief demanded. Id.

4. [HN2] A patent holder must establish a likelihood of success on the merits with respect to both the validity of its patent and defendant's [*6] infringement. Hybritech, 849 F.2d at 1451.

5. [HN3] A party challenging validity of a patent must show by clear and convincing evidence that the patent is invalid. RCA Corp. v. Applied Digital Data Systems, Inc., 730 F.2d 1440, 1444 (Fed. Cir. 1984).

6. [HN4] A patent is presumed valid. 35 U.S.C. § 282. It remains valid absent action by the PTO under the reexamination statutes. See 35 U.S.C. § § 301-307. The presumption of validity is a statutory procedural device;

it is not augmented by an earlier adjudication of patent validity. Shelcore. Inc. v. Durham Industries. Inc.. 745 F.2d 621, 627 (Fed. Cir. 1984).

7. [HN5] In the context of a motion for preliminary injunction against further alleged infringement of a patent, the patent holder may use a prior adjudication of patent validity involving a different defendant as evidence of its likelihood of success on the merits. Hybritech. 849 F.2d at 1452.

8. [HN6] Although a prior holding of validity is given some weight in a subsequent suit challenging the validity of a patent, the prior holding does not necessarily have stare decisis effect. Shelcore. 745 F.2d at 627 n.10 (weight given a prior holding of validity will vary depending [*7] on the additional prior art and other evidence of patentability produced in subsequent suit).

9. Based upon the record, Whistler has not made a clear showing that it is likely to succeed on the merits. The validity of the '261 patent is currently at issue before the PTO. Therefore, the presumption of validity is not clearly established.

10. [HN7] Irreparable harm may be presumed where both validity and infringement are clearly established. Roper Corp. v. Litton Systems. Inc.. 757 F.2d 1266, 1271-72 (Fed. Cir. 1985).

11. Whistler has failed to produce evidence of irreparable harm. It has not made a strong showing of va-

lidity and infringement necessary to establish a presumption of irreparable harm. Moreover, Whistler may be compensated by monetary damages for its alleged injuries.

12. [HN8] The period of delay exercised by a party prior to seeking a preliminary injunction in a case involving intellectual property is one factor to be considered in a determination of irreparable harm. Hybritech. 849 F.2d at 1457.

13. [HN9] Whistler's lack of diligence in notifying Dynascan of the alleged infringement and in seeking judicial relief mitigates against a finding of irreparable harm. Citibank N.A. [*8] v. City Trust. 756 F.2d 273, 276 (2d Cir. 1985).

14. The record does not provide a factual basis to compare the potential hardship to each party in granting or denying an injunction.

15. A preliminary injunction enjoining Dynascan -- one of Whistler's primary competitors -- from manufacturing, using or selling the radar detectors at issue pending reexamination of claim 1 of the '261 patent would disserve the public interest.

16. Given Whistler's failure to demonstrate irreparable harm if the injunction does not issue, the equities weigh in favor of Dynascan. Whistler's motion for preliminary injunction is denied.