# EXHIBIT A

LEXSEE

**PURCELL BRONSON, Plaintiff vs. MARTIN HORN, et al., Defendants**

**Civil Action No. 02-663**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**2006 U.S. Dist. LEXIS 38791**

**June 12, 2006, Decided**
**June 12, 2006, Filed**

**COUNSEL:** [*1] PURCELL BRONSON, Plaintiff, Pro se, Camp Hill, PA.

For MARTIN F. HORN, SECTETARY BEARD, P. J. JONSON, J. S. DICKSON, M. J. MUTCHLER, M. P. TOSKI, J. DELIE, W. STICKMAN, R. HRACH, E. HOWE, LT. BOVO, CO. J. FALLECKER, T. COLLINS, F. CRYTZER, SGT. NOVAK, M. MATTHEWS, R. KESSLER, M. A. KRYSEVIG, CO. DRAGON, D. JONES, J. M. MORGAN, J. A. WEAVERLING, CO. BAUMGARNER, CO. WAGNER, CO. GEORGE, SGT. HENNEY, SGT. YOHN, R. WATSON, C. J. SIMPSON, R. NILLE, M. FERSON, C. SHANE, M. MASKULYAK, C. B. SCHWEITZER, F. FRANK, R. BITNER, C. SCIRE, T. JAMES, CAPT. YURICK, D. BANEY, CHRIS MONTENARO, SGT. STAFFORD, PROGRAM REVIEW COMMITTEE, DEPUTY SECRETARY LOVE, CAPTAIN MCCOWN, LT. AVERY, MR. MATA, CO. ORPEN, R. MINNICK, CO. ESTOCK, CO. BOUSER, DAVE ROBERT, CO. SHAFFER, CO. MORRISON, MAJ. COLE, LT. BLAKEY, CO. NICKSON, Defendants: Craig E. Maravich, Office of the Attorney General, Pittsburgh, PA.

**JUDGES:** ALAN N. BLOCH, United States District Judge. Magistrate Judge Amy Reynolds Hay.

**OPINIONBY:** ALAN N. BLOCH

**OPINION:**

### MEMORANDUM ORDER

Purcell Bronson had previously filed an amended complaint (Doc. 41) comprised of 303 paragraphs, containing claims against roughly 65 defendants, recounting distinct and disparate [*2] events that spanned from November 12, 1998 (P99 of Doc. 41) to October 31, 2002 (P295 of Doc. 41). That complaint was dismissed for the most part because it violated Fed.R.Civ.P. 20 and 21.

Doc. 166 (R&R) and 170 (Order adopting R&R). For the most part, the complaint was dismissed without prejudice to plaintiff filing within 45 days of the District Court order adopting the Report and Recommendation, an amended complaint that conformed to Fed.R.Civ.P. 20 and 21. n1 Doc. 166 at 1. After the Court entered its order, the Clerk of Courts closed the case. Unbeknownst to the Court, Plaintiff attempted to comply with the Court's order by sending in a complaint to the Court which he had apparently signed on January 26, 2006 (hereinafter "the proposed complaint"). Again, unbeknownst to the Court, the Clerk's office rejected Plaintiff's proposed complaint by letter dated February 14, 2006, giving as the reason that the case was closed.

    n1 The claims against Defendant Horn were dismissed with prejudice as being malicious.

[*3]

To rectify this situation and to assure a complete record for purposes of any appeal, the Clerk is hereby **DIRECTED** to file the proposed complaint. However, it will be **DISMISSED** with prejudice for failing to comply with the previously entered court order, which required Plaintiff to file a complaint that conformed to the Federal Rules.

The January 2006 proposed complaint suffers from the same defects as the prior operative complaint. The proposed complaint names roughly 34 defendants (at least six of whom were not named in the caption of the operative complaint, *i.e.*, they are totally new defendants) and complains of separate and distinct incidents occurring over the span of time from September 23, 2000, (Proposed Complaint at PP4-6) to October 20, 2003 (id. at PP80 - 82). These separate and distinct events concerning these 34 defendants spanning a period of over three years do not satisfy Rule 20's requirements that Plaintiff's multiple claims against the defendants present

(1) a right to relief by the plaintiff against each defendant relating to or arising out of the same transaction or series of transactions, and (2) some common question of law or fact be present [*4] with respect to all parties in the action (*i.e.,* a common thread). Intercon Research Associates, Ltd. v. Dresser Industries, Inc., 696 F.2d 53, 57 (7th Cir. 1982).

In addition to violating Rules 20 and 21, the proposed complaint, in part, is not really an amended complaint but a supplemental complaint n2 insofar as it complains of events occurring after the date of the filing of what the court has referred to as the operative complaint, *i.e.,* Doc. 41, which was deemed to have been filed on February 12, 2003. See proposed complaint at PP11-18 (complaining of events occurring on or after April 7, 2003) and PP29 (complaining of events occurring on March 30, 2003) and PP80 - 82 (complaining of events occurring on or after October 20, 2003). Fed.R.Civ.P. 15(d) makes clear that a supplemental complaint may not be filed without leave of court. See, e.g., Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1156 (5th Cir. 1992) ("Dillard filed his supplemental complaint (which was stricken for failure to ask leave of court to file it)"); ECL Industries, Inc. v. Ticor & Southern Pacific Co., 1986 U.S. Dist. LEXIS 21433, No. 85 Civ. 9592, 1986 WL 9222, [*5] *2 (S.D.N.Y. Aug. 18, 1986) ("Ticor filed a supplemental complaint (without seeking leave of court, as required by Rule 15(d), F.R.Civ.P.)"). Hence, insofar as the proposed complaint complains of events after February 12, 2003, it is in violation of Fed.R.Civ.P. 15(d) because Plaintiff has not sought leave to file such. n3

n2 A supplemental pleading is a pleading that recounts some matter that occurs after the beginning of the action or after a responsive pleading has been filed. Klee v. Pittsburgh & W. Va. Railway Co., 22 F.R.D. 252, 254 (W.D. Pa. 1958).

n3 Even if Plaintiff had filed or would file a motion requesting leave to file a supplemental complaint, the court, in exercising its sound discretion, would have denied or would deny such a

request since the attempted supplement does not meet the requirements of Fed.R.Civ.P. 15.

In addition, Plaintiff's proposed complaint [*6] is malicious insofar as some of the claims are repetitive. A complaint is malicious if it "duplicates the allegations of another complaint filed by the same plaintiff[.]" Crane v. Cockrell, 67 Fed.Appx. 243, 243 (5th Cir. 2003). See also Pittman v. Moore, 980 F.2d 994 (5th Cir. 1993). Indeed "[r]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." McWilliams v. Colorado, 121 F.3d 573, 574 (10th Cir. 1997) (quotation marks and alteration omitted). Here, the proposed complaint is, in no small part, clearly repetitious of other actions filed by Plaintiff and, therefore, malicious. For example, compare paragraphs 68 - 70 of the proposed complaint with Bronson v. Dickson, No. 01-1706 (W.D. Pa. Doc. # 24 at PP13-15). Compare PP4-6 of the proposed complaint with Bronson et al. v. Horn, No. 3:CV-01-26 (M.D. Pa. Doc. # 317 at PP2, 4-15) with Bronson v. Dickson, No. 02-791 (W.D. Pa. Doc. proposed habeas petition at PP12 & 15) with Bronson v. Dickson, No. 01-1706 (W.D. Pa. proposed habeas petition at PP3, 10, 12, & 15).

In light of all of the foregoing, and, [*7] considering the relevant Poulis n4 factors, the Court determines that dismissal with prejudice is warranted and so the Court enters the following:

**NOW** this 12th day of June 2006, it is hereby **ORDERED** that the proposed complaint is **DISMISSED WITH PREJUDICE.**

n4 Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984)

Furthermore, pursuant to 28 U.S.C. § 1915(a), the Court certifies that any appeal from this order would not be taken in good faith.

ALAN N. BLOCH

United States District Judge

# EXHIBIT
# B

LEXSEE

**JIMMIE LEWIS, Plaintiff, v. DR. SYLVIA FOSTER, STAFF MEMBERS, and MR. GRAY, Defendants.**

**Civil Action No. 04-1350 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2006 U.S. Dist. LEXIS 45819**

**July 5, 2006, Decided**

**COUNSEL:** [*1] For Jimmie Lewis, Plaintiff, Pro se, Smyrna, DE.

For Dr. Sylvia Foster, Defendant: Cynthia G. Beam, Reger Rizzo Kavulich & Darnall, LLP, Wilmington, DE.

For Nurse Assistant Robert N. Gray, Defendant: Aleph Ann Woolfolk, Gregory E. Smith, Department of Justice, Wilmington, DE.

For Mr. Johnson 1, Lance Sapers, Dave Moffitt, Defendants: Gregory E. Smith, Department of Justice, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**AMENDED MEMORANDUM**

**I. INTRODUCTION**

Jimmie Lewis ("Lewis") is presently incarcerated at the Delaware Correctional Center (the "DCC"), which is located in Smyrna, Delaware. On October 13, 2004, Lewis filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. This action arises out of incidents that allegedly occurred while Lewis was confined to the Delaware Psychiatric Center (the "DPC") in order to undergo a mental health evaluation, pursuant to a court order signed by Judge Charles Toliver. In his complaint and amended complaint (D.I. 10) Lewis alleges that Sylvia Foster, M.D. ("Dr. Foster"), Robert Gray ("Gray"), and other DPC staff members ("DPC [*2] Staff Members") have, violated his constitutional rights.

Presently before the court are the following motions: (1) Dr. Foster's motion to dismiss for lack of jurisdiction;

(2) Dr. Foster's motion to dismiss for failure to state a claim; (3) Gray's motion to dismiss for failure to state a claim; and (4) Lewis' motion to amend and supplement thereto. For the reasons stated below, the court will deny Dr. Foster's motion to dismiss for lack of jurisdiction; the court will grant in part and deny in part Dr. Foster's motion to dismiss for failure to state a claim; (3) the court will deny Gray's motion to dismiss for failure to state a claim; and the court will grant in part and deny in part Lewis' motion to amend and supplement thereto.

**II. BACKGROUND**

Lewis' first complaint alleges that Dr. Foster diagnosed Lewis as "malingering" n1 and stated that he received no "psychotropic" medication during his stay at the DPC, because he "revealed no evidence of mood disorder." (D.I. 2 P 4.) Lewis further alleges that, contrary to Dr. Foster's diagnosis, he was "strapped down with restraints and injected with psychotropic drugs[,] such as Haldol, Ativan and Geodon." ( [*3] *Id.*) He requests the court to investigate his claim and award him monetary relief for pain and suffering because he was "violated." (*Id.* P 5.)

n1 Malingering is defined as "the purposeful exaggeration of physical or psychological complaints in order to receive some kind of reward." *Psychology Today,* available at www.psychologytoday.com/conditions/malingering.html (last visited January 24, 2006).

On March 8, 2005, Lewis filed an amended complaint naming Dr. Foster, as well as several DPC Staff Members, including Gray, as defendants. (*See* D.I. 10.) According to Lewis, "Judge Charles H. Toliver IV ordered that [he] be transfered [sic] to the Delaware Psychiatric Center for a psychiatric evaluation to determine [his] competency [to assist in the defense of criminal

charges against him] and to receive treatment." (D.I. 10, at 1.) Lewis also alleges that after he arrived at the DPC he "was ill and couldn't complete the admissions interview," which resulted in a "disciplinary restriction. [*4] " (*Id.*)

According to the amended complaint, on June 6, 2004, Lewis was "strapped down with four point restraint [sic] and injected with psychotropic medicines for disciplinary reasons, not for psychiatric reasons per Dr. Foster." (*Id.*) The amended complaint then documents several occasions during which Lewis was "strapped down with four point restraints and injected with psychotropic medicines." (*Id.* at 2.) Lewis alleges that Dr. Foster ordered him restrained for disciplinary, rather than psychiatric reasons, amounting to deliberate indifference on her part. (*Id.* at 1-2.)

Additionally, Lewis alleges that, on or about June 13, 2004, "Nurse Helen" instructed four or five DPC Staff Members to forcibly remove a bag of M&Ms candy from his hand because he was on disciplinary restriction. (*Id.* at 2.) According to Lewis, one of the DPC Staff Members, "Grey: [sic]," choked him while the other staff members assaulted him. (*Id.*) After he was subdued, one or several unnamed DPC Staff Members put him in restraints and injected with psychotropic medicine. (*Id.*)

On June 25, 2005, the DPC released Lewis and transferred him back to the DCC. (*Id.* at 3.) Lewis makes [*5] several allegations regarding the absence of a court order for his transfer, as well as erroneous responses to a Writ of Habeas Corpus filed in the state court. However, he does not explain the significance of these events to the case at bar. (*See id.*)

## III. DISCUSSION

### A. Dr. Foster's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Dr. Foster has filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Dr. Foster contends that Lewis' claims must be dismissed because the court is without jurisdiction to hear them. Specifically, Dr. Foster contends that Lewis has not presented a federal question because he seeks monetary damages only for pain and suffering. (D.I. 15 P 3.) Dr. Foster further contends that Lewis raises no issues in his pleadings based on his imprisonment. Therefore, his complaint cannot even arguably be construed as stating claims under. 42 U.S.C. § 1983. (*Id.* P 4.) n2 Lastly, Dr. Foster contends that Lewis' complaint fails to meet the requirements under the diversity of citizenship [*6] statute, 28 U.S.C. § 1323, because it does not allege that the parties are citizens of different states. (*Id.* PP 6-7.)

n2 Dr. Foster contends in this motion that Lewis has not made any allegations in his pleadings based on his imprisonment. However, in her motion to dismiss for failure to state a claim Dr. Foster states that Lewis is a "prisoner" and that the court may construe his claims as being based on his imprisonment under the Civil Rights Act. (D.I. 16 PP 1, 5-6.) Thus, she concedes that Lewis' claims arise under 42 U.S.C. § 1983.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. *Mortensen v. First Fed. Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). Dr. Foster's motion makes several factual challenges to the complaint because her arguments are based solely upon the application of [*7] legal principles to the facts as alleged in the complaint. Such a motion requires the court to consider the allegations of the complaint as true and to make all reasonable inferences in the plaintiffs' favor. *See id.*

After having considered Lewis' allegations as true and drawing all reasonable inferences therefrom, the court concludes that Dr. Foster's motion is without merit. Federal courts are vested with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Nothing in the language of section 1331 requires a plaintiff to plead any type of damages, i.e. compensatory or punitive. Lewis' amended complaint states that Dr. Foster was deliberately indifferent when she ordered him to be strapped down and given "psychotropic" medicines for disciplinary reasons. (D.I. 10, at 1.) Because Lewis is imprisoned and he complains, at the very least, about his conditions of confinement, his claims arise under 42 U.S.C. § 1983, a law of the United States. The court, therefore, has jurisdiction over Lewis' claims. Accordingly, the court will not address Dr. Foster's [*8] additional jurisdictional attacks.

### B. Whether Lewis has Stated Claims against Dr. Foster and Gray Under Section 1983

Dr. Foster and Gray have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz,* 1 F.3d 183 (3d Cir. 1993). Thus, as in the case of a Rule 12(b)(1) motion, the court must accept the factual allegations of the complaint as true. *See Graves v. Lowery,* 117 F.3d 723, 726 (3d Cir. 1997); *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996). In particular, the court looks to "whether

sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp.,* 838 F.2d 663, 666 (3d Cir. 1988). However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding [*9] a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3rd Cir. 1997). A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves,* 117 F.3d at 726; *Nami,* 82 F.3d at 65 (both citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). However, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

Lewis filed his complaint and amended complaint against Dr. Foster and Gray, alleging civil rights violations pursuant to 42 U.S.C. § 1983. In order to recover against the defendants, Lewis must show that he was deprived of a constitutional right by a person acting under the color of state law. 42 U.S.C. § 1983 [*10] ; *see, e.g., Groman v. Tp. of Manalapan,* 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)). Here, it is clear that Dr. Foster and Gray were acting under color of state law because, at the time of the alleged incidents, Dr. Foster was Chief Forensic Psychiatrist for the State of Delaware and Gray was an employee of the DPC, an agency of the State of Delaware. *See West v. Atkins,* 487 U.S. 42, 48-54 (1988). Therefore, the court next turns to whether Lewis has sufficiently alleged that Dr. Foster and/or Gray deprived him of any constitutional rights.

1. Whether Lewis has sufficiently stated a claim that Dr. Foster's order to restrain him violated his Fourteenth Amendment right to be free from restraint

Lewis alleges that Dr. Foster ordered several unnamed DPC staff members to strap him in four point restraints on several occasions. Implicit in Lewis' allegation is a claim that Dr. Foster and the DPC Staff Members violated his Fourteenth Amendment right to be free from restraint. Dr. Foster concedes that Lewis has alleged a Fourteenth Amendment claim. However, she contends that the claim must fail under [*11] a "freedom from restraint" analysis because Lewis cannot meet the "atypical and significant hardship" requirement enunciated by the Supreme Court in *Sandin v. Conner.* (*Id.*) (citing *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). The court agrees.

"Liberty interests protected by the Fourteenth Amendment may arise from two sources, the Due Process Clause itself and the laws of the States." *Hewitt v. Helms,* 459 U.S. 460, 466 (1983), *overruled in part by Sandin v. Conner,* 515 U.S. 472 (1995); *Bd of Regents v. Roth,* 408 U.S. 564, 575 (1972). In *Sandin,* the Supreme Court explained that state created liberty interests under the due process clause are limited to "freedom from restraint" that imposes "atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483. In determining whether an inmate has suffered an "atypical and significant hardship" as a result of his confinement, the court considers two factors: "1) the amount of time the prisoner was placed into disciplinary segregation, and 2) whether the conditions of his confinement in disciplinary [*12] segregation were significantly more restrictive than those imposed on other inmates in solitary confinement." *Shoats v. Horn,* 213 F.3d 140, 144 (3d Cir. 2000) (citing *Sandin,* 515 U.S. at 486).

In the present case, Lewis alleges only that Dr. Foster's decision to strap him down with four point restraints was disciplinary. The complaint does not allege that Lewis was placed in restraints for an unusual amount of time, or that he was treated differently than the other inmate patients at the DPC. Thus, the court cannot conclude that Lewis suffered an "atypical and significant hardship" when he was placed in restraints. Consequently, Lewis' "freedom from restraint" claim has no arguable basis in law or in fact. As such, the court will grant Dr. Foster's motion to dismiss this claim.

2. Whether Lewis has sufficiently stated a claim that Dr. Foster's order to have him injected with antipsychotic medicines against his will violates his Fourteenth Amendment rights

Lewis' amended complaint alleges that Dr. Foster's decision to have him injected with psychotropic drugs was against his will, thereby violating his constitutional rights. It is clear that a prisoner [*13] "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteen Amendment." *Washington v. Harper,* 494 U.S. 210, 221-22 (1990). In *Harper,* the Supreme court explained that this liberty interest is protected by principles of both procedural and substantive due process. *Id.* at 220-23. "[T]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, [only] if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. Moreover, "forcing antipsychotic drugs on a convicted [or pretrial] prisoner is impermissible absent a finding of overriding justification and a determination of

medical appropriateness." *Riggins v. Nevada,* 504 U.S. 127, 135; (1992).

Here, the amended complaint alleges that Dr. Foster ordered Lewis to be injected with unwanted psychotropic drugs. Lewis, therefore, has stated a claim for violation of his Fourteenth Amendment Due Process rights. Absent from Dr. Foster's motion to dismiss, [*14] however, is any discussion of this claim, or why the antipsychotic drugs were given to Lewis against his will. Thus, it appears to the court at this juncture that Lewis can prove a set of facts that would entitle him to relief with respect to this claim. Accordingly, the court will allow this claim to go forward.

3. Whether Lewis has sufficiently stated a claim that Dr. Foster's order to have him restrained and injected with antipsychotic medicines violates his Eighth Amendment right to be free form cruel and unusual punishment

The amended complaint also alleges that although Dr. Foster's report to the Delaware Superior Court stated that Lewis "demonstrated no evidence of a mood disorder or psychosis during his admission to [the] n3 she ordered him strapped down with restraints and injected with psychotropic medicines for disciplinary reasons. (D.I. 10, at 1.) According to Lewis, Dr. Foster's order demonstrates deliberate indifference on her part. (*Id.*) Thus, Lewis alleges that Dr. Foster violated his Eighth Amendment right to be free from cruel and unusual punishment.

n3 This quotation is from Dr. Foster's report that she submitted to the Delaware Superior Court. The report is attached as a non-numbered exhibit to Lewis' amended complaint.

[*15]

The Eighth Amendment of the United States Constitution governs penal measures and prison conditions, and prohibits use of penal measures and existence of conditions which violate civilized standards and concepts of humanity and decency. *See Estelle v. Gamble,* 429 U.S. 97, 102 (1976). In the prison context, however, "[n]ot every governmental action affecting the interest or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers,* 475 U.S. 312, 319-20 (1986). Only those actions that impose an unnecessary and wanton infliction of pain rise to the level of cruel and unusual punishment. *Id.*

Lewis' claims constitute a challenge to his conditions of confinement at the DPC. As such, the court analyzes the claims under the deliberate indifference standard of the Eighth Amendment. Prison officials violate

an inmate's rights under the Eighth Amendment when they act with deliberate indifference or reckless disregard toward an inmate's rights, health or safety, and their conduct is objectively serious, or has caused an objectively serious injury to the inmate. *See Farmer v. Brennan,* 511 U.S. 825, 846-47(1994). [*16] Under this partly objective, partly subjective test, a prison official's conduct is "objectively serious" if it is "incompatible with 'contemporary standards of decency.'" *Carrigan v. Davis*§, 70 F.Supp.2d 448,452 (D.Del. 1999) (citing *Helling v. Mc Kinney,* 509 U.S. 25, 32 (1993)). The deliberate indifference prong of the test is met only if the prison official "knows and disregards an excessive risk to inmate rights, health or safety; the official must both be aware of facts from'which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. The plaintiff must show a sufficiently culpable state of mind which demonstrates an unnecessary and wanton infliction of pain. *Wilson v. Seiter,* 501 U.S. 294 (1991). Mere allegations of negligence do not meet the pleading standards for deliberate indifference. *See Estelle,* 429 U.S. at 105-106.

Here, the amended complaint contains more than mere allegations of negligence. Indeed, Lewis alleges that Dr. Foster acted with deliberate indifference when she disciplined him by ordering [*17] him restrained and injected with medications. Based on these allegations, the court concludes that Lewis may be able to show that Dr. Foster unnecessarily and wantonly inflicted pain on him, thereby exhibiting deliberate indifference to his rights. Because Dr. Foster has not addressed this section 1983 claim in her motion to dismiss, the court cannot conclude at this juncture that Lewis has failed to state a claim against her under the Eighth Amendment. n4

n4 The court will allow Lewis to amend his complaint in order to allege any physical injuries that resulted from Dr. Foster's alleged conduct. The court will discuss its rationale for allowing Lewis to amend in section III.C. below.

4. Whether Lewis has sufficiently stated a claim that Gray used excessive force against him, thereby violating his Eighth Amendment right to be free form cruel and unusual punishment

Gray asserts that the court should dismiss Lewis' claims against him because the complaint fails to include any allegation sufficient to sustain recovery [*18] under 42 U.S.C. § 1983. According to, the motion, Lewis mentions Gray only on page two of his complaint, when describing an altercation among Lewis and several other DPC Staff Members, including Gray. (D.I. 24 P 3.) Gray also asserts that Lewis fails to identify, either overtly or

by implication, any constitutional or statutorily protect right of which Gray deprived him. (*Id.* P 4.) The court cannot agree.

After having read Lewis' amended complaint, the court concludes that it implicitly, if not overtly, alleges a claim under the Eighth Amendment based on the use of excessive force. The "altercation" between Lewis and Gray that the complaint describes concerns Gray forcibly removing of a bag of M&Ms candy from Lewis' hand, and then choking Lewis. (D.I. 10, at 2.) While it is difficult for the court to conclude that the removal of a bag of candy from a prisoner's hand is "excessive," surely a prisoner's claim that he was choked is an allegation of excessive force.

The standard that the court must use to determine whether a state actor's conduct violated the Eighth Amendment is "whether the force was applied in a good faith effort [*19] to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986) (citations omitted). The court must consider the following factors in applying this standard: (1) the need for the application offeree, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) the efforts made to temper the severity of a forceful response. *Davis v. Carroll,* 390 F. Supp. 2d 415, 419 (D. Del. 2005) (citing *Hudson v. McMillian,* 503 U.S. 1, 7(1992)).

Accepting Lewis' allegations as true, the court concludes that his complaint alleges facts sufficient to state an excessive force claim under the Eighth Amendment. As previously explained, Lewis specifically alleges that Gray choked him while three or four other male DPC Staff Members assaulted him with their fists and feet. Gray's motion to dismiss contends only that Lewis has not alleged any deprivation of a constitutional right. In other words, Gray's motion neither mentions nor addresses [*20] any of the above-discussed factors regarding Lewis' excessive force allegation. Accordingly, the court will deny Gray's motion to dismiss at this time.

### C. Whether 42 U.S.C. § 1997e(e) Bars Lewis from Recovery for Alleged Constitutional Violations

Dr. Foster's motion contends that Lewis' complaint alleges no physical injury and, therefore, should be read as one for emotional damages. (D.I. 16 P 9.) n5 Additionally, Dr. Foster contends that 42 U.S.C. § 1997e(e) acts as a complete bar to Lewis' constitutional claims that are premised on emotional injuries.

n5 Gray's motion to dismiss does not address this issue. However, this discussion applies to

Lewis' Eighth Amendment claim against Gray, as it is an alleged constitutional violation.

Section 1997e(e) of the Prison Litigation Reform Act provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injuries [*21] suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Third Circuit has held that section 1997e(e)'s physical injury requirement applies, only to claims for compensatory damages, because "[c]laims seeking nominal or punitive damages are typically not 'for' mental or emotional injury but rather 'to vindicate constitutional rights' or 'to deter or punish egregious violations of constitutional rights,' respectively." *Mitchell v. Horn,* 318 F.3d 523, 533 (3d Cir. 2003) (quoting *Allah v. Al-Hafeez,* 226 F.3d 247, 252 (3d Cir. 2000)). Further, section 1997e(e) does not apply to claims seeking injunctive or declaratory relief *Mitchell,* 318 F.3d at 533-34. Thus, section 1997e(e)'s "physical injury" requirement will not effect any nominal, punitive, or injunctive relief that a plaintiff has requested in his complaint.

Turning to Lewis' complaint, the relief that he requests is twenty million dollars for "pain and suffering," and for the court to "notify the Superior Court that [Dr. Foster's] report cannot be relied on by the doctor herself." (D.I. 10, at 4.) Lewis' [*22] complaint, therefore, requests compensatory damages and injunctive relief. With respect to Lewis' request for compensatory damages, the court agrees with Dr. Foster, and concludes that the complaint does not state a claim for physical injury. However, the court will grant Lewis leave to amend his complaint in order to provide allegations with respect to any physical injuries he received when he was restrained and injected with medicines, as well as when he was choked and assaulted.

Additionally, Lewis has not requested nominal or punitive damages from the defendants. With respect to the former, the court will also grant Lewis leave to amend his complaint to specifically request punitive damages, based on the alleged violations of his Fourteenth and Eighth Amendment rights discussed above. As for the latter, "it is not necessary to allege nominal damages.'" *Allah,* 226 F. 3d at 251 (quoting *Basista v. Weir,* 340 F.2d 74, 87 (3d Cir. 1965)). Thus, at this juncture, Lewis may recover nominal damages to vindicate his constitutional rights, as well as the injunctive relief that he requests. Accordingly, the court will grant in part and deny in part Dr. [*23] Foster's motion to dismiss based on 42 U.S.C. § 1997e(e), as well as grant Lewis leave to amend his complaint in the manner previously discussed.

#### D. Lewis' State Law Claims

1. Whether Lewis has stated a medical negligence claim against Dr. Foster

Lewis alleges that Dr. Foster's report states he received no psychotropic medication during his time at the DPC because he demonstrated no evidence of psychosis or mood disorder. Lewis further alleges, however, that on five or more occasions he was strapped down with four point restraints and injected with drugs. Next to these allegations appears the word "malpractice." (D.I. 2 P IV.) A fair inference the court draws from this language is the allegation that Dr. Foster's order to have him restrained and injected with medicine against his will constitutes medical malpractice. Dr. Foster concedes that the complaint sets forth allegations regarding common law medical malpractice. Nonetheless, Dr. Foster maintains that Lewis' claim must be dismissed because he has not provided an affidavit of merit signed by an expert witness, as required by Del. Code Ann. tit. 18 § 8653. (D.I. 16 P 14.)

Medical [*24] malpractice is a negligence action and is governed by the Delaware Health Care Negligence Insurance and Litigation Act (the "Act"). The Act defines medical negligence as:

> any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient. The standard of skill and care required of every health care provider in rendering professional services or health care to a patient shall be that degree of skill and care ordinarily employed in the same or similar field of medicine as defendant, and the use of reasonable care and diligence.

Del. Code Ann. tit. 18 § 6801(7). When a party alleges medical negligence, Delaware law requires the party to produce expert medical testimony detailing: "(1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury." *Bonesmo v. Nemours Foundation*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted). Specifically, the Act requires [*25] that any complaint alleging medical negligence be accompanied by "[a]n affidavit of merit as to each defendant signed by an expert witness, as defined in § 6854 of this title, and accompanied by a current curriculum vitae of the witness, stating that there are rea-sonable grounds to believe that there has been healthcare medical negligence committed by each defendant." Del. Code Ann. tit. 18 § 8653. In addition, the Act directs the court to refuse to file and docket the complaint if it is not accompanied by an expert affidavit.

Here, Lewis alleges that Dr. Foster committed medical negligence. However, he did not include an affidavit of merit signed by an expert witness with his complaint. As such, the court will grant Dr. Foster's motion to dismiss Lewis' state law medical malpractice claims. *See Jackson v. First Correctional Med.*, 380 F. Supp. 2d 387, 392 n.2 (D. Del. 2005) (citing *Del. Code Ann. tit. 18 § 6853*).

2. Whether Lewis has Stated a Claim for Civil Assault and Battery Under Delaware Law

Lewis' amended complaint alleges that Gray choked him, while three or four other DPC Staff Members assaulted him with their fists and feet. [*26] (D.I. 10, at 2.) By implication, the complaint alleges that these acts constituted a battery. Lewis' statements that Dr. Foster ordered him to be administered medicine against his will also allege a claim for battery. The state of Delaware has adopted the definition of battery from the Restatement (Second) of Torts, which states "[a]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person . . . and (b) a harmful contact with the person of the other directly or indirectly results." *Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995) (quoting *Restatement (Second) of Torts § 18* (1965)); *see* W. Page Keeton, et al., Prosser and Keeton on Torts § 9, at 39 (5th ed. 1984) ("A harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or third person to suffer such a contact, or apprehension that such contact is imminent, is a battery."). Lack of consent is an essential element of battery. *Brzoska, 668 A.2d at 1360.*

In the present case, Lewis alleges that he was choked by Gray and beaten by several [*27] DPC Staff Members without his consent. This allegation is sufficient to state a claim for battery. Gray's motion to dismiss addresses only whether Lewis has stated a claim against him under *42 U.S.C. § 1983*. That is, Gray's motion is silent with respect to whether Lewis has appropriately pled any state law claims against him. Accordingly, the court will not dismiss Lewis' claim against Gray for battery.

Further, Lewis alleges that Dr. Foster was responsible for the administration of medication to him without his consent. Dr. Foster recognizes that Lewis has alleged a claim for battery, but contends that the court should dismiss the claim as it pertains to her actions because Lewis does not allege that she ever made any physical

contact with him. (D.I. 16 P 15.) The court is not persuaded.

The definition of battery under Delaware law does not require physical contact between the plaintiff and the defendant. The definition requires only an *act intending to cause harmful or offensive contact* with a plaintiff, and harmful or offensive contact as a direct or indirect result. According to Lewis, Dr. Foster ordered DPC Staff Members to administer [*28] medicine to him without his consent. Thus; Dr. Foster committed an act intending to cause offensive contact. As a result of Dr. Foster's order, the medicine was administered to Lewis. That is, the harmful or offensive contact that Lewis complains about was a direct result of Dr. Foster's order. Thus, Lewis has alleged sufficient facts to state a claim for battery against Dr. Foster.

Dr. Foster also relies on Del. Code Ann. tit. 11 § 468(3), (5), and (7) as a ground supporting dismissal of Lewis' battery claims. Dr. Foster contends that a person in her position, who is responsible for the safety of Lewis, the staff and other DPC patients, is permitted to order the use. of force necessary to safeguard the welfare of the patient, staff and other patients. (D.I. 16 P 16.) The court disagrees. Del. Code Ann. tit. 11 § 468 sets forth several defenses to battery. However, it explicitly states that the defenses provided are defenses to *criminal* battery, not civil battery. Dr. Foster concedes this fact in her motion to dismiss, but contends that "since Lewis' complaint may be alleging common law battery[, she] can avail [*29] herself of the[] statutory defenses." (*Id.*) Remarkably, Dr. Foster offers no explanation why statutory defenses to criminal battery are applicable to a claim for civil battery. Moreover, absent from Dr. Foster's motion is any citation to a civil battery case in which a Delaware court (federal or state) applied Del. Code Ann. tit. 11 § 468(3), (5), or (7). Further, after its own search of federal and Delaware case law, the court is unable to find a civil battery case in which Del. Code Ann. tit. 11 § 468(3), (5), or (7) is discussed. Based on these findings, the court is unwilling to apply defenses that are reserved to resist criminal battery claims to a civil battery claim and, therefore, will deny Dr. Foster's motion to dismiss Lewis' battery claim.

### E. Motions to Amend

On July 7, 2005, Lewis filed a motion requesting permission to amend the complaint ("First Motion") (D.I. 19). On August 4, 2005, Lewis filed another document, titled "Additional Points to Support Motion Requesting Permission to Amend Complaint" ("Second Motion") (D.I. 20). The court construes both documents as motions to amend. The motions request the [*30] court to amend the complaint to include new claims and additional defendants. The court will address these requests in turn.

Lewis First asks the court to amend his complaint by adding new claims in order to "cure deficiencies" in his prior pleadings. n6 Rule 15 of the Federal Rules of Civil Procedure permits a. party. to amend the complaint by leave of court or by written consent of the adverse party. Leave to amend a complaint should be "freely given when justice so requires." FED. R. CIV. P. 15(a). The court has discretion to deny leave to amend when there exists undue delay, bad faith; dilatory motive or undue prejudice to the opposing party, or when the amendment would be futile. *See Foman v. Davis, 371 U.S. 178, 182(1962); In re Burlington Coal Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)* Specifically, an amendment would be futile for purposes of Rule 15(a) if, accepting all the well pleaded facts as true, the amended complaint fails to state a claim upon which relief may be granted. *See Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington, 646 F. Supp. 118, 120 (D. Del. 1986).* [*31] In other words, "the court should apply the same standards as are applied to Rule 12(b)(6) motions to dismiss." *Id.*

n6 Lewis' First Motion requests the court to include the following claims: (1) First Amendment freedom of religion and freedom of speech violations; (2) Fourth Amendment violations for unreasonable searches and seizures; (3) Fifth Amendment due process violations; (4) Sixth Amendment speedy trial violations; (5) Eighth Amendment violations for cruel and unusual punishment; (6) Fourteenth Amendment due process violations; (7) statements of facts of unconstitutional treatment; (8) relief in regard to the petition of habeas corpus filed in state court; (9) a request for a jury trial; (10) a request for appointment of counsel; (11) a request for declaratory judgment; (12) a statement of physical injury; (13) a statement of emotional damage; (14) a request for expert psychiatric witnesses; (15) a claim for medical negligence; (16) a request for an expert physician; (17) a civil rights statute; (18) several statutory statutes; (19) statements that the plaintiff has been subjected to extended incarceration due to constitutional violations; (20) a statement of atypical and significant hardships as a result of being assaulted confined and restrained with four point restraints; (21) claims for the common law torts of assault, battery, libel and slander; (22) claims for several criminal offenses, such as assault, kidnapping, possession of a deadly weapon during the commission of a felony, attempted murder, and robbery; and (23) a request for polygraph testing. (D.I. 19 PP 1-20, 22-24.) Lewis' Second Motion asks the court to allow him to in-

clude the following: (1) specific details in regard to Dr. Foster and other persons he seeks to add as defendants "never" offering him a chance before violating his civil rights; (2) valid factual documents that support the fact that Dr. Foster and other persons he seeks to add as defendants conspired to violate his civil rights; (3) detailed statements of atypical and significant hardships; (4) a request for liens on the defendants' assets; (5) specific details as to how each defendant violated his civil rights, as well as which rights each violated; (6) a civil cover sheet JS 44; and (7) a request for preliminary injunction. (D.I. 20 PP 2-8)

[*32]

In the present case, there is no evidence of undue delay, bad faith, dilatory motive or undue prejudice to the defendants. However, even affording Lewis' requested claim additions the most liberal construction, it appears "beyond doubt that [he] can prove no set of facts in support of his claim[s] that would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106 (1976).* Lewis has not included allegations regarding any of the claims he seeks to add. Rather, with respect to his constitutional claims, he merely writes the number and title of the amendment for which he seeks to allege violations, and states that he would like to amend his complaint to include a violation of that amendment. n7 Further, with respect to his other claims, Lewis simply states he would like "to include" or "to request," and then lists his request. n8 Lewis does not provide any other information. Nor does he state the identity of the defendants involved in the violations. In fact, Lewis states in the Second Motion that he would like to amend the complaint "to include specific details of how each defendant violated [his] civil rights, as well as to specify exactly what right(s) they [*33] violated collectively or individually, under the color of law." (D.I. 20 P 6.) Given the foregoing statement, it is clear to the court that the amended complaints fail to provide "a short and plain statement of the claims showing that [Lewis] is entitled to relief. . . ." Fed. R.. Civ. P. 8(a); *see Green v. Howard R. Young Corr. Inst., 229 F.R.D. 99, 105 (D. Del. 2005).* Accordingly, both of Lewis' motions to amend fail to state claims upon which relief can be granted against the defendants and are, therefore, futile. *See Fed. R. Civ. P. 12(b)(6).* As such, the court will deny Lewis' motions to amend, without prejudice, insofar as they seek to add new claims.

n7 For example, the first numbered paragraph of Lewis' First Motion states that he would like "to include violations against the plaintiff's

right to freely exercise religion and freedom of speech; 1st Amendment U.S.C." (D.I. 19 P 1.)

n8 Lewis' claims include requests for appointment of counsel, expert psychiatric witnesses, and an expert physician. These "claims" are not allegations against any of the defendants. Instead, they are requests that are properly raised in motions to the court, in order to allow the defendants an opportunity to address them.

[*34]

Lewis' motions also seek to add new defendants to his claims under 42 U.S.C. § 1983. n9 As previously discussed in the context of Dr. Foster's and Gray's motions to dismiss, in order for Lewis to state a section 1983 claim against those he seeks to add as defendants, he must show that (1) the alleged defendants deprived him of a constitutional right; and (2) the alleged defendants were acting under the color of state law. 42 U.S.C. § 1983; *see, e.g., Groman v. Tp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).* Additionally, Lewis must allege and prove a causal connection between the defendants and the alleged wrongdoing in order to recover. *Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).* A plaintiff establishes a causal connection by showing that the defendant was personally involved in the alleged wrongs through allegations of either personal direction or actual knowledge and acquiescence. *Id.* Finally, a plaintiff must allege personal involvement with particularity, stating the time, place, and persons responsible for the violations. *Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980).* [*35]

n9 The First Motion seeks to add the following defendants: Nurse Helen, Pat Riley, Rose, Karen Chamberlin, Diane Stachowski, Dave Moffitt, Mark Diggs, Florence Scott Cobbs, "Caucasian" Mr. Johnson, Sagil, Gloria Banks, "African American" Mr. Johnson, Dr. Kathryn Sheneman, and Dr. Eugene Lopez. Lewis' Second Motion seeks to add some of the same people as defendants, as well as Michael S. Talmo DPC Director, Head Nurse Curtis Cornish, Lance Sapers, C. Oats, Dr. Ovreishi, Tanya Wilson, Donna Lawrence, Pat Riley, J. Conyer, Margaret Wilson, and District Attorney Brian J. Robertson.

Here, each motion to amend contains a laundry list of names. However, Lewis alleges only that "Caucasian" Mr. Johnson ("Johnson One"), "African American" Mr. Johnson ("Johnson TWO"), Lance Sapers ("Sapers"), and Dave Moffitt ("Moffitt") were personally involved in the incidents alleged in his amended complaint. The court

2006 U.S. Dist. LEXIS 45819, *

will address these allegations below. With respect to the other people listed as defendants, Lewis has failed to indicate [*36] how they were personally involved in any deprivation of his constitutional rights. More important, Lewis has not alleged that any of them deprived him of a constitutional right. Thus, Lewis has not satisfied one of the essential elements of successfully pleading a section 1983 claim against those defendants. Accordingly, thei court will deny his motion to amend, as it pertains to adding the following defendants: Nurse Helen, Pat Riley, Rose, Karen Chamberlin, Diane Stachowski, Mark Diggs, Florence Scott Cobbs, Sagil, Gloria Banks, Dr. Kathryn Sheneman, Dr. Eugene Lopez, Michael S. Taimo DPC Director, Head Nurse Curtis Cornish, C. Oats, Dr. Ovreishi, Tanya Wilson, Donna Lawrence, J. Conyer, Margaret Wilson, and District Attorney Brian J. Robertson.

As previously mentioned, Lewis has included allegations with respect to Johnson One, Johnson Two, Sapers, and Moffitt. Specifically, the First Motion alleges that Johnson One and Johnson Two assisted several nurse assistants in assaulting, confining, and restraining Lewis on June 21, 2004, at eleven o'clock at night. (D.I. 19 P 21.) The Second Motion alleges that Johnson Two, Sapers, and Moffitt "are the,three men who were involved [*37] with the incident with Mr. Gray." (D.I. 20 P 1.) The "Gray incident" is described in the amended complaint (D.I. 10), and discussed above, as occurring on or about Jurie 13, 2004, at the DPC. (D.I. 10, at 2.) Because Lewis has stated the time (i.e. June 13, 2004 and June 21, 2004), place (i.e. DPC), and persons responsible (i.e. Johnson One, Johnson Two, Sapers, and Moffitt) for the constitutional violations he alleges, the court concludes that he has sufficiently stated section 1983 claims. Therefore, the court will grant Lewis' motion to amend, as it pertains to adding Johnson One, Johnson Two, Sapers, and Moffitt as defendants.

Dated: July 5, 2006

/s/ Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT C

LEXSEE

**BENITEC AUSTRALIA LTD., Plaintiff, v. NUCLEONICS, INC., Defendant.**

**Civil Action No. 04-0174 JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2005 U.S. Dist. LEXIS 22008**

**September 29, 2005, Decided**

**COUNSEL:** [*1] John W. Shaw, Esquire, Glenn C. Mandalas, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware. Of Counsel: Marc R. Labgold, Esquire, Kevin M. Bell, Esquire, and Scott A. M. Changers, Esquire of PATTON BOGGS LLP, McLean, Virginia; Richard J. Oparil, Esquire of PATTON BOGGS LLP, Washington, District of Columbia, for Plaintiff.

Paul E. Crawford, Esquire of CONNOLLY, BOVE, LODGE & HUTZ, Wilmington, Delaware. Of Counsel: Dennis J. Mondolino, Esquire and Jason A. Lief, Esquire of MORGAN LEWIS & BOCKIUS LLP, New York, New York, for Defendant.

**JUDGES:** FARNAN, District Judge.

**OPINIONBY:** Joseph J Farnan Jr.

**OPINION:**

### MEMORANDUM OPINION

September 29, 2005
Wilmington, Delaware

Joseph J Farnan Jr.
**FARNAN, District Judge**

Pending before the Court is the Motion For Voluntary Dismissal Without Prejudice (D.I. 108) filed by Plaintiff, Benitec Australia, Ltd. ("Benitec"). n1 For the reasons discussed, the Court will grant Benitec's motion.

---

n1 Defendant Nucleonics, Inc. filed an Unopposed Motion And Supporting Memorandum To File A Surreply In Opposition To Plaintiff's Motion For Voluntary Dismissal Without Prejudice (D.I. 117). The Court will grant the Motion, and the Surreply will be deemed filed.

---

[*2]
### BACKGROUND

The parties are engaged in conducting research and developing technologies to create therapeutics to treat disease using gene silencing technologies. On March 22, 2004, Benitec filed its Complaint (D.I. 1), alleging that Defendant, Nucleonics, Inc. ("Nucleonics"), infringes U.S. Patent No. 6,573,099 ("the '099 patent").

On February 16, 2005, Nucleonics files a Motion To Amend Its Answer to add seven declaratory judgment counterclaims of non-infringement, patent invalidity under 35 U.S.C. § 102, patent invalidity under 35 U.S.C. § 103, patent invalidity under 35 U.S.C. § 112(1), patent invalidity under 35 U.S.C. § 112(2), patent invalidity under 35 U.S.C. § 116, and patent unenforceability. (D.I. 91). On September 14, 2005, the Court issued an Order granting Nucleonics' Motion To Amend Its Answer (D.I. 119).

The parties have not yet completed discovery.

### PARTIES' CONTENTIONS

By its motion, Benitec contends that this case should be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a) [*3] because of a substantive change in the law with regard to the scope of the exemption set forth in 35 U.S.C. § 271(e)(1). Specifically, Benitec contends that the recent decision of the United States Supreme Court in Merck KGAA v. Integra Lifesciences I. Ltd., 162 L. Ed. 2d 160, 125 S. Ct. 2372 (2005), had the effect of negating the case or controversy before the Court with regard to infringement of Benitec's patents and, therefore, dismissal is warranted.

In response, Nucleonics contends that the Court retains jurisdiction to decide its counterclaims for invalidity, unenforceability, and non-infringement because Nucleonics has a reasonable apprehension of being sued by Benitec in the future. Nucleonics argues that, because

Benitec filed a lawsuit for patent infringement against Nucleonics and Benitec has not provided Nucleonics with a covenant not to sue for past, present, and future acts, jurisdiction over the declaratory judgment counterclaims exists.

## LEGAL STANDARD

When a plaintiff moves for a dismissal without prejudice under Rule 41(a)(2), the decision to dismiss with prejudice or without is left to the discretion of the court. Buse v. Vanguard Group of Inv. Cos., 1994 U.S. Dist. LEXIS 3978, No. 91-3560, 1994 WL 111359, [*4] at *2 (E.D. Pa Apr. 1 1994). Specifically, Rule 41(a)(2) provides: "An action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant . . . the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." Fed. R. Civ. P. 41(a)(2) (2004). A Rule 41(a)(2) motion "will be determined after attempting to secure substantial justice to both parties." DuToit v. Strategic Minerals Corp., 136 F.R.D. 82 (D. Del. 1991) citing Lunn v. United Aircraft Corp., 26 F.R.D. 12, 14 (D. Del. 1960). Moreover, while considering the legitimate interests of both parties, the Court must bear in mind that a plaintiff's motion should be granted absent substantial prejudice to the defendant. Id. 1994 U.S. Dist. LEXIS 3978, [WL] at 10.

## DISCUSSION

The Court concludes that: dismissing Benitec's action would not cause substantial prejudice to Nucleonics [*5] because no actual controversy supports jurisdiction under the Declaratory Judgment Act for Nucleonic's declaratory judgment claims against Benitec.

Nucleonics objects to dismissing Benitec's action without prejudice because Nucleonics contends that Benitec's action "brought a public cloud of uncertainty" over Nucleonics. (D.I. 110 at 2.) Thus, Nucleonics contends that Benitec should not now be allowed to leave the playing field, keeping its patent safe from scrutiny with regard to invalidity or unenforceability, while continuing to taint Nucleonic's current and future business and technology with the threat of another lawsuit. Nucleonics argues that the Declaratory Judgment Act, 28 U.S.C. § 2201, permits the Court to independently adjudicate Nucleonics' counterclaims.

The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction over an action for a declaratory judgment." EMC Corp. v. Norand Corp., 89 F.3d 807, 810 (Fed. Cir. 1996). Nucleonics has the burden of establishing the existence of an actual case or controversy. See Cardinal Chemical Co. v. Morton Intern., Inc., 508 U.S. 83, 95, 124 L. Ed. 2d 1, 113 S. Ct. 1967 (1993). [*6] When a party has actually been charged with infringement of a patent, there is, necessarily, a case or controversy adequate to support jurisdiction of a counterclaim pursuant to the Declaratory Judgment Act. Id. at 96. Furthermore, a counterclaim questioning the validity or enforceability of a patent raises issues beyond the initial claim for infringement. Id. The issue before the Court, then, is whether an actual controversy sufficient to support the Court's jurisdiction over Nucleonics' declaratory judgment counterclaims continues to exist if Benitec's patent infringement claim is dismissed.

Benitec contends that dismissing its infringement claim divests the Court of jurisdiction to hear the counterclaims. However, a number of courts have held that withdrawing a charge of infringement will not necessarily preclude the existence of an actual controversy, especially if, as here, the withdrawal occurs after the filing of the declaratory judgment action. See, e.g., C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 881 (Fed. Cir. 1983); Societe de Conditionnement v. Hunter Eng'g, 655 F.2d 938 (9th Cir. 1981). In turn, Nucleonics contends [*7] that, because Benitec has refused to enter into a covenant not to sue for enforcement of the '099 patent against Nuceonics at a later time, an actual controversy necessarily exists. However, a patentee's refusal to promise not to enforce the patent, while "relevant to the [actual controversy] determination," is "not dispositive." BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 980 (Fed. Cir. 1993).

In the alternative, Nucleonics contends that it has a reasonable apprehension of suit because Benitec has already sued Nucleonics and others for patent infringement, Benitec has not promised not to assert the '099 patent against Nucleonics in the future, and Benitec has requested a voluntary dismissal of its action without prejudice. In reply, Benitec contends that Nucleonics has nothing to fear because Nucleonics' research activities are exempt from infringement liability pursuant to § 271(e)(1) and the Supreme Court's decision in Integra.

The test for determining whether an actual case or controversy exists in a declaratory judgment action involving patents is two-pronged. First, the defendant's conduct must have created on the part of the plaintiff a reasonable [*8] apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the product or have prepared to produce that product. Indium Corp. v. Semi-Alloys, Inc., 781 F.2d 879 (Fed. Cir. 1985).

With regard to the first prong, the Court concludes that Nucleonics has demonstrated a reasonable apprehension of suit. The factual background in this case is such that Nucleonics could be concerned that Benitec would, at some time, file a patent infringement suit against it. By suing Nucleonics and alleging that Nucleonics' technology is now covered by the Benitec's patent, Benitec has engaged in a course of conduct that shows a willingness to protect that technology. See, e.g., C.R. Bard v. Schwartz, 716 F.2d 874, 880-81 (Fed. Cir. 1983); Int'l Medical Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc., 787 F.2d 572, 575, 229 U.S.P.Q. 278, 281 (Fed. Cir. 1986)

With regard to the second prong, production or preparation of a product. Nucleonics contends that its entire research effort is devoted to the RNAi area of technology and its [*9] activities will ultimately leave the safe harbor created by Integra. Nucleonics further alleges that it anticipates beginning research on livestock diseases, which are unprotected by the safe harbor. In response, Benitec argues that future infringement is not ripe for adjudication because Benitec's product may never be approved by the FDA or may be approved in a form that does not implicate the claims of the '099 patent. (D.I. 115 at 18.)

The declaratory judgment plaintiff carries the burden of proving the existence of facts underlying its allegations of the existence of an actual controversy. Jervis B. Webb Co., 742 F.2d 1388, 1399 (Fed. Cir. 1984). On the record before it, the Court concludes that Nucleonics has not demonstrated that it has produced or has prepared to produce a product that would be the target of an infringement lawsuit by Benitec. At the time this lawsuit was filed, Nucleonics was several years away from obtaining FDA approval. Further, as argued by Benitec, there is no certainty that any product approved by the FDA would be the same product that was in clinical trials at the time this lawsuit was filed. And finally, Nucleonics has adduced [*10] no evidence that it has undertaken sales or marketing activity with regard to any product. For these reasons, he Court concludes that any threat of litigation that may have existed now lacks sufficient immediacy and reality to support declaratory judgment jurisdiction.

**CONCLUSION**

In the circumstances presented here, the Court concludes that no actual controversy supports jurisdiction under the Declaratory Judgment Act for Nucleonic's declaratory judgement claims against Benitec with regard to the '099 patent. Accordingly, the Court will grant Benitec's Motion For Voluntary Dismissal Without Prejudice (D.I. 108).

An appropriate Order will be issued.

**ORDER**

At Wilmington, this 29th day of September 2005, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that:

1. The Motion For Voluntary Dismissal Without Prejudice (D.I. 108) filed by Plaintiff, Benitec Australia, Ltd. is **GRANTED.**

2. Defendant Nucleonics, Inc.'s Unopposed Motion And Supporting Memorandum To File A Surreply in Opposition To Plaintiff's Motion For Voluntary Dismissal Without Prejudice (D.I. 117) is **GRANTED.**

3. The Surreply attached as Exhibit [*11] 1 to the Unopposed Motion And Supporting Memorandum To File A Surreply In Opposition To Plaintiff's Motion For Voluntary Dismissal Without Prejudice (D.I. 117) is deemed filed.

Joseph J. Farnan Jr.

United STATES DISTRICT JUDGE

# EXHIBIT
# D

LEXSEE

**HEWLETT-PACKARD COMPANY, Plaintiff, v. ACUSON CORPORATION, Defendant.**

**No. C-93-0808 MHP**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**1993 U.S. Dist. LEXIS 6449**

**May 5, 1993, Decided**
**May 5, 1993, Filed; May 6, 1993, Entered**

**JUDGES:** [*1] PATEL

**OPINIONBY:** MARILYN HALL PATEL

**OPINION:**

### MEMORANDUM AND ORDER

Plaintiff Hewlett-Packard Company ("HP") brought this action on March 8, 1993 against defendant Acuson Corporation ("Acuson") for allegedly infringing upon United States patent No. 4,140,022 (" '022"). Prior to this action, Acuson submitted to the United States Patent and Trademark Office ("PTO") a petition for reexamination of the '022 patent pursuant to 35 U.S.C. § § 301-07. The matter is presently before the court on Acuson's motion to stay litigation pending the reexamination.

Having considered the submissions and arguments of the parties, and for the following reasons, the court GRANTS Acuson's motion to stay litigation pending reexamination.

### BACKGROUND

While working for HP, Samuel H. Maslak ("Maslak") discovered an ultrasonic imaging invention. Pursuant to an employment agreement, Maslak (1) assigned to HP all of his right, title and interest in and to his invention, (2) expressly authorized HP to apply for and obtain a patent for the invention and (3) agreed to assist in obtaining such patent. Opp. to Mot. for Stay, Ex. 3.

On December 20, 1977 HP filed a United States patent application [*2] covering Maslak's invention, identifying Maslak as the inventor and HP as the assignee. McElhinny Dec., Ex. B at 1. A formal Notice of Allowance for the '022 patent issued on August 31, 1978, Opp.

to Mot. for Stay, Ex. 7, and the patent issued on February 20, 1979. McElhinny Dec., Ex. B at 1. Maslak gave notice of his resignation from HP on November 20, 1978. Opp. to Mot. for Stay, Ex. 8.

In September 1981, Maslak co-founded Acuson and has been President, Chief Executive Officer and a director since that date. Oakley Dec., Ex. 2 at 30. Acuson introduced its first medical diagnostic imaging system in 1983. Id. P 3.

By letter dated June 1, 1990, HP contacted Acuson regarding possible infringement of its '022 patent. Id. P 2. Acuson filed a Request for Reexamination of the '022 patent with the PTO on March 3, 1993. McElhinny Dec., Ex. D. Grounds for reexamination raised by Acuson include anticipation, double patenting and obviousness. Id., Ex. D at 2-3. Acuson claims that the references cited to in its Request for Reexamination were not cited to or considered by the PTO during the original '022 patent proceedings. Id., Ex. D at 4. On March 8, 1993 HP filed this [*3] action alleging that Acuson's medical diagnostic systems infringe upon the '022 patent. Acuson now moves for a motion staying the litigation pending reexamination by the PTO.

### LEGAL STANDARD

This circuit has held that the district court has the authority to stay actions in order to:

> control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the

competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

Filtrol Corp. v. Kelleher, 467 F.2d 242, 244 (9th Cir. 1972), cert. denied, 409 U.S. 1110, 34 L. Ed. 2d 691, 93 S. Ct. 914 (1973) [*4] (citations omitted). Ordinarily, courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers. See Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir.), cert. denied, 464 U.S. 935, 78 L. Ed. 2d 310, 104 S. Ct. 343 (1983). n1 The purpose of the reexamination procedure is to eliminate the need for a trial if the claim is canceled or to provide the district court with the expert view of the Patent Office if the claim survives the reexamination. Id. Additionally, there is clear congressional intent to maximize efficiency and reduce cost in this regard; thus, district courts often stay patent proceedings pending reexamination. See, e.g., Ingro v. Tyco Industries, Inc., 227 U.S.P.Q. (BNA) 69, 71 (N.D. Ill. 1985) ("legislative history indicates Congress . . . approved of courts liberally granting stays within their discretion."); Digital Magnetic Systems, Inc., v. Ansley, 213 U.S.P.Q. (BNA) 290 (W.D. Okla. 1982) ("Congress enacted the reexamination [*5] procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."). n2

n1 See also, Grayling Industries v. GPAC, Inc., 1991 U.S. Dist. LEXIS 16750, 19 U.S.P.Q.2D (BNA) 1872, 1873 (N.D. Ga. 1991); Brown v. Shimano American Corp., 18 U.S.P.Q.2D (BNA) 1496 (C.D. Cal. 1991).

n2 For more detailed information in support of a stay of patent proceedings pending reexamination, see Teradyne, Inc. v. Hewlett-Packard Company, Civil Action No. C-91-0344 MHP (Memorandum and Order, Jan. 7, 1993), at 16-20.

DISCUSSION

During oral argument, HP admitted that it was on notice that Acuson might be infringing its '022 patent as early as 1983. While the court applauds HP's efforts to settle its dispute with Acuson through means other than litigation, HP's ten year delay in seeking to protects its patented interests weighs heavily against denying Acuson's motion for stay. n3 Indeed, the first record [*6] of correspondence with Acuson concerning patent infringement is dated June 1, 1990. Oakley Dec. P 2. The record also shows that HP did not seek to enforce its patent until after Acuson had filed its Request for Reexamination of the '022 patent. The court finds that these combined factors compel a grant of Acuson's request for a stay pending the PTO proceedings.

n3 The present action is brought with only three years remaining in the life of the patent.

Moreover, the court is not persuaded by HP's assignor estoppel argument opposing Acuson's motion for stay. Acuson alleges that reexamination of patent '022 will result in an amendment or cancellation of the patent, thus streamlining the current litigation. Specifically, Acuson argues that HP failed to disclose to the PTO, during the original '022 patent proceedings, evidence of a patent previously issued to HP, n4 which would bear upon the patentability of the '022 patent. n5 Acuson urges that the technical nature of both the prior art and the '022 patent dictate [*7] that this court issue a stay so that the PTO's expertise can be brought to bear in assessing this question and in determining whether or not the '022 may be narrowed, amended or invalidated.

n4 Acuson alleges that the '229 is also owned by HP and was prosecuted by the same attorney as the '022.

n5 Acuson bolsters this claim by arguing that during the prosecution of the German equivalent of '022, Siemans Corporation cited the '229 against the '022. Acuson states that HP amended and narrowed claim 1 of the '022 patent as a result.

HP, on the other hand, opposes a stay of the present litigation. HP argues that Acuson is barred under the doctrine of assignor estoppel, as a matter of law, from alleging patent invalidity or unenforceability as a defense to the underlying infringement action. In support of this

proposition, HP cites Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1224 (Fed. Cir.), cert. dismissed, 487 U.S. 1265 (1988):

[*8]   Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity.  The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor. n6

Diamond, 848 F.2d at 1224. Therefore, HP urges, Acuson's motion for stay pending reexamination for invalidity or unenforceability is without merit.

n6 In Lear, Inc. v. Adkins, 395 U.S. 653, 668-71, 23 L. Ed. 2d 610, 89 S. Ct. 1902 (1969), the Supreme Court abolished as inconsistent with federal patent and antitrust policy the doctrine that a licensee was estopped from contesting the validity of a patent. However, the doctrine that an assignor was estopped from contesting the validity of a patent was not addressed by the Court. As a result, it remained unclear whether the rule of Lear should also be applied to assignor estoppel. As late as 1972, the rule of this circuit was that the Lear rule should be applied. See Coastal Dynamics Corp. v. Symbolic Displays, Inc., 469 F.2d 79 (9th Cir. 1972) (Lear dictates abolition of assignor estoppel).  However, the passage of 29 U.S.C. § 1295 gave exclusive jurisdiction to the Federal Circuit on appeals from district court decisions involving patent law under 28 U.S.C. § 1338. And, in 1988, the Federal Circuit found that the rule of Lear did not apply to assignor estoppel, distinguishing assignor estoppel from licensee estoppel. See Diamond, 848 F.2d at 1224 (assignor estoppel available to bar invalidity defense in infringement proceedings).

[*9]
Although HP's argument may apply as a litigation strategy in the underlying infringement action, is not entirely persuasive on the motion for stay. n7 In fact, for the following reasons, this court finds that a stay in this action will "promote economy of time and effort for itself, for counsel, and for [the] litigants." Filtrol, 467 F.2d at 244.

n7 Whether HP has met all of the equitable requirements to use assignor estoppel to bar a defense of invalidity by Acuson in the infringement action is not before the court. Rather, the court, at this juncture, is concerned only with Acuson's motion for stay. While HP's intended use of assignor estoppel may bear upon the court's determination of stay, it is not dispositive.

First, Diamond indicates that the doctrine of assignor estoppel is not an all or nothing bar to an assignor's invalidity defense in an infringement proceeding. 848 F.2d at 1226. Diamond recognizes an "accommodation" to the assignor estoppel [*10]  doctrine which may frustrate the use of estoppel to bar a defense of invalidity in a patent infringement case. The "accommodation" was carved out by Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 350-53, 69 L. Ed. 316, 45 S. Ct. 117 (1924).

"To the extent that [the party claiming infringement] may have broadened the claims in the patent applications (after the assignments) beyond what could be validly claimed in light of the prior art, Westinghouse may allow appellants to introduce evidence of prior art to narrow the scope of the claims of the patents, which may bring their accused devices outside the scope of the claims of the patents in suit."

Diamond, 848 F.2d at 1226 (citing Westinghouse, 266 U.S. at 350). Thus, the reexamination of the '022 will, more likely than not, simplify the issues, proof, and questions of law relating to this "accommodation," see Filtrol, 467 F.2d at 244, and expedite the infringement litigation by clarifying whether HP's claim to assignor estoppel may prevail in the infringement litigation, or will be frustrated by the "accommodation".  [*11]

Second, as Acuson correctly points out, assignor estoppel is an equitable doctrine. "The primary consideration in [] applying the doctrine is the measure of unfairness and injustice that would be suffered by the assignee if the assignor were allowed to raise defenses of patent invalidity. Our analysis must be concerned mainly with the balance of equities between the parties." Diamond, 848 F.2d at 1225; accord, Carroll Touch v. Electro Mechanical Systems, Inc., 779 F. Supp. 101, 103 (C.D. Ill. 1991) (Diamond did not create a mechanical checklist for application of assignor estoppel, the court must still consider the equities involved in applying the doctrine).

1993 U.S. Dist. LEXIS 6449, *

Therefore, Acuson's claim that HP's conduct before the PTO was inequitable and fraudulent in reference to the original '022 patent proceeding may very will bar HP from relying on the doctrine of assignor estoppel during the infringement litigation. See Shamrock Technologies v. Medical Sterilization, Inc., 903 F.2d 789, 795 (Fed. Cir. 1990) ("in a proper case general principles of equity may preclude use of assignor estoppel to bar [*12] a viable equitable defense arising from post-assignment events"); accord, Buckingham Prods. Co. v. McAleer Mfg. Co., 108 F.2d 192, 195 (6th Cir. 1939); see also, Medical Designs, Inc. v. Medical Technology, Inc., 786 F. Supp. 614, 618 (N.D. Tex. 1992) (application of assignor estoppel barred when party seeking patent proceeded without calling to the attention of the PTO material prior art).

This second factor weighs heavily in favor of staying the litigation pending the PTO's reexamination of the '022 patent. In the event that a trial court should bar HP from using assignor estoppel after weighing the equities, the reexamination process, having possibly narrowed or eliminated some of the infringement claims, could greatly increase the efficiency of the litigation process. See Gould, 705 F.2d at 1342.

Therefore, this court finds that the possible hardship to HP, including delay of injunctive relief, is outweighed by the orderly cause of justice measured in terms of the simplification of issues, proof, and questions of law which are expected to result from the stay. n8 Filtrol, 467 F.2d at 244; [*13] see also Gould, 705 F.2d at 1342.

n8 HP claims no other substantial hardship other than the delay in obtaining injunctive relief based on a finding that Acuson has infringed the '022 patent. The court finds that the stay involved is not of such a protracted or indefinite period as to render its issuance an undue hardship. The fact that the life of the patent may expire before the stay is up is of no moment; other remedies besides injunctive relief still remain available to HP.

CONCLUSION

For all the foregoing reasons, Defendant's motion for a stay of litigation pending the later of (1) the decision by the United States Patent and Trademark Office on Defendant's request for reexamination of U.S. Letter Patent N. 4,140,022 ( '022), or (2) the conclusion of the reexamination proceedings is GRANTED.

IT IS SO ORDERED.

Dated: MAY 5 - 1993

MARILYN HALL PATEL

United States District Judge

# EXHIBIT
# E

LEXSEE

**ALLOC, INC., a Delaware corporation, et al., Plaintiffs, v. UNILIN DECOR N.V., a Belgian company, et al., Defendants.**

**Civil Action No. 03-253-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2003 U.S. Dist. LEXIS 11917**

**July 11, 2003, Decided**

**DISPOSITION:** [*1] Defendants' motion to stay litigation granted. Plaintiffs' motion to strike portions of answer and complaint dismissed, without prejudice.

**COUNSEL:** For Alloc Inc, Berry Finance NV, Valinge Aluminium AB, PLAINTIFFS: Francis Digiovanni, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Unilin Decor NV, Quick-Step Flooring Inc, DEFENDANTS: Richard L Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Unilin Decor NV, COUNTER-CLAIMANT: Richard L Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Unilin Decor NV, Quick-Step Flooring Inc, COUNTER-CLAIMANTS: David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE USA.

For Alloc Inc, Berry Finance NV, Valinge Aluminium AB, COUNTER-DEFENDANTS: Francis Digiovanni, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On March 5, 2003, Alloc, Inc. ("Alloc"), Berry Finance N.V. ("Berry"), and Valinge [*2] Aluminum AB, ("Valinge") (collectively "the plaintiffs") filed a complaint against Unilin Decor, N.V. ("Unilin") and Quick-

Step Flooring, Inc. ("Quick-Step") (collectively "the defendants") alleging infringement of U.S. Patent No. 6,516,579 ("the '579 patent"). The '579 patent is the latest in a series of continuation patents that include U.S. Patent Nos. 5,706,621 ("the '621 patent"), 5,860,267 ("the '267 patent"), 6,023,907 ("the '907 patent"), and 6,182,410 ("the '410 patent").

The '621 patent is currently undergoing reexamination in the United States Patent and Trademark Office ("PTO"). Additionally, the Federal Circuit is considering infringement issues with regard to the '267, '907, and '410 patents after the International Trade Commission ("ITC") rendered a non-infringement decision in favor of Unilin and against the plaintiffs.

Presently before the court is the defendant's motion to stay litigation of the '579 patent pending the completion of both the '621 reexamination proceedings and the Federal Circuit's decision on the '267, '907, and '410 patents. After consideration of each of the factors involved, and for the reasons detailed below, the court will grant the motion [*3] to stay.

**II. BACKGROUND**

The parties involved in the present action have attempted to resolve their patent infringement issues in many different forums, both in the United States and in Europe. Specifically, in July 2000, Pergo Inc. ("Pergo"), Unilin's licensee, brought a declaratory action in the District of Columbia with regard to the '267, '907, and '621 patents in response to the plaintiffs' threats of infringement litigation. Pergo additionally filed a request for reexamination of the '621 patent in the PTO. This reexamination is currently ongoing. The plaintiffs subsequently filed a complaint in the Eastern District of Wisconsin asserting that Pergo and Unilin infringed the '267 and '907 patents. In response, Unilin filed its own declaratory judgment action in the District of Columbia,

alleging that its product did not infringe the '267, '907, and '621 patents.

In December 2000, the plaintiffs initiated a proceeding in the ITC asserting that Unilin infringed the '267, '907, and '410 patents. Upon the filing of the ITC action, all of the district court actions between the two parties concerning the alleged infringement of the '267, '907, and '410 patents were stayed [*4] pursuant to 28 U.S.C. § 1659. In November 2001, an ITC Administrative Law Judge ("ALJ") issued a decision finding that Unilin did not infringe the '267, '907, or '410 patents. The ITC affirmed the ALJ's decision in April 2002. The plaintiffs then appealed to the Federal Circuit, which heard oral argument on that case in March 2003. No decision has yet issued.

In the present case, the '579 patent is the only patent in dispute. However, as the court noted above, it is the latest of the continuation patents that stem from the original '621 patent. The '579 patent has never been reviewed by the PTO, the ITC, or any other court.

### III. DISCUSSION

The decision to stay a case is firmly within the discretion of the court. See Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985). This authority applies equally to patent cases in which a reexamination by the PTO has been requested. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (noting that "courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination. [*5] ") (internal citations omitted); see also Emhart Indus. v. Sankyo Seiki Mfg., 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987) (recognizing that, "in passing legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983) (citing legislative history of reexamination statute).

In determining whether a stay is appropriate, courts are directed to consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." Xerox Corp. v. 3 Comm Corp., 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999) (citing cases); cf. United Sweetner USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 217 (D. Del. 1991) (stating a similar test).

In opposition to the defendants' motion to stay, the plaintiffs first argue that, since the '579 patent itself is not

at issue [*6] in the reexamination proceedings, or in the Federal Circuit appeal, there is no need to stay the case before this court. See D.I. 21 at 7. The court must disagree because the plaintiffs cannot credibly argue that the patents are not alike in subject matter, as well as in many of their claims. This is so because, in general, "a continuing application is one filed during the pendency of another application which contains at least part of the disclosure of the other application and names at least one inventor in common with that application." Transco Products, Inc. v. Performance Contracting, Inc., 38 F.3d 551, 555 (Fed. Cir. 1994). Thus, a continuation application "claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed." Id. Indeed, the plaintiffs themselves admit that the patents in question do have some terms in common. See D.I. 21 at 10. Therefore, even though the '579 patent does not contain precisely the same claims of the other patents that are under review or reexamination, there is a sufficient correlation among all of the patents for the court to conclude that a [*7] stay is appropriate.

Additionally, with regard to the issue of efficiency, it is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation. To this end, the reexamination of the '621 patent will greatly serve the purpose of defining the issues in this case. For example, the court will gain the benefit of the PTO's particular expertise in evaluating the prior art. See Pegasus Development Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, *2 (D. Del. May 14, 2003) (citations omitted). Likewise, the court will also benefit from the reexamination process in that (1) many discovery issues relating to prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; and (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court. Id. (citations omitted). Such a refinement of the issues will benefit both parties by reducing litigation costs. [*8] See id. This approach will also best conserve the court's scarce resources. See id. Similar benefits will likewise flow from the Federal Circuit's analysis of the '267, '907, and '410 patents.

The plaintiffs alternatively contend that the motion is premature because the two proceedings that have a potential impact on this case may be decided well before this case reaches the claim interpretation stage. See D.I. 21 at 5. However, if the decisions of the PTO and Federal Circuit are imminent, as the plaintiffs suggest, a stay

2003 U.S. Dist. LEXIS 11917, *

at this time would not unduly burden their case as the stay would then be of short duration.

Finally, the court notes that discovery in this case has not yet begun, nor has a discovery schedule been entered at this time. Likewise, the court has not yet set a trial date. Therefore, the stay will be entered before any party incurs substantial litigation-related expenses.

## IV. CONCLUSION

In light of the above considerations, the court concludes that a stay at this point in the case would not unduly prejudice the plaintiffs or create for them a clear tactical disadvantage. Indeed, a stay will allow the issues before the court to be further simplified [*9] and defined to the benefit of the parties, as well as the court.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The Defendants' Motion to Stay Pending the Reexamination by the U.S. Patent and Trademark Office and Ruling by the United States Court of Appeals for the Federal Circuit (D.I. 15) is GRANTED.

2. The parties shall advise the court of any decision that results from the PTO's reexamination of the '621 patent and any decision that results from the Federal Circuit's consideration of the '267, '907, and '410 patents within thirty (30) days of the date of each decision.

3. The Plaintiffs' Motion to Strike Portions of the Answer and Complaint (D.I. 11) is DISMISSED, without prejudice, and with leave to re-file should it become necessary following the stay.

Dated: July 11, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT
# F

LEXSEE

**PEGASUS DEVELOPMENT CORPORATION and PERSONALIZED MEDIA COMMUNICATIONS, L.L.C., Plaintiffs v. DIRECTV, INC., HUGHES ELECTRONICS CORPORATION, THOMPSON CONSUMER ELECTRONICS, INC., and PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, Defendants. AND RELATED COUNTERCLAIMS**

**Civil Action No. 00-1020-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2003 U.S. Dist. LEXIS 8052**

**May 14, 2003, Decided**

**SUBSEQUENT HISTORY:** As Amended September 4, 2003.

**PRIOR HISTORY:** Pegasus Dev. Corp. v. Directv, Inc., 2002 U.S. Dist. LEXIS 6825 (D. Del., Apr. 18, 2002)

**DISPOSITION:** [*1] Defendants' motion to stay pending patent reexamination granted. Plaintiffs' motion for leave to assert claim patent denied. Motions to dismiss denied.

**COUNSEL:** For Pegasus Development Corporation, Personalized Media Communications LLC, PLAINTIFFS: Rudolf E Hutz, Rudolf E Hutz, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Directv Inc, Hughes Electronics Corporation, Thomson Consumer Electronics Inc, Thomson Multimedia, Inc, DEFENDANTS: Donald F Parsons, Jr, Mona A Lee, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Thomson Consumer Electronics Inc, DEFENDANT: Karen Jacobs Louden, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Philips Electronics North America Corporation, DEFENDANT: Steven J Balick, Steven T Margolin, Ashby & Geddes, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory Moneta Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION** [*2]

On December 4, 2000, Pegasus Development Corporation ("Pegasus") and Personalized Media Communications, L.L.C. ("PMC") filed a complaint against several defendants, alleging infringement of six patents, including U.S. Patent Nos. 4,965,825 ("the '825 patent") and 5,335,277 ("the '277 patent"). Since that time, the original scheduling order has been revised several times. Currently, fact discovery is scheduled to close on August 22, 2003, and a trial is scheduled for February of 2004.

On February 4, 2003 and March 14, 2003, respectively, the defendant Thomson Consumer Electronics, Inc. ("Thomson") filed with the Patent and Trademark Office ("PTO") a request for *ex parte* reexaminations of the '825 and '277 patents. The request for reexamination of the '825 patent was granted on April 10, 2003. n1 Presently before the court is a joint motion by the defendants to stay the litigation pending the completion of the patent reexaminations (D.I. 459). After careful consideration of the parties' submissions, and for the reasons detailed below, the court will grant the motion.

n1 The court is not yet aware of a decision by the PTO regarding reexamination of the '277 patent.

[*3]

**II. DISCUSSION**

The decision to stay a case is firmly within the discretion of the court. *Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985)*. This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)* ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citation omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg., 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q. 2d 1889, 1890 (N.D. Ill. 1987)* ("In passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)* (citing legislative history of reexamination statute). In determining whether a stay is appropriate, the court is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving [*4] party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp v. 3Comm Corp., 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999)* (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 217 (D. Del. 1991)* (stating a similar test).

In this case, there are two plaintiffs, four defendants, as well as six patents comprising dozens of claims. In addition, the written submissions in this case have been particularly voluminous; the briefing on claim construction alone, for example, constitutes 576 pages. *See* Report and Recommendation of Special Master Regarding Claim Construction at 2 (citing "copious briefing"). In these ways, the present suit is quite complex, although, perhaps, not extraordinarily so. The greater context of this suit is extraordinary, however: the plaintiffs have filed more than 300 related patent applications based upon an original patent application filed in 1981 and supplemented in 1987. Together, these applications contain an estimated 10,000 claims. Furthermore, as observed [*5] by the Special Master appointed in this case, the 1987 application alone constitutes over 300 columns of patent text and "is, by any measure, an extremely complex document." *Id.* at 2. These related applications may become relevant to the present case in respect to several issues including claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct. *See id.* at 21. Thus, in this case, more than many, the court would benefit from a narrowing of the issues.

The reexamination process will serve this purpose. For example, the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency. *See Braintree Laboratories, Inc. v. Nephron-Tech, Inc., 1997 U.S. Dist. LEXIS 2372, 1997 WL 94237, at *9 (D. Kan. 1997)*; *Hamilton Indus., Inc. v. Midwest Folding Products Mfg., 1990 U.S. Dist. LEXIS 3138, 1990 WL 37642, at *1-2 (N.D. Ill. 1990)*. Other potential efficiencies resulting from the reexamination process are numerous: (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the [*6] complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pretrial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent. *Id.* These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court. *Id.*

Thus, a stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-insuit and hundreds of related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant reexamination, the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources. *See Digital Magnetic Systems, Inc. v. Ainsley,* [*7] *213 U.S.P.Q.290,290 (W.D.Okla. 1982)* ("Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."); *Softview Computer Products Corp. v. Haworth, Inc., 2000 U.S. Dist. LEXIS 4254, 2000 WL 1134471, at *3 (S.D.N.Y. 2000)* ("The grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). Furthermore, the court notes that discovery is not complete, and the trial, although scheduled, is some nine months in the future. In light of all these factors, and considering that the reexamination process will proceed "with speedy dispatch," *35 U.S.C. 305*, the court concludes that a stay is the most compelling alternative.

The court recognizes that a stay will cause further delay in a case that has suffered several delays already, as well as considerable distress to the plaintiffs. The court is sensitive to the plaintiffs' right to have their day in court. Nonetheless, for the reasons already mentioned, the court is convinced that a stay is appropriate in this particular case. In addition, [*8] the court reminds the

2003 U.S. Dist. LEXIS 8052, *

plaintiffs that they affirmatively invoked the rights of the patent statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework. Thomson is legally entitled to invoke the reexamination mechanism, and the PTO has determined that reexamination is warranted. There is nothing facially untoward in that. Moreover, the court notes that if, after reexamination, the plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 961 (Fed. Cir. 1986)* (holding that upon reissue, the burden of proving invalidity is 'made heavier') (quoting *Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1139 (Fed. Cir. 1985)*). In this light, and given the particular circumstances of this case, the court cannot find that the prejudice to the plaintiffs is undue.

Objecting to a stay, the plaintiffs also have complained of dilatory conduct by the defendants, who, in turn, have accused the plaintiffs of "burying" the PTO in claims and prior [*9] art references. *See, e.g.,* Mem. of Plaintiffs in Opp. to Defs.' Joint Motion to Stay (D.I. 488) at 5-22 (detailing ways in which the defendants allegedly "have repeatedly acted to complicate and delay the resolution of this litigation"); Defs.' Joint Brief in Support of Motion to Stay (D.I. 460) at 4 ("Many of the Harvey patents had vast numbers of cited prior art references of record, effectively burying the most relevant ones.") and 7 ("It appears that PMC sought to 'overwhelm' the PTO and the Courts.").

As a brief response to the accusation of dilatory conduct, the court notes that Thomson's request for reexamination of the '825 patent comprised 2,610 pages; its request regarding the '277 patent totaled 4,736 pages. It is presumed that such an effort requires an enormous expenditure of time and other resources; thus, the timing of Thomson's reexamination requests does not, necessarily, reflect undue delay. Furthermore, as noted above, Thomson was legally entitled to invoke the reexamination procedure when it did. As to the defendants' repeated complaint that the plaintiffs overwhelmed the PTO with prior art references during prosecution of the patents-in-suit, the implications [*10] of such alleged conduct will be explored at another time in the litigation, if necessary. At this stage in the process, the court is satisfied that the PTO has found "substantial new questions of patentability" raised by each of the cited references, and has determined that all of the challenged claims of the '825 patent necessitate a reexamination. *See* PTO's Decision Granting Reexamination, Supp. Appendix to

Defs.' Joint Brief in Support of Motion to Stay (D.I. 467) at 138. Although the court regrets a further delay in the present case, it is confident that the advantages of a stay outweigh the costs.

### III. CONCLUSION

Because the PTO's reexamination of one or more of the patents-in-suit may materially affect the issues in this case, the court will grant the defendants' motion to stay. The case is stayed pending a disposition of the PTO's reexamination of patent '825, and will be stayed pending reexamination of the '277 patent, if applicable. All pending motions will be denied without prejudice; the parties may refile them following the stay and upon the entry of a new scheduling order, if applicable.

Thus, for the aforementioned reasons, IT IS HEREBY ORDERED that: [*11]

> 1. The defendants' Motion to Stay Pending Reexamination by the U.S. Patent and Trademark Office (D.I. 459) is GRANTED. The proceedings are stayed from the date of this order until further notice.

> 2. The parties shall advise the court of any decision that results from the PTO's reexamination of the '825 patent, and any other decision of the PTO regarding reexamination of any of the other patents-in-suit.

> 3. The plaintiffs' Motion for Leave to Assert Claim 15 of U.S. Patent 4,965,825 (D.I. 399) is DENIED without prejudice.

> 4. Thomson's Motion to Dismiss or in the Alternative for Summary Judgment (D.I. 376) is DENIED without prejudice.

> 5. Phillips' Motion to Dismiss for Lack of Standing (D.I. 396) is DENIED without prejudice.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Date: May 14, 2003