IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ABBOTT DIABETES CARE, INC.,

Plaintiff,

v.

DEXCOM, INC.,

Defendant.

C.A. No. 05-590-GMS

CONSOLIDATED WITH
C.A. No. 06-514-GMS

**DEXCOM, INC.'S OPPOSITION TO**
**ABBOTT DIABETES CARE, INC.'S MOTION TO LIFT STAY**

OF COUNSEL:
David C. Doyle
M. Andrew Woodmansee
Brian M. Kramer
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 720-5100

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com

Dated: January 17, 2014

*Attorneys for Defendant DexCom, Inc.*

# TABLE OF CONTENTS

**Page**


I. NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF RELEVANT FACTS .......... 1

II. SUMMARY OF ARGUMENT .......... 2

III. APPLICABLE LAW .......... 3

IV. ARGUMENT .......... 4

A. The Remaining Reexaminations Will Further Simplify The Issues For Trial .......... 4

B. Abbott Cannot Demonstrate it Will be Unduly Prejudiced if the Stay is Maintained .......... 8

1. Delay Alone Does Not Establish Undue Prejudice .......... 8

2. Dexcom's Reexamination Filings Were a Timely and Appropriate Response to Abbott's Actions During Reexamination .......... 10

3. Abbott Cannot Suffer Commercial Prejudice Because Abbott Still Does Not Make or Sell a Competing Product .......... 12

C. A Continued Stay Will Promote Efficiency and Conserve the Resources of the Parties and the Court .......... 13

D. The Purpose of Abbott's Premature Motion is Leverage in Ongoing Settlement Negotiations .......... 14

V. CONCLUSION .......... 14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*,
No. 06-187-GMS, 2009 WL 2969566 (D. Del. Sept. 15, 2009) .................................... *passim*

*Boston Scientific Corp. v. Cordis Corp.*,
777 F. Supp. 2d 783 (D. Del. 2011) .................................................................................8

*Canady v. Erbe Elektromedizin GmbH*,
271 F.Supp.2d 64, 76 (D.D.C.2002) .................................................................................9

*Celorio v. On Demand Books LLC*,
No. 12-00821-GMS, 2013 WL 4506411 (D. Del. Aug. 21, 2013) ....................................4, 12

*Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*,
No. 09-571-JJF, 2010 WL 2573925 (D. Del. June 25, 2010) ..............................................8

*Fifth Mkt., Inc. v. CME Grp., Inc.*,
No. 08-520-GMS, 2013 WL 3063461 (D. Del. June 19, 2013) .................................... *passim*

*Gould v. Control Laser Corp.*,
705 F.2d 1340 (Fed. Cir. 1983) ..........................................................................................9

*Neste Oil Oyj v. Dynamic Fuels, LLC*,
No. 12-662-GMS, 2013 WL 424754 (D. Del. Jan. 31, 2013) ...............................................9

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) ........................................11

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
No. 00-1020-GMS, D.I. 551 (D. Del. July 28, 2011) ...........................................................7

*Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.*,
No. 2:97CV00660, 1998 WL 1037920 (M.D.N.C. Dec. 17, 1998) .......................................7

*SenoRx, Inc. v. Hologic, Inc.*,
No. 12-173-LPS, 2013 WL 144255 (D. Del. Jan. 11, 2013) .................................................9

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.*,
No. 10-503, 2010 WL 4823393 (D. Del. Nov. 22, 2010) ....................................................13

*Wall Corp. v. BondDesk Grp., LLC*,
No. 07-844-GMS, 2009 WL 528564 (D. Del. Feb. 24, 2009) ...............................................9

# TABLE OF AUTHORITIES
(continued)

Page

**OTHER AUTHORITIES**

M.P.E.P. § 2201 *et seq*. ....................................................................................................................9

## I. NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF RELEVANT FACTS

The stay entered by this Court stays the case until the PTO issues its reexamination decision on *all* of the patents in suit. But Abbott's motion ignores the mandate of the stay order and instead argues that because *some* of the reexaminations are completed, the stay should be lifted. Abbott's motion is premature, and it presents no changed circumstances to justify lifting the stay in this action.

First, reexamination will continue to simplify the issues for trial in this case. Indeed, the reexaminations of five of the asserted patents already have resulted in cancellation or amendment of hundreds of claims. The three reexaminations that remain offer even greater potential to narrow the issues, since if affirmed by the Board of Patent Appeals and Interferences ("BPAI"), they will result in rejection of an additional 169 claims that potentially could have been asserted in this case. As the Court recognized in its stay order, the Court and the parties also will benefit from the BPAI's analysis of the claims and their patentability. Until these reexaminations are concluded, the purposes of the stay will not be fully achieved.

Second, Abbott cannot demonstrate any actual prejudice it will suffer if the stay is maintained. Abbott has shown no reason why it will be unduly prejudiced by waiting until completion of the two pending reexaminations (which it admits may be "soon"). The reason is simple—Abbott has no competing product in the United States and therefore it cannot suffer commercial prejudice. Moreover, no trial date has been set, and the parties have not yet expended significant time or effort on discovery, making a stay the most efficient method to preserve the parties' and the Courts' valuable resources.

Abbott's hasty filing of its premature motion on New Year's Eve, without any real notice to Dexcom, makes clear that it was brought for one purpose—to create leverage in ongoing settlement negotiations. But there is no reason to lift the stay now, with the case in its infancy and where further simplification of the issues is likely. Abbott's motion should be denied.

## II. SUMMARY OF ARGUMENT

1. Abbott has failed to demonstrate any changed circumstances that could justify lifting the stay in this case.

2. Maintaining the stay until all reexaminations conclude will continue to simplify the issues for trial while conserving judicial and party resources. The three remaining reexaminations have the potential to eliminate or drastically alter 169 more claims and will provide the Court with further analysis by the PTO and the BPAI on the claims and their patentability. Consistent with this Court's ruling, the stay should be maintained until *all* reexaminations conclude.

3. Abbott will not be unduly prejudiced by the Court maintaining the stay. Abbott does not sell a competing product, so it cannot suffer commercial prejudice. Abbott also can show no tactical disadvantage, as Dexcom's reexamination requests have been both meritorious and timely. Abbott's allegations of vague, generalized evidentiary risks are insufficient to outweigh the benefits to the Court and the parties in maintaining the stay.

4. No trial date has been set and discovery has not yet begun. Thus, a continued stay until all reexaminations are complete will further promote efficiency and conserve both the Court's and the parties' resources.

5. Abbott's filing of this motion on New Year's Eve violated the Local Rules requiring the parties to meet and confer. Abbott's timing and its failure to provide Dexcom with any real notice make clear that the purpose of its motion is to gain leverage in the parties' ongoing settlement negotiations.

## III. APPLICABLE LAW

"When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay." *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*, No. 06-187-GMS, 2009 WL 2969566, at *1 (D. Del. Sept. 15, 2009) (internal quotations omitted). "It follows that where there are no new circumstances that impose hardship on the plaintiff or that change the court's earlier disposition imposing the stay, the plaintiff's motion to lift the stay should be denied." *Fifth Mkt., Inc. v. CME Grp., Inc.*, No. 08-520-GMS, 2013 WL 3063461, at *1 n.1 (D. Del. June 19, 2013) (quoting *Auto. Techs.*, 2009 WL 2969566, at *1).

In determining whether a stay is warranted, courts consider "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Fifth Mkt.*, 2013 WL 3063461, at *1 n.1 (internal quotations omitted).

Abbott has failed to demonstrate any changed circumstances affecting the Court's calculus in its stay orders (No. 06-514, D.I. 14; No. 05-590, D.I. 72), and all three factors continue to weigh in favor of maintaining the stay.

## IV. ARGUMENT

### A. The Remaining Reexaminations Will Further Simplify The Issues For Trial.

The Court stayed "this proceeding pending the reexamination of the patents in suit." (No. 06-514, D.I. 14 at 11.) It further stated that "the parties shall notify the court when the PTO issues its reexamination decision on the Group I and II Patents." (*Id.*) The Court based its ruling in part on the fact that "staying the present case until the reexamination of… *all* of the patents-in-suit is complete will facilitate and simplify issues for trial." (*Id.* at 9 (emphasis added); *see also* No. 05-590, D.I. 72 at 11 ("granting the stay will simplify the issues and focus the litigation").) The Court explained that "if the PTO determines that some or all of the claims of the… patents undergoing reexamination are invalid, then many of the issues in the litigation will become moot." (No. 05-590, D.I. 72 at 11.) And even if some or all of the claims are confirmed,

> it is beyond dispute that the court, as well as the parties, would benefit from a narrowing of the variety of complex issues relating to the numerous claims at issue, which, if clearly defined, would streamline the discovery process and the remainder of the litigation.

(*Id.* at 11-12); *see also Celorio v. On Demand Books LLC*, No. 12-00821-GMS, 2013 WL 4506411, at *2 (D. Del. Aug. 21, 2013) ("even if the PTO were to ultimately confirm all of the claims, the court would likely benefit from the expert analysis the PTO conducts, thus further simplifying issues before the court." (citations omitted)).

Because two patents remain in reexamination with a total of 169 claims rejected, there can be no question that the issues in this case will be further simplified by allowing

the stay to remain in place until those proceedings conclude.[1] Indeed, reexamination of the asserted patents already has resulted in simplification of the issues in this case. Focusing on the mere fact that reexaminations are concluded for five of the asserted patents, Abbott fails to acknowledge how extensively those patents have been altered by the reexaminations, as follows:

- U.S. Patent No. 6,565,509: One reexamination resulted in the cancellation of all 12 claims challenged. Another reexamination resulted in amendments to all 3 challenged independent claims and a total of 26 claims, as well as the addition of 23 new claims, including 4 new independent claims.
- U.S. Patent No. 5,899,855: Reexamination resulted in amendments to four claims and seven new claims added. A subsequent reexamination resulted in amendments to a total of 26 claims.
- U.S. Patent No. 6,175,752: Reexamination resulted in an amendment to one claim and 19 claims added.
- U.S. Patent No. 6,990,366: Reexamination resulted in amendments to four claims and the addition of five new claims.
- U.S. Patent No. 6,284,478: Reexamination resulted in seven claims canceled, 67 claims amended, and 26 claims added. A subsequent reexamination resulted in cancellation of five additional claims and amendments to 53 additional claims.

[1] Abbott's focus on the completion of the reexaminations "giving rise" to the stay is misplaced. (*See, e.g.*, Abbott Br. at 11.) The Court's order makes no distinction between existing reexaminations and reexaminations filed after the stay was entered—it stays the case until *all reexaminations* are complete. (No. 06-514, D.I. 14 at 7, 11.)

(*See* Abbott Appx., Tabs 4-6, 8, 10-18.) With 24 claims cancelled and another 181 claims amended, these reexaminations have resulted in a vast change in the scope and issues presented by this case.[2]

The three pending reexaminations (of U.S. Patent Nos. 6,329,161 (the "'161 patent") and 6,134,461 (the "'461 patent")) potentially could have an even *greater* impact on the scope of this case. The examiner's decision on reexamination of the '161 patent, currently on appeal to the BPAI, resulted in rejection of all 57 claims of the '161 patent. (Declaration of D. Woodmansee in support of Dexcom's Opposition to Abbott's Motion to Lift the Stay, ("Woodmansee Decl."), Ex. F.) Likewise, the two consolidated reexaminations of the '461 patent (also on appeal to the BPAI) resulted in rejection of 112 of a total of 188 claims. (*Id.* Ex. G.) Elimination of 169 claims from this case certainly would simplify the issues for both discovery (including claim construction) and trial. And as the Court recognized, whether or not those claims are ultimately rejected, the parties and the Court "would surely benefit from the expert opinion" of the Board in analyzing both the meaning and the patentability of these claims.[3] (No. 06-514, D.I. 14 at 10, quoting *Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.*, No. 2:97CV00660, 1998 WL 1037920 (M.D.N.C. Dec. 17, 1998).)

Abbott nonetheless argues that the stay should be lifted because some of the reexaminations are concluded. This Court in *Auto. Techs.*, faced with markedly similar

---

[2] The stay also has achieved the Court's goal of avoiding "the risk of inconsistent rulings or issuing advisory opinions" as to claims that are later amended or invalidated, and a continued stay will further achieve this objective. (No. 05-590, D.I. 72 at 12.)

[3] Contrary to Abbott's assertion, the fact that the examiner's rejections were solely on the grounds of obviousness (Abbott Br. at 13-14) does not somehow make the BPAI's analysis less useful to the parties and the Court; indeed, as in many patent cases, obviousness may well be a key issue in this litigation.

facts, rejected the very argument Abbott makes here and denied a motion to lift the stay. 2009 WL 2969566, at *1-3. There, reexamination proceedings had not yet concluded for all of the asserted patents, which contained over 340 claims, of which more than 140 stood rejected by the PTO.[4] *Id.* at *2. The Court thus held that "it is highly likely" that the reexamination of the remaining patents "will significantly affect the court's claim construction, and perhaps simplify the infringement and validity issues, if any, should they remain in the case moving forward." *Id.* The Court found that

> [i]n addition to simplifying the issues for trial, continuation of the stay will also conserve judicial resources and spare the parties from wasting time litigating claims that are subsequently amended by [the patentee] or invalidated by the PTO during reexamination.

*Id.* Here, as in *Auto. Techs.*, continuation of the reexamination potentially could save the parties from litigating 169 claims from claim construction through trial.

Abbott relies on *Pegasus Development Corp. v. DirecTV, Inc.*, No. 00-1020-GMS (D. Del. Jul. 28, 2011) (D.I. 551), but its analysis is both flawed and incomplete. Abbott fails to mention that one of the two outstanding reexaminations in *Pegasus* actually concluded after the briefing was complete, and the Court was notified of that fact in a letter prior to its ruling. (*Id.* at D.I. 570.) When the Court made its decision to lift the stay, the only patent remaining in reexamination was facing its third reexamination, and the first two reexaminations confirmed the patentability of all claims without amendment. As a result, Plaintiffs argued, it was unlikely any further narrowing of the issues would occur. (*Pegasus* Op. Br., D.I. 551 at 9.) That is a far cry from the

[4] Although in *Auto. Techs.* reexamination was ongoing for six of the eight asserted patents, here there are significantly more claims that stand rejected, and thus an even greater chance the issues for trial will be simplified by allowing the stay to continue.

case here, where the pending reexaminations have resulted in rejection of 169 claims, and where the parties also will benefit from substantive analysis of the claims on appeal.

Abbott once again has failed to demonstrate how a stay pending these reexaminations would *not* lead to simplification of the issues for trial. (No. 06-514, D.I. 14 at 10 n.7.) The vast changes already effected, and the potential elimination of 169 more claims from this case, compels the conclusion that the case should not move forward until all the reexaminations are complete.

### B. Abbott Cannot Demonstrate it Will be Unduly Prejudiced if the Stay is Maintained.

To determine whether a stay will cause undue prejudice to a party, a court considers "(l) the timing of the reexamination request, (2) the timing of the stay request, (3) the status of the reexamination proceedings, and (4) the relationship between the parties." *Fifth Mkt.*, 2013 WL 3063461, at *1 (citing *Boston Scientific Corp. v. Cordis Corp.,* 777 F. Supp. 2d 783, 789 (D. Del. 2011)).

Abbott has failed to articulate any undue prejudice that will occur if the stay remains in place until the completion of the reexaminations. This factor thus weighs strongly in favor of maintaining the stay.

#### 1. Delay Alone Does Not Establish Undue Prejudice.

As this Court has explained, "the potential for delay does not, by itself, establish undue prejudice" to warrant the lifting of a stay. *Fifth Mkt.*, 2013 WL 3063461, at *1 (citing *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.,* No. 09-571-JJF, 2010 WL 2573925, at *3 (D. Del. June 25, 2010) ("[T]he Court recognizes that a stay may delay resolution of the litigation, but this alone does not warrant a finding that Plaintiffs will

be unduly prejudiced.")); *Wall Corp. v. BondDesk Grp. LLC*, No. 07-844-GMS, 2009 WL 528564, at *2 (D. Del. Feb. 24, 2009) ("The court finds that [the delay that might enure in the reexamination process] does not, by itself, amount to undue prejudice."). Abbott concedes that any delay could be minimal, as the two remaining reexaminations may be completed soon.[5] (Abbott Br. at 13.)

This Court in *Auto. Techs.* denied a motion to lift the stay in similar circumstances, where it was "not convinced that [Plaintiff] will be unduly prejudiced by continuing the stay in this case." 2009 WL 2969566, at *2. There, as here, "[o]ther than citing 'further delay,' [Plaintiff] has failed to articulate any 'hardship or [show] that the [PTO's] action immediately impacts [its] daily affairs.'" *Id.* (quoting *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 76 (D.D.C.2002)).

Abbott's argument that it may face "various evidentiary risks" due to further delay also is insufficient to justify lifting the stay. (Abbott Br. at 15.) Abbott has failed to identify any "particular evidence or witnesses threatened by such delay." *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662-GMS, 2013 WL 424754, at *3 n. 3 (D. Del. Jan. 31, 2013) (quoting *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS, 2013 WL 144255, at *7 n. 8 (D. Del. Jan. 11, 2013)). The mere allegation of generalized evidentiary risks is insufficient to outweigh the benefits of the stay, such as conservation of resources and further simplification of the issues. *See Neste Oil*, 2013 WL 424754, at *3 n. 3.

---

[5] Moreover, the stay is not "indefinite" as Abbott alleges—the Court ordered this action stayed until the reexaminations conclude. In *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983), which Abbott cites in support of its argument, the Federal Circuit actually concluded that a stay until conclusion of reexamination proceedings was "not for such a protracted or indefinite period as to render its issuance an abuse of discretion."

### 2. Dexcom's Reexamination Filings Were a Timely and Appropriate Response to Abbott's Actions During Reexamination.

Next, Abbott argues that it has been prejudiced due to Dexcom's filing of multiple reexaminations. Far from attempting to gain a "tactical advantage," Dexcom has been compelled to file multiple reexaminations on each patent because of Abbott's actions during reexamination. It is the nature of the ex parte reexamination process that the patentee may make validity arguments, amend claims or even add new claims, and the requestor has no ability to challenge those actions, except in a subsequent reexamination. *See generally* M.P.E.P. § 2201 *et seq*. As described above, Abbott amended nearly 200 claims to overcome various rejections, and those amendments made additional prior art relevant to the claims. Abbott also has added over 200 new claims to the asserted patents, which again expanded the field of potentially relevant prior art. Awareness of specific art cited later at the time of prior reexaminations does not mean the art was relevant to the prior proceeding. For example, Dexcom filed a subsequent reexamination request on the '461 patent citing new combinations of prior art only after Abbott added 159 new claims in the prior reexamination proceeding. That subsequent proceeding, which is still pending, resulted in rejection of 112 claims.

The reexaminations filed by Dexcom have been both timely—with subsequent reexaminations filed promptly after amendments or additions to the claims—and meritorious, as the PTO has granted all but a handful of Dexcom's reexamination requests. (*See, e.g.*, Abbott Br. at 13 (noting Dexcom filed a second reexamination on the '161 patent less than a month after the initial reexamination concluded); *id.* at 9 (noting all but four reexamination requests granted).) And as described above, those reexaminations, with few exceptions, have resulted in cancellation or amendments to the

claims. There is nothing nefarious or dilatory about Dexcom's responses to Abbott's actions during reexamination of filing additional requests that better address Abbott's new or amended claims. Indeed, as this Court has advised, parties with protection under the patent statutory framework "can hardly… complain of the rights afforded others by that same statutory framework," including the right to seek reexamination of potentially invalid patents. *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. 00-1020-GMS, 2003 WL 21105073, at *2 (D. Del. May 14, 2003).

Abbott relies on *Fifth Market*, arguing Dexcom has engaged in similar tactics as the Defendants opposing the stay in that case. But Abbott's reliance is misplaced, as the facts are readily distinguishable. 2013 WL 3063461, at *1 n.1. In *Fifth Market*, Defendants provided Plaintiff with a draft of an inter partes reexamination request they intended to file, which Plaintiff then relied upon in seeking a stay. *Id.* After the stay was granted, however, Defendants delayed filing the request for 15 months, and chose not to file until the reexaminations of the other asserted patent were nearly complete. *Id.* In addition, Defendants in their briefing had signaled their intention to file for covered business method patent ("CBM") review, threatening to initiate an entirely new procedure that could take an additional two years. *Id.* And based on their prior actions, Plaintiff argued, Defendants might also be expected to unnecessarily delay in filing their CBM petition. *Id.* It was these actions that the Court found were "impermissibly tactical." *Id.*

Here, by contrast, Dexcom has been prompt in seeking reexamination of the patents in suit, and the two outstanding reexaminations may be concluded this year—as Abbott concedes, they are likely to be completed "soon." (Abbott Br. at 13.) Further,

unlike in *Fifth Market*, where a Markman hearing had already occurred and a resulting order issued, this case has not yet progressed into discovery and no trial date has been set. Thus, unlike in *Fifth Market*, where "the parties and the court ha[d] already spent considerable time and resources," this case is still in its infancy. 2013 WL 3063461, at *1; *see Celorio*, 2013 WL 4506411, at *2 (maintaining a stay "when a case is in its early stages 'can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.'" (internal quotations omitted).).

**3. Abbott Cannot Suffer Commercial Prejudice Because Abbott Still Does Not Make or Sell a Competing Product.**

There has been no change in circumstance with respect to the relationship between the parties, as Abbott does not sell a competing product in the United States.[6] (Woodmansee Decl. at ¶ 8.) Abbott does not sell a continuous glucose monitoring product to compete with Dexcom's product line in the United States, and sells only traditional "finger stick" glucose monitors. (*Id.*) As a result, Abbott cannot be prejudiced in the marketplace by a continued stay, and the Court's original reasoning on this factor remains unchallenged. (*See* No. 05-590, D.I. 72 at 11 (rejecting argument that a stay would disadvantage Abbott in the marketplace, noting that Abbott failed to file a preliminary injunction)); *see also Auto. Techs.*, 2009 WL 2969566, at *2 ("As the

[6] For this reason, the fact that certain of Abbott's patents have expired also does not prejudice Abbott. As the Court noted in its stay order, Abbott failed to move for a preliminary injunction, despite the fact that Dexcom had recently obtained marketing authorization for its product. (No. 05-590, D.I. 72 at 11.) And it is unlikely Abbott could obtain a permanent injunction given that it does not sell a product in the United States. As such, even if Abbott prevailed in this action, Abbott would only be entitled to past damages.

defendants correctly point out, the 'fact that [Plaintiff] does not make or sell any product remains unchanged'" and thus "'there is no issue of irreparable harm caused by continuation of a stay'"); *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-503, 2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010) (recognizing that "[o]f particular importance is the fact that plaintiff does not develop or sell any products of its own and is not a competitor of defendants . . . [s]ince the parties do not compete, this factor favors a stay.").

### C. A Continued Stay Will Promote Efficiency and Conserve the Resources of the Parties and the Court.

The final factor the Court must consider is "whether discovery is complete and whether a trial date has been set." *Fifth Mkt.*, 2013 WL 3063461, at *1 n.1. Despite noting this factor in its brief, Abbott fails to argue—because it cannot—that the timing in this case favors lifting the stay. The Court previously held that the stay "will conserve the resources of the parties and the court, thereby promoting efficiency." (No. 05-590, D.I. 72 at 11-12). The same is true today. Here, as in *Auto. Techs.*,

> since the stay has been in place, the parties have not conducted extensive discovery in this case; neither has a fact discovery cut off nor a trial been scheduled. Indeed, there is no evidence that any additional costs have been incurred or spent for any [of] these typically cost-intensive purposes.

2009 WL 2969566, at *2. As a result, judicial economy is best served by, and this factor continues to weigh strongly in favor of, an ongoing stay.[7]

---

[7] Abbott's proposal that the Court lift the stay for some, but not all, of the asserted patents would not be an effective use of the Court's or the parties' time, as they may be forced to supplement claim construction, or conduct duplicative discovery, once the remaining reexaminations are complete.

### D. The Purpose of Abbott's Premature Motion is Leverage in Ongoing Settlement Negotiations.

Abbott filed its motion at 4:45 P.M. Eastern time on New Year's Eve – a Court holiday. This timing begs the question—what is the true purpose of Abbott's motion? Abbott could not have misunderstood Delaware's local rules requiring the parties to meet and confer in advance of filing a motion, as Abbott is represented by experienced local counsel. The only explanation for Abbott's timing and violation of this Court's rules is the parties' settlement negotiations.

Despite an ongoing settlement dialogue, Abbott sent a cursory email on December 30, 2013 at 7:56 P.M., asking if Dexcom would agree to lift the stay, and if not, Abbott would file a motion. (Woodmansee Decl. at ¶ 3, Ex. A.) When Dexcom responded that, due to the holidays, it would be unable to respond until the following week, Abbott ignored this Court's requirement that the parties meet and confer in advance of motion practice and chose to file the next day, a day the Court was closed—less than 24 hours after sending its email. (*Id.* at ¶¶ 4-5; Exs. B-C.)

Given the pendency of settlement negotiations, full compliance with the Court's stay ruling was particularly important to proceeding in good faith. Yet, after providing no real notice and without any meaningful discussion (let alone any verbal discussion) with Dexcom, Abbott proceeded to file on New Year's Eve.

## V. CONCLUSION

For the reasons outlined above, there is no prejudice to Abbott to wait for full completion of the reexaminations, which may further simplify the issues for trial in this case, before resuming litigation and consumption of the Court's valuable time. Abbott's motion should be denied.

*/s/ Karen E. Keller*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com

OF COUNSEL:
David C. Doyle
M. Andrew Woodmansee
Brian M. Kramer
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 720-5100

Dated: January 17, 2014

*Attorneys for Defendant Dexcom, Inc.*